ANTHONY L. CANNON (CA Bar No. 162986)
**CANNON & NELMS**
160 S. Old Spring Road, Suite 200
Anaheim, CA 92808
Telephone: (714) 637-4400
Facsimile: (714) 637-4444
tcannon@cannonnelms.com

EDWARD P. WALKER (*Admitted Pro Hac Vice*)
JOHN W. O'MEARA (*Admitted Pro Hac Vice*)
**OLIFF & BERRIDGE, PLC**
277 South Washington Street, Suite 500
Alexandria, Virginia 22314
Telephone: (703) 836-6400
Facsimile: (703) 836-2787
ewalker@oliff.com
jomeara@oliff.com

**Attorneys for Defendant/Counterclaim Plaintiff,
Roger Cleveland Golf Company, Inc.**

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| THE IRREVOCABLE TRUST OF ANTHONY J. ANTONIOUS, a Florida Trust,<br><br>Plaintiff/Counterclaim Defendant,<br><br>v.<br><br>ROGER CLEVELAND GOLF COMPANY, INC., a California Corporation,<br><br>Defendant/Counterclaim Plaintiff | Case No. SACV10-1198 CJC (RNBx)<br><br>**CLEVELAND GOLF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT THAT PLAINTIFF IS PRECLUDED FROM RECOVERING DAMAGES FOR PRODUCTS PRESENT IN THE UNITED STATES BEFORE JANUARY 5, 2010**<br><br>Hearing Date:  January 10, 2011<br>Time:           1:30 p.m.<br>Place:          Courtroom 9B<br>Judge:          Hon. Cormac J. Carney |

1

# TABLE OF CONTENTS

Page

I. INTRODUCTION ........................................................................ 2

II. STATEMENT OF UNDISPUTED FACTS .................................. 3

    A. The Asserted '754 Patent ...................................................... 3

    B. Original Prosecution History Of The '754 Patent ................... 3

    C. Correction And Reexamination Of The '754 Patent ............... 4

III. ARGUMENT .............................................................................. 7

    A. Applicable Law ..................................................................... 7

        1. Summary Judgment Standard............................................ 7

        2. Reexamination "Substantially Identical" Standard ........... 8

    B. Plaintiff Does Not Assert Infringement Of Claim 8, The Only Claim Of The Original '754 Patent Remaining After Reexamination........................................................................ 12

    C. Asserted Reexamined Claims 5, 6, and 9 Are Not "Substantially Identical" To Any Original Claims Of The '754 Patent ........................................................................... 13

        1. Comparison Of Original '754 Patent Claims 4, 5, 6 And Asserted Reexamined Claims 9, 5, 6............................. 14

        2. Antonious's Reliance Upon The Added Features Of Claim 9 To Obtain Allowance Of Reexamined Claims 9, 5 and 6........................................................................ 16

IV. CONCLUSION........................................................................... 22

# TABLE OF AUTHORITIES

**Cases**                                                                                                                    Page

*Abbey v. Robert Bosch GmbH,*
   1999 WL 819683 (Fed. Cir. Oct. 6, 1999) .......................................................... 11

*Applied Medical Resources Corp. v. U.S. Surgical Corp.,*
   448 F.3d 1324 (Fed. Cir. 2006) ......................................................................... 10

*Atlantic Constr. Fabrics, Inc. v. Metrochem, Inc.,*
   2008 WL 4414763 (W.D. Wash. Sept. 24, 2008) ......................................... 9, 11

*BIC Leisure Products, Inc. v. Windsurfing Int'l, Inc.,*
   1 F.3d 1214 (Fed. Cir. 1993) ............................................................................... 9

*Bloom Engineering Co. v. North American Mfg. Co.,*
   129 F.3d 1247 (Fed. Cir. 1997) ......................................................... 9, 10, 11, 21

*Celotex Corp. v. Catrett,*
   477 U.S. 317, 106 S. Ct. 2548, 91 L.Ed.2d 265 (1986) ..................................... 7

*Desper Prods., Inc. v. QSound Labs, Inc.,*
   157 F.3d 1325 (Fed. Cir. 1998) ........................................................................... 7

*Duval Wiedmann, LLC v. Inforocket.com, Inc.,*
   620 F.3d 496 (5th Cir. 2010) ......................................................................... 8, 10

*Engineered Data Products, Inc. v. GBS Corp.,*
   506 F.Supp.2d 461 (D. Colo. 2007) .................................................................... 9

*Fortel Corp. v. Phone-Mate, Inc.,*
   825 F.2d 1577 (Fed. Cir. 1987) ................................................................... 8, 9, 10

*I-Flow Corp. v. Apex Medical Tech., Inc.,*
   2010 WL 144405 (S.D. Cal. January 12, 2010) .......................................... 11, 22

*Kaufman Co. v. Lantech, Inc.,*
   807 F.2d 970 (Fed. Cir. 1986) ........................................................................... 12

*Key Mfg. Group, Inc. v. Microdot, Inc.,*
   679 F. Supp. 648 (E.D. Mich. 1987) ................................................................. 12

*Kim v. Earthgrains Co.,*
   2010 WL 625220 (N.D.Ill. Feb. 18, 2010) ............................................. 7, 10, 11

*Laitram Corp. v. NEC Corp.*,
 163 F.3d 1342 (Fed. Cir. 1998) (*Laitram IV*)................................ passim

*Markman v. Westview Instrs., Inc.*,
 52 F.3d 967 (Fed. Cir. 1995) (*en banc*), *aff'd*, 517 U.S. 370, 116 S.Ct.
 1384, 134 L.Ed.2d 577 (1996)................................................................ 8

*Minco, Inc. v. Combustion Engineering, Inc.*,
 95 F.3d 1109 (Fed. Cir. 1996) ............................................................ 12

*Neupak, Inc. v. Ideal Mfg. and Sales Corp.*,
 41 Fed. Appx. 435 (Fed. Cir. 2002)..................................................... 11

*Predicate Logic, Inc. v. Distributive Software, Inc.*,
 544 F.3d 1298 (Fed. Cir. 2008) ...................................................... 11, 20

*Seattle Box Co. v. Industrial Crating & Packing, Inc.*,
 731 F.2d 818 (Fed. Cir. 1984) ............................................................ 11

*Shockley v. Arcan, Inc.*,
 248 F.3d 1349 (Fed. Cir. 2001) ............................................................ 9

