ANTHONY L. CANNON (CA Bar No. 162986)
**CANNON & NELMS**
160 S. Old Spring Road, Suite 200
Anaheim, CA 92808
Telephone: (714) 637-4400
Facsimile: (714) 637-4444
tcannon@cannonnelms.com

EDWARD P. WALKER (*Admitted Pro Hac Vice*)
JOHN W. O'MEARA (*Admitted Pro Hac Vice*)
**OLIFF & BERRIDGE, PLC**
277 South Washington Street, Suite 500
Alexandria, Virginia 22314
Telephone: (703) 836-6400
Facsimile: (703) 836-2787
ewalker@oliff.com; jomeara@oliff.com

**Attorneys for Defendant/Counterclaim Plaintiff,
Roger Cleveland Golf Company, Inc.**

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| THE IRREVOCABLE TRUST OF ANTHONY J. ANTONIOUS, a Florida Trust,<br><br>    Plaintiff/Counterclaim Defendant,<br><br>    v.<br><br>ROGER CLEVELAND GOLF COMPANY, INC., a California Corporation,<br><br>    Defendant/Counterclaim Plaintiff | Case No. SACV10-1198 CJC (RNBx)<br><br>**[PROPOSED] STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW IN SUPPORT OF CLEVELAND GOLF'S MOTION FOR PARTIAL SUMMARY JUDGMENT THAT PLAINTIFF IS PRECLUDED FROM RECOVERING DAMAGES FOR PRODUCTS PRESENT IN THE UNITED STATES BEFORE JANUARY 5, 2010**<br><br>Hearing Date:  January 10, 2011<br>Time:            1:30 p.m.<br>Place:           Courtroom 9B<br>Judge:          Hon. Cormac J. Carney |

Pursuant to L.R. 56-1, Defendant/Counterclaim Plaintiff Roger Cleveland Golf Company, Inc. ("Cleveland Golf") submits the following Statement of Uncontroverted Facts and Conclusions of Law in support of its Motion for Partial Summary Judgment that Plaintiff/Counterclaim Defendant The Irrevocable Trust of Anthony J. Antonious ("Plaintiff" or "Antonious," also used herein to refer to Mr. Anthony J. Antonious) should be precluded from recovering damages for products that were present in the United States prior to January 5, 2010.

I. **UNCONTROVERTED FACTS**

   A. **The Asserted '754 Patent**

   1. Antonious asserts that Cleveland Golf's Launcher golf club products infringe claims 5, 6, and 9 of U.S. Patent No. 5,735,754 ("'754 Patent"). Antonious does not assert infringement of any other claims. (Summary Judgment Motion Exhibit (hereinafter "SJ Ex.") 4, p. 18).

   2. The '754 Patent is directed to an "Aerodynamic Metal Wood Golf Club Head." (SJ Ex. 1, p. 5).

   3. The '754 patent issued on April 7, 1998, from U.S. Patent Application No. 08/759,924 filed on December 4, 1996. (SJ Ex. 1, p. 5).

   4. The '754 Patent originally issued with eight claims, independent claims 1, 4 and 8, and dependent claims 2, 3 and 5-7. All of the claims recited an aerodynamic golf club head comprising, *inter alia*, an aerodynamic configuration on the club head's bottom surface in the form of a c-shaped slot having an open end facing forwardly toward the ball striking face. (SJ Ex. 1, p. 10).

   5. The '754 Patent was reexamined. As a result of reexamination, the only originally-issued claim remaining was claim 8. (SJ Ex. 3, p. 13).

   6. During the reexamination, claim 4 was canceled, claims 1, 3 and 5-7 were amended, claim 2 depended on amended claim 1, and new independent claim 9 was added. (SJ Ex. 3, p. 13).

### B. Original Prosecution History Of The '754 Patent

7. The '754 Patent application (08/759,924) was filed on December 4, 1996 with seven original claims. (SJ Ex. 5, pp. 28 and 29).

8. Claims 1, 2 and 5-7 of the originally-filed '754 Patent application ultimately issued as '754 Patent claims 1, 2, 5, 6 and 8, respectively, without amendment. (SJ. Ex. 1, p. 10; SJ Ex. 5, pp. 28 and 29).

9. In a June 9, 1997 Office Action, the USPTO indicated that originally presented claims 1, 2 and 7 were allowable over the prior art of record. Claims 3-6 were objected to for lack of clarity. No claims were rejected in view of prior art. (SJ Ex. 6, pp. 34 and 35).