*Slimfold Mfg. Co. v. Kinkead Industries*,
 810 F.2d 1113 (Fed. Cir. 1987) .......................................................... 12

*Tennant Co. v. Hako Minuteman, Inc.*,
 878 F.2d 1413 (Fed. Cir. 1989) .......................................................... 12

*Vivid Techs., Inc. v. American Science & Eng'g, Inc.*,
 200 F.3d 795 (Fed. Cir. 1999) ............................................................ 8

**Statutes**

35 U.S.C. § 252 ................................................................................ passim

35 U.S.C. §307(b) ............................................................................ passim

**Other Authorities**

Chisum, *Patents*, §15.05[1][a] (2005) ................................................. 9

**Rules**

37 C.F.R. §1.132 ............................................................................... 17

Fed. R. Civ. P. 56(c).............................................................................. 7

## TABLE OF EXHIBITS

The following is a table of exhibits to Cleveland Golf's motion for partial summary judgment, authenticated by the accompanying Declaration of Edward P. Walker:

| Exhibit | Description |
|---|---|
| 1. | U.S. Patent No. 5,735,754 ("'754 Patent) |
| 2. | Certificate of Correction of '754 Patent |
| 3. | Ex Parte Reexamination Certificate of '754 Patent |
| 4. | Plaintiff's November 5, 2010 Initial Disclosures |
| 5. | Originally-Filed '754 Patent Application (08/759,924) |
| 6. | June 9, 1997 Office Action in '754 Patent prosecution history |
| 7. | June 24, 1997 Amendment in '754 Patent prosecution history |
| 8. | July 18, 1997 Notice of Allowance in '754 Patent prosecution history |
| 9. | September 2, 2008 Request for Reexamination |
| 10. | November 7, 2008 Order Granting Request For Reexamination |
| 11. | March 23, 2009 Office Action in Reexamination |
| 12. | April 22, 2009 Amendment in Reexamination |
| 13. | April 2009 Reexamination Declaration of John Gillig |
| 14. | April 2009 Reexamination Declaration of Douglas Winfield |
| 15. | August 27, 2009 Office Action in Reexamination |
| 16. | September 24, 2009 Amendment in Reexamination |
| 17. | October 9, 2009 Notice Of Intent To Issue Reexamination Certificate |
| 18. | Air Bear golf club head references |
| 19. | U.S. Patent No. 6,257,991 to Ortiz |
| 20. | U.S. Patent No. Des. 350,176 to Antonious |
| 21. | U.S. Patent No. Des. 363,961 to Krzynowek |
| 22. | U.S. Patent No. Des. 372,063 to Hueber |
| 23. | U.S. Patent No. 5,456,469 to MacDougall |

| Exhibit | Description |
| --- | --- |
| 24. | *Kim v. Earthgrains Co.*, 2010 WL 625220 (N.D.Ill. Feb. 18, 2010) |
| 25. | *I-Flow Corp. v. Apex Medical Tech., Inc.*, 2010 WL 144405 (S.D. Cal. Jan. 12, 2010) |
| 26. | *Abbey v. Robert Bosch GmbH*, 1999 WL 819683 (Fed. Cir. Oct. 6, 1999) |
| 27. | 35 U.S.C. §307(b) |
| 28. | 35 U.S.C. §252 |
| 29. | Chisum, *Patents*, §15.05[1][a] (2005) |
| 30. | *Atlantic Constr. Fabrics, Inc. v. Metrochem, Inc.*, 2008 WL 4414763 (W.D. Wash. Sept. 24, 2008) |

## I.   **INTRODUCTION**

Defendant Roger Cleveland Golf Company, Inc. ("Cleveland Golf") submits this memorandum in support of its motion for partial summary judgment on its Eighth Affirmative Defense limiting potential damages.

Plaintiff Irrevocable Trust of Anthony J. Antonious ("Antonious," also referring to Mr. Anthony J. Antonious) accuses Cleveland Golf's Launcher golf club products of infringing claims 5, 6, and 9 of U.S. Patent No. 5,735,754 ("'754 Patent," Ex. 1). Claim 9, the only asserted independent claim, issued in a January 5, 2010 Reexamination Certificate following reexamination of the '754 Patent at the U.S. Patent and Trademark Office ("USPTO"). Claim 9 was newly added during reexamination and includes substantive limitations, not included in any original '754 Patent claim, relied upon by Antonious to distinguish prior art and obtain allowance.

Because claim 9 was not in the '754 Patent as originally issued, and is not "substantially identical" to any original claim of the '754 Patent, Cleveland Golf is protected by the provisions of 35 U.S.C. §§307(b) and 252. In the unlikely event that Cleveland Golf's products are later found to infringe the asserted claims of the '754 Patent (*see, e.g.*, Cleveland Golf's October 1, 2010 Counterclaims demonstrating non-infringement), these statutory provisions preclude Antonious from recovering any damages for products that were present in the United States before the January 5, 2010 Reexamination Certificate.

This motion is important to the resolution of this lawsuit because the accused products have been discontinued and only a relatively small number were imported into the U.S. on or after January 5, 2010 (about 3,650 units sold by Cleveland Golf for a total of about $306,000, or approximately 2% of all accused products sold in the U.S.). Thus, adjudication of this motion in Cleveland Golf's favor will avoid protracted litigation with respect to the vast majority of the accused products and greatly facilitate early disposition in view of the small potential damages.

## II.   STATEMENT OF UNDISPUTED FACTS

### A.   The Asserted '754 Patent

The '754 Patent asserted by Antonious in this case is directed to an "Aerodynamic Metal Wood Golf Club Head." The patent issued on April 7, 1998, from U.S. Patent Application No. 08/759,924 filed on December 4, 1996. (Ex. 1, p. 5).

As discussed more fully below, the '754 Patent originally issued with eight claims, independent claims 1, 4 and 8, and dependent claims 2, 3 and 5-7. (Ex. 1, p. 10). All of the claims recited an aerodynamic golf club head comprising, *inter alia*, an aerodynamic configuration on the club head's bottom surface in the form of a c-shaped slot having an open end facing forwardly toward the ball striking face. (*Id.*).

The '754 Patent was subsequently reexamined. Following reexamination, the only originally-issued claim remaining was claim 8. (Ex. 3, p. 13). As a result of the reexamination, claim 4 was canceled, claims 1, 3 and 5-7 were amended, claim 2 depended on amended claim 1, and new independent claim 9 was added. (*Id.*).