10. In a June 24, 1997 Amendment, Antonious amended claims 3 and 4, and added another dependent claim 8. (SJ Ex. 7, p. 36).

11. Dependent claim 8, added in the June 24, 1997 Amendment, ultimately issued as '754 Patent claim 7. (SJ Ex. 1, p. 10; SJ Ex. 7, p. 36).

12. During a July 9, 1997 telephone interview, Antonious and the USPTO Examiner agreed upon some additional amendments to claim 4 and claim 8 (issued claim 7). These amendments were made by Examiner's Amendment in a July 18, 1997 Notice of Allowance. (SJ Ex. 8, p. 40).

13. In the July 18, 1997 Notice of Allowance, the Examiner stated as his reasons for allowance: "Claims 1-8 are allowable over the prior art references of record because it would not have been obvious to modify any of the prior art devices of record to include a c-shaped slot having an open end facing forwardly toward the ball striking face." (SJ Ex. 8, p. 40).

### C. Correction And Reexamination Of The '754 Patent

14. On July 1, 2008, at Antonious's request, the USPTO issued a Certificate of Correction with respect to the '754 Patent to correct claim 6 so that it depended from claim 4 rather than from claim 3. (SJ Ex. 2).

3

15.     A Request for Reexamination of the '754 Patent was filed in the USPTO on September 2, 2008 by third party requester Michael J. Gallagher. (SJ Ex. 9).

16.     On November 7, 2008, the USPTO ordered reexamination of claims 1-8 of the '754 Patent. (SJ Ex. 10).

17.     In ordering reexamination, the USPTO noted the original prosecution Examiner's above-quoted reasons for allowing the application to issue as a patent (¶13 above), but further noted that many prior art references cited by the reexamination requester disclosed golf club heads with a c-shaped slot having an open end facing forwardly toward the ball striking face. (SJ Ex. 10, pp. 80-83).

18.     In ordering reexamination, the USPTO also stated that the following references, among others, raised a substantial new question of patentability: (a) "Air Bear #3," Golf Digest, April 1996, "Air Bear #6," Golf Magazine, May 1996, "Air Bear #7," Golf Magazine, September 1996 (collectively referred to herein as "Air Bear" or "AB," SJ Ex. 18); (b) U.S. Patent No. Des. 363,961 to Krzynowek et al. ("Krzynowek," SJ Ex. 21); (c) U.S. Patent No. 6,257,991 to Ortiz ("Ortiz," SJ Ex. 19); and (d) U.S. Patent No. Des. 350,176 to Antonious ("Antonious '176," SJ Ex. 20). (SJ Ex. 10, at pp. 81-84).

19.     In a March 23, 2009 Office Action, the USPTO confirmed the patentability of independent claim 8 and dependent claim 2 of the '754 Patent, stating "Claims 2 and 8 are confirmed as patentable because the cited prior art patents and printed publications fail to teach a golf club head, as defined in these claims, including a C-shaped slot on the bottom surface of the club head together with a venturi opening in fluid communication with and extending rearwardly from the C-shaped slot toward the rear surface of the club head." (SJ Ex. 11, pp. 94 and 95).

1  20.  In the March 23, 2009 Office Action, the USPTO rejected (a) claims 4 and 6 as being anticipated by the Air Bear references; (b) claims 4 and 5 as being anticipated by Krzynowek; (c) claims 4 and 5 as being anticipated by Ortiz; (d) claims 4-6 as being anticipated by Antonious '176; and (e) claims 1, 3, and 7 as having been obvious over the Air Bear references, Krzynowek and Antonious '176, in view of U.S. Patent No. Des. 372,063 to Hueber (SJ Ex. 22) and U.S. Patent No. 5,456,469 to MacDougall (SJ Ex. 23). (SJ Ex. 11, pp. 91-94).

21.  Antonious filed an Amendment on April 22, 2009 in response to the March 23, 2009 Office Action, and enclosed a Declaration under 37 C.F.R. §1.132 from each of John Gillig and Douglas Winfield. (SJ Ex. 12; SJ Ex. 13; SJ Ex. 14).

22.  In the April 22, 2009 Amendment, Antonious canceled claim 4, amended claims 1, 3 and 5-7, and added claim 9. (SJ Ex. 12, pp. 100-102).

23.  In the April 22, 2009 Amendment, Antonious amended claim 1 to recite that the aerodynamic configuration is "substantially parallel with" the bottom surface and to recite "said c-shaped slot transecting said face-to-rear [virtual] centerline of the club head." (SJ Ex. 12, p. 100).