Antonious asserts that Cleveland Golf's products infringe independent claim 9 and dependent claims 5 and 6 of the reexamined '754 Patent. Antonious does not assert infringement of any other claims. (Ex. 4, p. 18).

### B.   Original Prosecution History Of The '754 Patent

The '754 Patent application (08/759,924) was filed on December 4, 1996 with seven original claims. (Ex. 5, pp. 28 and 29). Of those claims, claims 1, 2 and 5-7 would ultimately issue as '754 Patent claims 1, 2, 5, 6 and 8, respectively, without amendment. (Ex. 1, p. 10; Ex. 5, *id.*).

In a June 9, 1997 Office Action, the USPTO indicated that originally presented claims 1, 2 and 7 were allowable over the prior art of record. Claims 3-6 were objected to for lack of clarity. No claims were rejected in view of prior art. (Ex. 6, pp. 34 and 35).

3

1   In a June 24, 1997 Amendment, Antonious amended claims 3 and 4 in an
2   effort to overcome the USPTO Examiner's objections, and added another dependent
3   claim 8 that would ultimately become claim 7 of the issued patent following a minor
4   amendment. (Ex. 7, p. 36).

5   During a July 9, 1997 telephone interview, Antonious and the USPTO
6   Examiner agreed upon some additional amendments to claim 4 and claim 8 (issued
7   claim 7). The Examiner thereafter allowed the application, noting as his reasons for
8   allowance: "Claims 1-8 are allowable over the prior art references of record because
9   it would not have been obvious to modify any of the prior art devices of record to
10   include a c-shaped slot having an open end facing forwardly toward the ball striking
11   face." (Ex. 8, p. 40).

12   **C.   Correction And Reexamination Of The '754 Patent**

13   On July 1, 2008, at Antonious's request, the USPTO issued a Certificate of
14   Correction with respect to the '754 Patent. More particularly, claim 6 was corrected
15   to depend from claim 4 rather than from claim 3. (Ex. 2).

16   A Request for Reexamination of the '754 Patent was thereafter filed in the
17   USPTO on September 2, 2008 by third party requester Michael J. Gallagher.[1]   (Ex.
18   9). On November 7, 2008, the USPTO ordered reexamination of claims 1-8 of the
19   '754 Patent. In ordering reexamination, the USPTO noted the original prosecution
20   Examiner's above-quoted reasons for allowing the application to issue as a patent,
21   but further noted that many prior art references cited by the reexamination requester
22   disclosed golf club heads with a c-shaped slot having an open end facing forwardly
23   toward the ball striking face. (Ex. 10).

24
25

26   [1] Mr. Gallagher is an attorney for Adams Golf, Inc. Antonious and Adams Golf are
27   involved in litigation concerning the '754 Patent in the District of New Jersey
     captioned *Irrevocable Trust of Anthony J. Antonious v. Adams Golf, Inc. et al.*, Civil
28   Action No. 2:08-cv-03253.

1    In a March 23, 2009 Office Action, the USPTO confirmed the patentability of

2  independent claim 8 and dependent claim 2 of the '754 Patent because of their

3  recited combination of a c-shaped slot on the bottom surface of the club head

4  together with a venturi opening in fluid communication with and extending

5  rearwardly from the c-shaped slot toward the rear surface of the club head.

6  However, the USPTO rejected all of the other claims of the '754 Patent as either

7  anticipated by, or as having been obvious in view of, numerous prior art references

8  cited by the reexamination requester.  (Ex. 11).

9    On April 22, 2009, in response to the USPTO Office Action, Antonious filed

10  an Amendment canceling '754 Patent claim 4, amending claims 1, 3 and 5-7, and

11  adding new claim 9.  (Ex. 12, pp. 100-102).  Most significantly, independent claim 1

12  was amended, and independent claim 9 was drafted, to include two significant,

13  substantive limitations that did not appear in any of the originally-issued '754 Patent

14  claims.  First, each of amended claim 1 and new claim 9 now recited that the

15  claimed aerodynamic configuration in the form of a c-shaped slot was "substantially

16  parallel" to/with the bottom surface of the club head.  Second, each of amended

17  claim 1 and new claim 9 now recited that the club head included a virtual centerline,

18  with amended claim 1 further reciting "said c-shaped slot transecting" the virtual

19  centerline, and new claim 9 reciting "a portion thereof [of the slot] passing through"

20  the virtual centerline.  Additionally, whereas each of originally-issued independent

21  claims 1, 4 and 8 recited that the claimed aerodynamic configuration was disposed

22  "on" the bottom surface of the club head, new claim 9 significantly recited that the

23  claimed aerodynamic configuration was disposed "within" the bottom surface of the

24  club head.  (*Id.*).

25    Antonious then relied upon these new significant, substantive claim

26  limitations to distinguish over the prior art references applied by the Examiner.  For

27  example, Antonious relied upon the "substantially parallel" limitation to distinguish

28  over the Air Bear ("Air Bear" or "AB," Ex. 18) club head, U.S. Patents Nos.

1  6,257,991 ("Ortiz," Ex. 19) and Des. 350,176 ("Antonious '176," Ex. 20), whose c-
2  shaped slots were allegedly not substantially parallel to/with the bottom surface of
3  the club head. By way of further example, Antonious relied upon the "transecting"
4  and "passing through" limitations to distinguish over U.S. Patent No. Des. 363,961
5  ("Krzynowek," Ex. 21), whose c-shaped slot allegedly did not transect or pass
6  through a virtual centerline of the club head. Additionally, Antonious relied upon
7  the "within" the bottom surface limitation to distinguish, *e.g.*, Ortiz and Antonious
8  '176. (Ex. 12, pp. 108-109).

9      Following a further exchange of communications between the USPTO and
10  Antonious in August and September of 2009, and some additional revisions to the
11  '754 Patent specification and claims, the USPTO, on October 9, 2009, issued a
12  Notice Of Intent To Issue Ex Parte Reexamination Certificate. (Ex. 17). In that
13  Notice, the USPTO Examiner stated his reasons for patentability and/or
14  confirmation of the claims to be, *inter alia*: (1) claim 1 is patentable because the
15  cited prior art fails to teach a golf club head having a c-shaped slot on the bottom
16  surface of the club head, the slot being substantially parallel with the bottom surface
17  and transecting a centerline of the club head, (2) claims 2, 3 and 7 are patentable
18  because of their dependency from claim 1, and because of claim 2's recitation of the
19  combination of a c-shaped slot and a venturi opening, (3) claim 8 is confirmed as
20  patentable because of its recitation of the combination of a c-shaped slot and a
21  venturi opening, (4) claim 9 is patentable because the cited prior art fails to teach a
22  golf club head having a c-shaped slot within the bottom surface of the club head, the
23  slot being substantially parallel to the bottom surface and a portion of the slot
24  passing through a club head centerline, and (5) claims 5 and 6 are patentable
25  because of their dependency from claim 9. (*Id.*).