24.  Claim 9, added in the April 22, 2009 Amendment, recited, among other features, an aerodynamic configuration that is "within, and substantially parallel to, said bottom surface" and "said slot substantially offset from, and a portion thereof passing through, a virtual centerline of said golf club head defined by a longitudinal passing transversely through a heel-to-toe axis of said golf club head." (SJ Ex. 12, pp. 101 and 102).

25.  Originally-issued claim 4 did not include the above-quoted features of amended claim 1 or added claim 9. (SJ Ex. 1, p. 10)

26.  In the Remarks to the April 22, 2009 Amendment, Antonious characterized the applied references cited by the reexamination Examiner, including the following statements: (a) "[T]he aerodynamic channel of the [Air Bear

5

reference] . . . . also does not define a plane which is substantially parallel with the sole plate of the club" (SJ Ex. 12, p. 106); (b) "Also, as may be seen in Fig. 2, the slot 54 of Ortiz is not formed within the bottom surface of the club and is certainly not parallel therewith" (SJ Ex. 12, p. 108); (c) "[A]s may be clearly seen in the views of Figs. 4 and 5 [of Antonious '176], cavities are formed within the sidewalls, as opposed to the bottom of the club" (SJ Ex. 12, p. 109); (d) "Antonious '176 does not teach any unitary offset channel whatsoever or an aerodynamic groove parallel to the sole plate" (SJ Ex. 12, p. 109); and (e) "In particular, Krzynowek does not teach the use of an aerodynamic slot which passes through a front-to-rear centerline of the club . . . ." (SJ Ex. 12, p. 107).

27. The Declaration of John Gillig, submitted by Antonious with the April 22, 2009 Amendment, includes the following statements: (a) "[T]he curvature of the aerodynamic channel of the Air Bear was not parallel to either the sole plate or the crown of the club" (SJ Ex. 13, p. 115, ¶12); (b) "[T]he c-shaped groove of [Ortiz] exhibited an irregular crown-to-sole axis geometry and was not parallel to the sole plate" (SJ Ex. 13, p. 122, ¶31); and (c) "[T]he sole cavity in the plate of [Krzynowek] transects an angle of about 60 degrees, [and] does not pass through the face-to-rear centerline . . . . " (SJ Ex. 13, p.121, ¶28).

28. The Declaration of Douglas Winfield, submitted by Antonious with the April 22, 2009 Amendment, includes the following statements: "[A]s I have personally observed, the heel end of the Air Bear channel curves upward, away from the club face and toward the hosel, while the toe end of the Air Bear channel is larger and curved downward toward the club face. As such, the channel of the Air Bear is not substantially parallel to the sole plate of the club" (SJ Ex. 14, p. 135, ¶8).

29. In an August 27, 2009 Office Action, the USPTO objected to the '754 Patent specification as failing to support claimed subject matter. (SJ Ex. 15, pp. 141 and 142).

6

1  30. In a September 24, 2009 Amendment, Antonious made amendments to
2  the '754 Patent specification adding language to the description of the Figs. 1-5
3  embodiment that the aerodynamic slot is "substantially parallel with" the bottom
4  surface and "transects a virtual centerline." (SJ Ex. 16, p. 151).

5  31. In the September 24, 2009 Amendment, Antonious made amendments
6  to the '754 Patent specification adding language to the description of the Fig. 9
7  embodiment that the aerodynamic slot is "on the bottom surface," "substantially
8  parallel with the bottom surface," and "a portion of slot 330 passing through the
9  virtual centerline." (SJ Ex. 16, p. 151).

10  32. In the September 24, 2009 Amendment, Antonious made amendments
11  to the '754 Patent specification adding language to the description of the Fig. 10
12  embodiment that the aerodynamic slot is "on the bottom surface," and "a portion of
13  slot 430 passing through the virtual centerline." (SJ Ex. 16, p. 152).

14  33. In the September 24, 2009 Amendment, Antonious further amended the
15  claims, including claims 1 and 9, into their issued form. (SJ Ex. 16, pp. 153 and
16  154).

17  34. On October 9, 2009, the USPTO issued a Notice Of Intent To Issue Ex
18  Parte Reexamination Certificate. (SJ Ex. 17).