26      A Reexamination Certificate thereafter issued with respect to the '754 Patent
27  on January 5, 2010 (Ex. 3, p. 12). The Reexamination Certificate: (1) confirmed the
28  patentability of claim 8, (2) noted the cancellation of claim 4, (3) indicated the

1   patentability of claims 1, 3, 5, 6 and 7 as amended, (4) indicated the patentability of

2   claim 2 as dependent on amended claim 1, and (5) indicated the patentability of

3   newly added claim 9.  In the Reexamination Certificate, language added to the

4   originally-issued claims (and new claim 9) is shown in italics, and language

5   removed from the originally-issued claims is shown in brackets.  (Ex. 3, p. 13).

6   **III.   ARGUMENT**

7       **A.   Applicable Law**

8           **1.   Summary Judgment Standard**

9           Summary judgment should be granted where, as here, there is no genuine

10   issue as to any material fact and the moving party is entitled to judgment as a matter

11   of law.  Fed. R. Civ. P. 56(c).  Summary judgment should be entered against a party

12   that fails "to make a showing sufficient to establish the existence of an element

13   essential to that party's case, and on which that party will bear the burden of proof at

14   trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552, 91

15   L.Ed.2d 265 (1986).  "Summary judgment is as appropriate in a patent case as it is

16   in any other case."  *Desper Prods., Inc. v. QSound Labs, Inc.*, 157 F.3d 1325, 1332

17   (Fed. Cir. 1998).

18           As discussed in greater detail below, a patentee of a reexamined patent is

19   entitled to damages for activities occurring or commencing prior to the issuance of

20   the reexamined claims only if the original and reexamined claims are "substantially

21   identical."  35 U.S.C. §§ 252 and 307(b).  The issue of whether a reexamined claim

22   is "substantially identical" to an originally issued claim is a matter of law.  *See*

23   *Laitram Corp. v. NEC Corp.*, 163 F.3d 1342, 1346-1347 (Fed. Cir. 1998)("*Laitram*

24   *IV*").  Thus, courts have granted summary judgment in this very context, holding

25   that, as a matter of law, a party is entitled to judgment limiting the recovery of

26   damages.  *See, e.g., Kim v. Earthgrains Co.*, 2010 WL 625220 (N.D.Ill. Feb. 18,

27   2010) (Ex. 24).

28

7

1   The determination of whether or not reexamined claims are "substantially

2   identical" to original claims can be made, in cases such as the instant case, as "an

3   inescapable conclusion upon a mere reading of those claims," *i.e.*, without the need

4   for extensive claim construction. *See Duval Wiedmann, LLC v. Inforocket.com,*

5   *Inc.*, 620 F.3d 496, 504 (5th Cir. 2010), *quoting Fortel Corp. v. Phone-Mate, Inc.*,

6   825 F.2d 1577, 1580-81 (Fed. Cir. 1987); *Laitram IV*, 163 F. 3d at 1348 ("NEC

7   correctly observes that a plain reading of the claims would indicate that the original

8   and reexamined claims are of different scope . . . ."). In any event, any necessary

9   claim construction can be conducted in the context of a summary judgment motion

10  without the need for a special claim construction (Markman) proceeding. *Markman*

11  *v. Westview Instrs., Inc.*, 52 F.3d 967, 981 (Fed. Cir. 1995) (*en banc*), *aff'd,* 517 U.S.

12  370, 116 S.Ct. 1384, 134 L.Ed.2d 577 (1996). This is particularly so given that

13  "only those terms need to be construed that are in controversy and only to the extent

14  necessary to resolve the controversy." *Vivid Techs., Inc. v. American Science &*

15  *Eng'g, Inc.*, 200 F.3d 795, 803 (Fed. Cir. 1999).

16  ### 2.   **Reexamination "Substantially Identical" Standard**

17  35 U.S.C. §307(b) (Ex. 27) provides, in part, as follows:

18      Any proposed amended or new claim determined to be

19      patentable and incorporated into a patent following a

20      reexamination proceeding will have the same effect as that

21      specified in section 252 of this title for reissued patents on the

22      right of any person who made, purchased, or used within the

23      United States, or imported into the United States, anything

24      patented by such proposed amended or new claim, ... prior to

25      issuance of a certificate under the provisions of subsection (a)

26      of this section.

27  35 U.S.C. §252 (Ex. 28) includes two paragraphs. The first paragraph

28  provides, *inter alia*, that a reissue patent shall have effect continuously from the date

8

1   of an original patent only to the extent that the claims of the reissue patent are

2   "substantially identical" to the claims of the original patent.[2]  The second paragraph

3   provides, *inter alia*, that a person shall have the right after the date of reissue "to sell

4   to others to be used, offered for sale, or sold" any specific thing that was in existence

5   in the United States before the date of reissue, unless the post-reissue sale "infringes

6   a valid claim of the reissued patent which was in the original patent."

7          Thus, §§307(b) and 252 together (1) preclude a patentee from recovering

8   damages for any infringing act occurring before a reexamination certificate is

9   issued, and (2) further provide an alleged infringer with "absolute intervening

10  rights" to sell or use, after the issuance of a reexamination certificate, any specific

11  thing that was in existence in the United States before the reexamination certificate

12  issued, unless an infringed claim of the reexamined patent is substantially identical

13  to a claim of the original patent. *Id.*; *Shockley v. Arcan, Inc.*, 248 F.3d 1349, 1359-

14  60 (Fed. Cir. 2001); *Laitram IV*, 163 F.3d at 1346; *Bloom Engineering Co. v. North*

15  *American Mfg. Co.*, 129 F.3d 1247, 1249-50 (Fed. Cir. 1997); *BIC Leisure*

16  *Products, Inc. v. Windsurfing Int'l, Inc.*, 1 F.3d 1214, 1220-21 (Fed. Cir. 1993);

17  *Fortel Corp.*, 825 F.2d at 1579-81; *Atlantic Constr. Fabrics, Inc. v. Metrochem,*

18  *Inc.*, 2008 WL 4414763 (W.D. Wash. Sept. 24, 2008) (Ex. 30); Chisum, *Patents,*

19  §15.05[1][a] (2005) (Ex. 29).[3]  The making of substantive changes in the claims

20  during reexamination is treated as an irrebuttable presumption that the original

21

22  [2] The pre-1999 version of §252 included the word "identical," rather than

23  "substantially identical."  Congress amended §252 in 1999, consistent with pre-1999

24  Federal Circuit precedent, to explicitly state that rights apply unless the claims are

    "substantially identical."  *See Engineered Data Products, Inc. v. GBS Corp.*, 506

25  F.Supp.2d 461, 466-467 n. 1 (D. Colo. 2007).

26  [3] "Equitable intervening rights" may further protect an accused infringer from other

27  infringing acts occurring for some period of time after a reexamination certificate.