19  35. The Notice Of Intent To Issue Ex Parte Reexamination Certificate
20  states, under the "examiner's statement of reasons for patentability and/or
21  confirmation of the claims," that: "Claim 9 is patentable because the cited prior art
22  patents and printed publications fail to teach a golf club head, as defined in this
23  claim, including a C-shaped slot within the bottom surface of the club head, the slot
24  being substantially parallel to the bottom surface and offset from a centerline
25  passing transversely through a heel-to-toe axis of the club head, with a portion of the
26  slot passing through the centerline" and "Claims 5 and 6 are patentable because of
27  their dependency from claim 9." (SJ Ex. 17, p. 161).

28

7

36. A Reexamination Certificate issued with respect to the '754 Patent on January 5, 2010. (SJ Ex. 3).

37. The Reexamination Certificate (a) confirmed the patentability of claim 8, (b) noted the cancellation of claim 4, (c) indicated the patentability of claims 1, 3, 5, 6 and 7 as amended, (d) indicated the patentability of claim 2 as dependent on amended claim 1, (e) indicated the patentability of newly added claim 9, and (f) showed the amendments that Antonious made to the specification. (SJ Ex. 3, p. 13).

38. Reexamined claim 9 of the '754 Patent recites, *inter alia*, an aerodynamic configuration "within, and substantially parallel to," the bottom surface, and a slot offset from "and a portion thereof passing through, a virtual centerline." Reexamined claims 5 and 6 depend from claim 9. (SJ Ex. 3, p. 13).

39. None of the originally-issued claims of the '754 Patent include the above-quoted features of reexamined claim 9. (SJ Ex. 1, p. 10).

## II. CONCLUSIONS OF LAW

### A. Summary Judgment

1. Summary judgment should be granted where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).

2. Summary judgment should be entered against a party that fails "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

3. "Summary judgment is as appropriate in a patent case as it is in any other case." *Desper Prods., Inc. v. QSound Labs, Inc.*, 157 F.3d 1325, 1332 (Fed. Cir. 1998).

8

4.  Where there is no genuine issue of any material fact, a party is entitled to summary judgment limiting or precluding recovery of damages based on changes made to a patent claim during reexamination. *See, e.g., Kim v. Earthgrains Co.*, 2010 WL 625220 (N.D.Ill. Feb. 18, 2010) (SJ Ex. 24).

5.  Any claim construction necessary to resolve an issue on summary judgment can be conducted in the context of the summary judgment motion without the need for a special claim construction (Markman) proceeding. *Markman v. Westview Instrs., Inc.*, 52 F.3d 967, 981 (Fed. Cir. 1995) (*en banc*), *aff'd*, 517 U.S. 370, 116 S.Ct. 1384, 134 L.Ed.2d 577 (1996). This is particularly so given that "only those terms need to be construed that are in controversy and only to the extent necessary to resolve the controversy." *Vivid Techs., Inc. v. American Science & Eng'g, Inc.*, 200 F.3d 795, 803 (Fed. Cir. 1999).

**B.  Reexamination "Substantially Identical" Standard**

6.  35 U.S.C. §307(b) (SJ Ex. 27) provides, in part, as follows:

> Any proposed amended or new claim determined to be patentable and incorporated into a patent following a reexamination proceeding will have the same effect as that specified in section 252 of this title for reissued patents on the right of any person who made, purchased, or used within the United States, or imported into the United States, anything patented by such proposed amended or new claim, ... prior to issuance of a certificate under the provisions of subsection (a) of this section.

7.  35 U.S.C. §252 provides, *inter alia*, (1) that a reissue patent shall have effect continuously from the date of an original patent only to the extent that the claims of the reissue patent are "substantially identical" to the claims of the original patent, and (2) that a person shall have the right after the date of reissue "to sell to

9

others to be used, offered for sale, or sold" any specific thing that was in existence in the United States before the date of reissue, unless the post-reissue sale "infringes a valid claim of the reissued patent which was in the original patent." 35 U.S.C. §252 (SJ Ex. 28).

8.  35 U.S.C. §§252 and 307(b) together (1) preclude a patentee from recovering damages for any infringing act occurring before a reexamination certificate is issued, and (2) further provide an alleged infringer with "absolute intervening rights" to sell or use any specific thing that was in existence in the United States before a reexamination certificate issued, unless an infringed claim of the reexamined patent is substantially identical to a claim of the original patent. *Id.; Shockley v. Arcan, Inc.*, 248 F.3d 1349, 1359-60 (Fed. Cir. 2001); *Laitram Corp. v. NEC Corp.*, 163 F.3d 1342, 1346 (Fed. Cir. 1998) ("*Laitram IV*"); *Bloom Engineering Co. v. North American Mfg. Co.*, 129 F.3d 1247, 1249-50 (Fed. Cir. 1997); *BIC Leisure Products, Inc. v. Windsurfing Int'l, Inc.*, 1 F.3d 1214, 1220-21 (Fed. Cir. 1993); *Fortel Corp. v. Phone-Mate, Inc.*, 825 F.2d 1577, 1579-81 (Fed. Cir. 1987); *Atlantic Constr. Fabrics, Inc. v. Metrochem, Inc.*, 2008 WL 4414763 (W.D. Wash. Sept. 24, 2008)(Ex. 30); Chisum, *Patents*, §15.05[1][a](2005)(Ex. 29).