    *See, e.g., BIC Leisure Products,* 1 F.3d at 1221.  However, Cleveland Golf's

28  potential equitable intervening rights are beyond the scope of this motion.

1  claims were materially flawed. *Laitram IV, id.*; *Bloom, id.*  Thus, in that event the

2  statutes relieve those who may have infringed the original claims from liability with

3  respect to products in existence prior to the date of the reexamination certificate.  *Id.*

4        In determining whether substantive changes have been made to claims during

5  reexamination, the Court must determine whether the scope of the reexamined and

6  original claims is different. *Laitram IV*, 163 F.3d at 1346.  As noted above, that

7  determination may be made as "an inescapable conclusion upon a mere reading of

8  those claims." *Duval Wiedmann,* 620 F.3d at 504, *quoting Fortel Corp.*, 825 F.2d at

9  1580-81.  The addition of claim limitations to distinguish over prior art and obtain

10  allowance during reexamination "is a highly influential piece of prosecution history"

11  further demonstrating substantive changes in claim scope. *Laitram IV*, 163 F.3d at

12  1348 ("[I]t is difficult to conceive of many situations in which the scope of a

13  rejected claim that became allowable when amended is not substantively changed by

14  the amendment ...."). The patentee "has the burden of proving patent infringement

15  at trial and thus has the burden of proving the possibility of patent infringement [*i.e.*,

16  the presence of substantially identical original and reexamined claims] to avoid

17  summary judgment." *Earthgrains*, 2010 WL 625220 at *3, *citing Applied Medical*

18  *Resources Corp. v. U.S. Surgical Corp.*, 448 F.3d 1324, 1333 (Fed. Cir. 2006).

19        Consistent with the foregoing legal principles, the Federal Circuit and other

20  courts have consistently determined claims to have been substantively changed (*i.e.*,

21  not to be "substantially identical" to their original counterparts) where new

22  limitations are added to the claims, particularly when those new limitations were

23  relied upon during reexamination to distinguish over prior art.  For example, in

24  *Laitram IV*, an amendment limiting recited alpha-numeric characters to "type

25  quality" characters was determined to constitute a substantive change, particularly

26  given that the added limitation was relied upon to distinguish over the prior art and

27  gain allowance. *Laitram IV*, 163 F.3d at 1348-49.  In *Bloom Engineering*, the

28  Federal Circuit held that the addition of the phrase "separate from the combustion

1   air stream" to claims was a substantive change, thus precluding recovery of damages

2   for acts prior to the date of a reexamination certificate. *Bloom Engineering*, 129

3   F.3d at 1250-51. Other examples abound. *E.g., Seattle Box Co. v. Industrial*

4   *Crating & Packing, Inc.*, 731 F.2d 818, 827-28 (Fed. Cir. 1984) (addition of

5   "substantially equal to or" before "greater than" was a substantive claim change);

6   *Earthgrains*, 2010 WL 625220 at *3-*5 (changing phrase from "consisting

7   essentially of" to "consisting of" narrowed the claim scope and was thus a

8   substantive change); *I-Flow Corp. v. Apex Medical Tech., Inc.*, 2010 WL 144405,

9   *3-*5 (S.D. Cal. Jan. 12, 2010) (Ex. 25) (amending claims to state that a housing is

10   "loosely positioned around said sleeve means," and that it defines a chamber

11   between the sleeve means and the housing, are substantive changes); *Atlantic*

12   *Constr. Fabrics*, 2008 WL 4414763 at *4-*7 (adding "preforming the filter bag by

13   joining sidewall portions together" was a substantive change).[4]

14        Only where claim amendments during reexamination merely clarify existing

15   claim language have courts held that such claim amendments do not constitute

16   substantive changes, such that reexamined and original claims are "substantially

17   identical." For example, in *Predicate Logic, Inc. v. Distributive Software, Inc.*, 544

18   F.3d 1298, 1304-06 (Fed. Cir. 2008), the Court determined that replacing a claim

19   step of "instantiating" with multiple steps of "first instantiating" and "second

20   instantiating" did not change the scope of the claim because a "comparing" step in

21   the original claim already required two instantiations. By way of an additional

22

23   [4] *See also, e.g., Neupak, Inc. v. Ideal Mfg. and Sales Corp.*, 41 Fed. Appx. 435, 442-
44 (Fed. Cir. 2002) (addition of "removable" before "connection" constituted a

24   substantive change in claim language, particularly where "removable" was used to
distinguish over the prior art), and *Abbey v. Robert Bosch GmbH*, 1999 WL 819683,

25   *3 (Fed. Cir. Oct. 6, 1999) (Ex. 26) (change in response to a prior art rejection from

26   "interior flow passage" to "interior central parabolic venturi flow passage . . . " was
a substantive change). Because these two cases were indicated to be "not for

27   publication" or "unpublished," Cleveland Golf does not rely upon them as precedent

28   but identifies them only for the Court's information.

1   example, in *Minco, Inc. v. Combustion Engineering, Inc.*, 95 F.3d 1109, 1115 (Fed.