9.  The making of substantive changes in the claims during reexamination is treated as an irrebuttable presumption that the original claims were materially flawed, and in that event 35 U.S.C. §§252 and 307(b) relieve those who may have infringed the original claims from liability with respect to products in existence prior to the date of the reexamination certificate. *Laitram IV, id.; Bloom, id.*

10. The issue of whether a reexamined claim is "substantially identical" to an originally issued claim is a matter of law. *See Laitram IV*, 163 F.3d at 1346-1347.

11. The patentee "has the burden of proving patent infringement at trial and thus has the burden of proving the possibility of patent infringement [*i.e.*, the

10

presence of substantially identical original and reexamined claims] to avoid summary judgment." *Earthgrains Co.*, 2010 WL 625220,*3, *citing Applied Medical Resources Corp. v. U.S. Surgical Corp.*, 448 F.3d 1324, 1333 (Fed. Cir. 2006).

12. In determining whether substantive changes have been made to claims during reexamination such that they are not "substantially identical" to the original patent claims, the Court must determine whether the scope of the reexamined and original claims is different. *Laitram IV*, 163 F.3d at 1346.

13. The determination of whether or not substantive changes have been made to an original claim during reexamination, *i.e.*, whether the original and reexamined claims have different scope, may be made as "an inescapable conclusion upon a mere reading of those claims." *Duval Wiedmann, LLC v. Inforocket.com, Inc.*, 620 F.3d 496, 504 (5th Cir. 2010), *quoting Fortel Corp.*, 825 F.2d at 1580-81. *Accord Laitram IV*, 163 F.3d at 1348 (difference in scope of original and reexamined claims indicated by "a plain reading of the claims").

14. The addition of claim limitations to distinguish over prior art and obtain allowance during reexamination "is a highly influential piece of prosecution history" further demonstrating substantive changes in claim scope. *Laitram IV*, 163 F.3d at 1348 ("[I]t is difficult to conceive of many situations in which the scope of a rejected claim that became allowable when amended is not substantively changed by the amendment ....").

### C. Asserted Reexamined Claims 5, 6, and 9 Are Not "Substantially Identical" To Any Original Claims Of The '754 Patent

15. Reexamined claim 9 of the '754 Patent is substantively changed from originally-issued claim 4 in that claim 9 recites that the aerodynamic configuration is "substantially parallel" to the bottom surface of the golf club head.

16. Reexamined claim 9 of the '754 Patent is substantively changed from originally-issued claim 4 in that claim 9 recites that the aerodynamic configuration is "within" the bottom surface, rather than "on" the bottom surface.

11

17. Reexamined claim 9 of the '754 Patent is substantively changed from originally-issued claim 4 in that claim 9 recites "a portion thereof [of the slot] passing through, a virtual centerline."

18. Reexamined claim 9 of the '754 Patent has a narrower scope than originally-issued claim 4 of the '754 Patent.

19. Reexamined claims 5 and 6 depend from reexamined claim 9 and thus also have a narrower scope than originally-issued claims 5 and 6, which depended from originally-issued claim 4.

20. Reexamined claims 5, 6, and 9 of the '754 Patent asserted by Antonious in this lawsuit are not "substantially identical" to any original claims of the '754 Patent within the meaning of 35 U.S.C. §§ 252 and 307(b).

**D.   Conclusion**

21. As a matter of law, Antonious is precluded from recovering any damages on products present in the United States prior to the January 5, 2010 date of the Reexamination Certificate of the '754 Patent.

Respectfully submitted,

**CANNON & NELMS, A PC**

**OLIFF & BERRIDGE, PLC**

Dated: December 13, 2010

By: /S/-Anthony L. Cannon
Anthony L. Cannon
Edward P. Walker
John W. O'Meara

Attorneys for
Defendant/Counterclaim Plaintiff,
ROGER CLEVELAND GOLF
COMPANY, INC.