2   Cir. 1996), the Court determined that substitution of "housing" for "furnace" was not

3   a substantive change because the term "furnace" had been used in the original claim

4   in accordance with its narrow sense in the specification as referring only to the

5   housing.  Other examples are similar.  *E.g., Tennant Co. v. Hako Minuteman, Inc.*,

6   878 F.2d 1413, 1417 (Fed. Cir. 1989) (change of "first wall" to "first bottom wall"

7   was not a substantive change where the original claim recited a "second bottom

8   wall" such that it was clear that the "first wall" was also a "bottom" wall); *Slimfold*

9   *Mfg. Co. v. Kinkead Industries*, 810 F.2d 1113, 1116 (Fed. Cir. 1987) (adding the

10  antecedent "a collar on said sleeve" was just a clarification of the existing claim

11  language that referred to the sleeve and collar and was not needed to distinguish

12  prior art); *Kaufman Co. v. Lantech, Inc.*, 807 F.2d 970, 977 (Fed. Cir. 1986)

13  (amendment to expressly reflect a difference in rotational speeds of stretch wrap

14  rollers was merely a clarification of language already present in the original claims);

15  *Key Mfg. Group, Inc. v. Microdot, Inc.*, 679 F. Supp. 648, 661-63 (E.D. Mich. 1987)

16  (addition of language to claims directed to a capped wheel nut merely clarified

17  features that were already inherent in the original claim language).

18      As discussed below, it is evident from these two lines of cases that the instant

19  case clearly involves substantive claim changes, not merely clarification of existing

20  claim language.  More particularly, in the instant case, new limitations were added

21  to the claims during reexamination, and those limitations were relied upon by

22  Antonious to distinguish over the prior art and by the Examiner as a basis for

23  allowing the reexamined claims.

24      **B.    Plaintiff Does Not Assert Infringement Of**

25          **Claim 8, The Only Claim Of The Original**

26          **'754 Patent Remaining After Reexamination**

27      Claim 8 of the '754 Patent is the only originally issued claim that was

28  confirmed in the reexamination.  In other words, claim 8 is the only claim of the

1 original '754 Patent that was not canceled, amended, newly added, or dependent
2 from a claim amended during reexamination.

3     Antonious does not assert that Cleveland Golf infringes claim 8 of the '754
4 Patent. Rather, Antonious only asserts infringement of independent claim 9, which
5 was newly added in the reexamination, and claims 5 and 6, which were amended
6 during the reexamination to depend from claim 9. (Ex. 4, p. 18).

7     **C.**    **Asserted Reexamined Claims 5, 6, and 9**
8         **Are Not "Substantially Identical"**
9         **To Any Original Claims Of The '754 Patent**

10     For any damages to be assessed based on products in existence in the United
11 States prior to the January 5, 2010 date of the Reexamination Certificate, Antonious
12 must prove that the asserted reexamined claims are substantially identical to original
13 patent claims. Based on communications with Antonious's counsel, Cleveland Golf
14 understands Antonious's position to be that asserted reexamined independent claim
15 9 is substantially identical only to original, now-canceled independent claim 4, and
16 that asserted reexamined dependent claims 5 and 6 are therefore substantially
17 identical to original dependent claims 5 and 6.[5] However, as fully explained below,
18 the reexamined claims asserted by Antonious in this case (claims 9, 5 and 6) are <u>not</u>
19 substantially identical to any originally issued claims, including original claims 4, 5
20 and 6.

21

22 _____

23 [5] Accordingly, this brief focuses on the differences between original claim 4 and
reexamined claim 9. In any event, the asserted reexamined claims are substantively
24 different from the other original claims of the '754 Patent as well because, among
other reasons, (a) original independent claim 1 and dependent claims 2, 3, and 7
25 require "a skid surface" and a "wall separating said skid surface from said bottom
26 surface;" and (b) original independent claim 8 requires "a venturi opening in fluid
communication with and extending rearwardly from said c-shaped aerodynamic slot
27 toward said rear surface." By contrast, asserted reexamined claims 5, 6, and 9 do
28 not include these limitations.

### 1.   Comparison Of Original '754 Patent
### Claims 4, 5, 6 And Asserted Reexamined Claims 9, 5, 6

Originally-issued independent claim 4 of the '754 Patent is reproduced below next to independent claim 9 of the '754 Patent that was newly added during reexamination upon cancellation of claim 4 (with bold emphasis in claim 9 of new limitations not included in canceled claim 4):

| Original Claim 4 | Reexamined Claim 9 |
| --- | --- |
| 4. An aerodynamic golf club head including a club head body having a heel, toe, rear surface, ball striking face, upper surface and bottom surface, wherein the improvement comprises: | 9.  An aerodynamic golf club head including a club head body having a heel, toe, rear surface, ball striking face, upper surface and bottom surface, in which the improvement comprises: |
| an aerodynamic configuration on said bottom surface adjacent said rear surface in the form of a c-shaped slot having an open end facing forwardly toward said ball striking face; said slot being offset from a center of said bottom surface centerline passing through a longitudinal in a heel-to-toe direction. | an aerodynamic configuration **within, and substantially parallel to**, said bottom surface, adjacent said rear surface, in the form of a c-shaped slot having an open end facing forwardly toward said ball striking face, said slot offset from, **and a portion thereof passing through, a virtual centerline** passing transversely through a heel-to-toe axis of said club head. |

Originally-issued claims 5 and 6 depended from claim 4 and therefore incorporated each of the features of claim 4 by virtue of their dependency.  During reexamination, claims 5 and 6 were simply amended to depend from new claim 9

14

1  rather than from canceled claim 4.  Reexamined claims 5 and 6 therefore now read
2  as follows:

3          5. The aerodynamic golf club head of claim 9 wherein said slot
4          is offset toward said heel.
5          6. The aerodynamic golf club head of claim 9 wherein said slot
6          is offset toward said toe.

7          Antonious's position is that original claim 4 is substantially identical to
8  reexamined claim 9.  Such position is untenable.  It is apparent from a plain reading
9  of original claim 4 and reexamined claim 9 that original claim 4 is different in at
10 least three significant, substantive respects: (1) original claim 4 does not include the
11 limitation of claim 9 that the aerodynamic configuration is "substantially parallel to"
12 the bottom surface; (2) original claim 4 recites that the aerodynamic configuration is
13 "on" the bottom surface whereas reexamined claim 9 recites that it is "within" the
14 bottom surface; and (3) original claim 4 requires that the slot be "offset from a
15 center of said bottom surface centerline passing through a longitudinal in a heel-to-
16 toe direction" whereas reexamined claim 9 requires that the slot be "offset from, and
17 a portion thereof passing through, a virtual centerline passing transversely through a
18 heel-to-toe axis of said club head."

19         In all of these respects, original claim 4 is broader than reexamined claim 9,
20 which was, of necessity, narrowed by Antonious in an effort to distinguish over the
21 prior art as discussed in detail below.  As noted above, in determining whether a
22 reexamined claim is "substantially identical" to an original claim, the Court must
23 determine whether (1) a reexamined claim was substantively changed in scope as
24 compared with an original claim, or (2) differences in claim language constitute
25 mere clarifications of limitations already present in the original claim.  *Laitram IV*,
26 163 F.3d at 1346.  As well illustrated by the following diagram, the differences
27 between reexamined claim 9 and original claim 4 are indeed substantive differences
28 resulting in a narrowed scope of claim 9, not mere clarifications.

### Narrowing of Claim 9 Versus Claim 4

**Original Claim 4:**
C-shaped slot on bottom
surface of club head

**Reexamined Claim 9:**
C-shaped slot within bottom
surface of club head

and

slot substantially
parallel to bottom
surface

and

portion of slot passes
through a virtual centerline
of club head.

It is evident from a mere comparison or "plain reading" of original claim 4 and reexamined claim 9 that the claims differ in scope such that reexamined claim 9 was substantively changed compared to claim 4. Specifically, as illustrated in the above diagram, reexamined claim 9 is narrower in scope by the inclusion of at least three features not present in original claim 4 (or any other original patent claim). Accordingly, claim 9 does not encompass some products and prior art, without those features, which products and prior art were previously encompassed by claim 4.

### 2.    Antonious's Reliance Upon The Added Features Of Claim 9 To Obtain Allowance Of Reexamined Claims 9, 5 and 6

When Antonious added reexamined claim 9 in the April 22, 2009 Amendment, he acknowledged that claim 9 includes additional features not found in claim 4, for example:

> Patentee has also cancelled original claim 4 in favor of new
> Claim 9. New Claim 9 recites that the aerodynamic

16

1           configuration <u>within</u> the bottom surface of the club <u>is also</u>
2           <u>substantially parallel therewith.</u>
3   (Ex. 12, p. 103, emphasis added).

4       Significantly, Antonious relied on features recited in reexamined claim 9, not
5   present in original claim 4, to obtain allowance of claim 9 (and dependent claims 5
6   and 6) over prior art applied by the Examiner during the reexamination.
7   Specifically, in distinguishing prior art, Antonious relied on the claim 9 features of
8   (a) the aerodynamic configuration being within and substantially parallel to the
9   bottom surface, and (b) a portion thereof (of the offset slot) passing through a virtual
10  centerline of the club head.

11      Regarding the newly recited features that the aerodynamic configuration is
12  "within" and "substantially parallel" to the bottom surface, Antonious presented the
13  following arguments in the April 22, 2009 Amendment (including accompanying
14  Declarations submitted under 37 C.F.R. §1.132), with emphasis added here:

15      • "[T]he aerodynamic channel of the [Air Bear reference] . . . . also does
16          not define a plane which is <u>substantially parallel</u> with the sole plate of
17          the club" (Ex. 12, p. 106);

18      • "[T]he curvature of the aerodynamic channel of the Air Bear was not
19          <u>parallel</u> to either the sole plate or the crown of the club" (Ex. 13, p. 115,
20          ¶12);

21      • "[A]s I have personally observed, the heel end of the Air Bear channel
22          curves upward, away from the club face and toward the hosel, while the
23          toe end of the Air Bear channel is larger and curved downward toward
24          the club face.  As such, the channel of the Air Bear is not <u>substantially</u>
25          <u>parallel</u> to the sole plate of the club" (Ex. 14, p. 135, ¶8);

26      • "[T]he c-shaped groove of [Ortiz] exhibited an irregular crown-to-sole
27          axis geometry and was not <u>parallel</u> to the sole plate" (Ex. 13, p. 122,
28          ¶31);

17

1    • "Also, as may be seen in Fig. 2, the slot 54 of Ortiz is not formed

2       within the bottom surface of the club and is certainly not parallel

3       therewith" (Ex. 12, p. 108);

4    • "[A]s may be clearly seen in the views of Figs. 4 and 5 [of Antonious

5       '176], cavities are formed within the sidewalls, as opposed to the

6       bottom of the club" (Ex. 12, p. 109); and

7    • "Antonious '176 does not teach any unitary offset channel whatsoever

8       or an aerodynamic groove parallel to the sole plate" (Ex. 12, p. 109).

9    Antonious thus relied on the recitation in claim 9 that the aerodynamic

10   configuration is within and substantially parallel to the bottom surface to distinguish

11   the Air Bear, Ortiz, and Antonious '176 references that were applied by the

12   reexamination Examiner in rejecting the '754 Patent claims.

13   Antonious further distinguished claim 9 over Krzynowek based on the newly

14   added feature in claim 9 that the offset slot has a portion passing through a virtual

15   centerline of the club head (emphasis added here):

16   • "[T]he sole cavity in the plate of [Krzynowek] transects an angle of

17      about 60 degrees, [and] does not pass through the face-to-rear

18      centerline . . . . " (Ex. 13, p. 121, ¶28); and

19   • "In particular, Krzynowek does not teach the use of an aerodynamic

20      slot which passes through a front-to-rear centerline of the club . . . ."

21      (Ex. 12, p. 107).

22   These excerpts from the reexamination history demonstrate that, in

23   distinguishing prior art references, Antonious relied on the newly recited features in

24   reexamined claim 9.  The reexamination Examiner, in turn, relied on Antonious's

25   arguments in allowing claim 9 and dependent claims 5 and 6.  In the October 9,

26   2009 Notice of Intent to Issue Ex Parte Reexamination Certificate, the Examiner

27   stated his reasons for patentability of claims 9, 5 and 6 as follows:

28

Claim 9 is patentable because the cited prior art patents and printed publications fail to teach a golf club head, as defined in this claim, including a C-shaped slot **within the bottom surface** of the club head, the **slot being substantially parallel to the bottom surface** and offset from a centerline passing transversely through a heel-to-toe axis of the club head, **with a portion of the slot passing through the centerline**.

Claims 5 and 6 are patentable because of their dependency from claim 9.

(Ex. 17, p. 161, emphasis added).

Thus, the reexamination Examiner allowed claim 9 (and dependent claims 5 and 6) based on the features of claim 9 that are not present in original claim 4 (shown in bold above). Having convinced the Examiner to allow claims 9, 5 and 6 based on the newly recited features, Antonious should not now be permitted to assert that such features do not constitute substantive changes to the original claims. As stated in *Laitram IV,* the addition of features that resulted in allowance of claims rejected over prior art is "highly influential" evidence that the claims have been substantively changed. *Laitram IV,* 163 F.3d at 1348.

The features added to claim 9 are not merely clarifications of terms expressly or inherently recited in original claim 4. For example, the claim 9 recitation of "an aerodynamic configuration within, and substantially parallel to, said bottom surface" cannot reasonably be asserted to be a mere clarification of the claim 4 recitation "an aerodynamic configuration on said bottom surface." A slot that is within (*i.e.,* inside the bounds of/surrounded by) and substantially parallel to the bottom surface is a species of the more generic type of slot in claim 4, which is only "on" the bottom surface. That is, claim 9 further defines the position and orientation of the aerodynamic configuration with respect to the bottom surface. Similarly, the claim 9 recitation that a portion of the offset slot passes through a virtual centerline of the

1    club head represents a species of the broader term in claim 4, which only requires
2    the slot to be offset.

3         The Court in *Laitram IV* similarly declined to hold that a species recited in a
4    reexamined claim was substantially identical with a broader genus recited in an
5    original claim. In *Laitram IV*, the patentee, during reexamination, added the term
6    "type quality" in the phrase "type quality alpha-numeric characters." The patentee
7    in *Laitram IV* argued that the reexamined claims had not been substantively changed
8    by the amendments because the "type quality" limitation was allegedly implicit in
9    the original claims. *Id.* at 1347. The Federal Circuit disagreed, noting that "type
10   quality alpha-numeric characters" are simply a species of the genus of "alpha-
11   numeric characters" recited in the original claim, and that the later-added term "type
12   quality" should not be read into the original claim. *Id.* at 1348. The Federal Circuit
13   further noted that the patentee's position "requires a highly strained and incorrect
14   construction of the claims" and "is just an invitation for us to read a limitation into
15   the original claims that is simply not there." *Id.*

16         Antonious might argue that the scope of claim 9 has not been substantively
17   changed because the three newly added features in reexamined claim 9 allegedly are
18   merely inherent features of original claim 4 based on the original claim language.
19   However, unlike *Predicate Logic* and other cases discussed above holding that
20   amended claim language merely constituted a clarification of limitations already
21   recited in the original claims, the claim 9 limitations discussed above are not present
22   in any form in claim 4. Thus, any argument that claim 4 has not been substantively
23   changed would require the Court to read at least three limitations into original claim
24   4 that are simply not present. In considering the scope of original claim 4, the Court
25   may not import limitations from the written description into the claim, because it is
26   the claim, not the written description, which defines the scope of the patent right.
27   *See Laitram IV,* 163 F.3d at 1347.

28

1       There is also nothing in the '754 Patent specification indicating that the slot

2 must be "within" or "substantially parallel to" the bottom surface, or that a portion of

3 it must pass through a virtual centerline, such that those limitations must be read

4 into the claims.  The original '754 Patent specification did not even use the term

5 "substantially parallel" or the word "parallel," did not describe the slot as being

6 "within" the bottom surface, and did not state that a portion of the offset slot passes

7 through a virtual centerline of the club head.  (Ex. 1).  Although Antonious added

8 references to these features to the specification and claims during reexamination

9 purportedly based upon the originally filed drawings (Ex. 16, pp. 151-154; Ex. 3, p.

10 13), Antonious did not describe these features as essential or inherent.  Moreover,

11 although Antonious curiously added description of the slot of Fig. 9 as being on and

12 substantially parallel to the bottom surface (despite clearly being illustrated as

13 positioned in side surface 327), Antonious did not add the "substantially parallel"

14 description to the Fig. 10 embodiment.  (*Id.*)  Even more significantly, Antonious

15 did not add any of these features to independent claim 8 (Ex. 1, p. 10; Ex. 3, p. 13),

16 and the reexamination Examiner did not rely on such features in allowing claim 8

17 (Ex. 17, p. 161), thus clearly demonstrating that these are not necessary features that

18 must be included.

19       In any event, it would be improper to import these features from the

20 specification into original claim 4 just because these features are allegedly present in

21 preferred embodiments.  *See, e.g., Laitram IV*, 163 F.3d at 1348.  *See also, e.g.,*

22 *Bloom Engineering*, in which the Federal Circuit rejected the patentee's argument

23 that the addition of the phrase "separate from the combustion air stream" in the

24 phrase "nozzle means adapted to inject a gas stream separate from the combustion

25 air stream" merely clarified the gas stream described in the specification and

26 drawings and was therefore an implicit limitation of the original claim.  *Bloom*

27 *Engineering*, 129 F.3d at 1250.  The Federal Circuit stated that a separate gas stream

28 "was not a necessary limitation as set forth in the patent," that the amendment

1    "narrowed the claims to exclude an injected gas stream ... and to require a separate

2    combustion air stream," and that the amendment constituted a substantive change in

3    claim scope. *See also, e.g., I-Flow*, 2010 WL 144405 at *4 (rejecting a patentee's

4    argument that the specification inherently or implicitly limits the original claims

5    based on the embodiments shown in the drawings: "[A]lthough the drawings depict

6    a housing means that is loosely positioned around the sleeve means . . . those

7    drawings do not operate as limitations on the scope of the claim. Indeed, Plaintiff

8    fails to cite any portion of the '481 Patent that requires those limitations to be read

9    into the original claims.").

10    **IV.**    **CONCLUSION**

11        For the above reasons, reexamined claims 9, 5 and 6 of the '754 Patent

12    asserted by Antonious in this lawsuit are not substantially identical to any originally

13    issued claims of the '754 Patent. The provisions of 35 U.S.C. §§252 and 307(b)

14    therefore preclude an award of damages for products present in the United States

15    prior to the January 5, 2010 date of the Reexamination Certificate. The Court

16    should therefore grant Cleveland Golf's motion for partial summary judgment.

17

18                            Respectfully submitted,

19                            **CANNON & NELMS, A PC**

20                            **OLIFF & BERRIDGE, PLC**

Dated: December 13, 2010

21                            By:   /S/-Anthony L. Cannon

22                                  Anthony L. Cannon

                                      Edward P. Walker

23                                  John W. O'Meara

24                                  Attorneys for

25                                  Defendant/Counterclaim Plaintiff,

                                      ROGER CLEVELAND GOLF

26                                  COMPANY, INC.

27

28