UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 90/010,266 | 09/02/2008 | 5735754 | ADAM-070208.044 | 2019 |

| 21884    7590    11/07/2008 | EXAMINER |
|---|---|
| WELSH & FLAXMAN LLC | |

WELSH & FLAXMAN LLC
2000 DUKE STREET, SUITE 100
ALEXANDRIA, VA 22314

| ART UNIT | PAPER NUMBER |
|---|---|
| | |

DATE MAILED: 11/07/2008

Please find below and/or attached an Office communication concerning this application or proceeding.

PTO-90C (Rev. 10/03)

EXHIBIT 10
Page 75



UNITED STATES PATENT AND TRADEMARK OFFICE

Commissioner for Patents
United States Patent and Trademark Office
P.O. Box 1450
Alexandria, VA 22313-1450
www.uspto.gov

**DO NOT USE IN PALM PRINTER**

(THIRD PARTY REQUESTER'S CORRESPONDENCE ADDRESS)

Michael J. Gallagher
GALLAGHER.& DAWSEY CO. LPA
PO Box 785
Columbus, OH 43216

# *EX PARTE* REEXAMINATION COMMUNICATION TRANSMITTAL FORM

REEXAMINATION CONTROL NO. *90/010,266*.

PATENT NO. *5735754*.

ART UNIT *3993*.

Enclosed is a copy of the latest communication from the United States Patent and Trademark Office in the above identified *ex parte* reexamination proceeding (37 CFR 1.550(f)).

Where this copy is supplied after the reply by requester, 37 CFR 1.535, or the time for filing a reply has passed, no submission on behalf of the *ex parte* reexamination requester will be acknowledged or considered (37 CFR 1.550(g)).

PTOL-465 (Rev.07-04)

EXHIBIT 10
Page 76

| **Order Granting / Denying Request For Ex Parte Reexamination** | **Control No.** | | **Patent Under Reexamination** | |
|---|---|---|---|---|
| | 90/010,266 | | 5735754 | |
| | **Examiner** | | **Art Unit** | |
| | PETER C. ENGLISH | | 3993 | |

*--The MAILING DATE of this communication appears on the cover sheet with the correspondence address--*

The request for *ex parte* reexamination filed <u>02 September 2008</u> has been considered and a determination has been made. An identification of the claims, the references relied upon, and the rationale supporting the determination are attached.

Attachments: a)☒ PTO-892, b)☒ PTO/SB/08, c)☐ Other: _____

1. ☒ The request for *ex parte* reexamination is GRANTED.

      RESPONSE TIMES ARE SET AS FOLLOWS:

For Patent Owner's Statement (Optional): TWO MONTHS from the mailing date of this communication (37 CFR 1.530 (b)). **EXTENSIONS OF TIME ARE GOVERNED BY 37 CFR 1.550(c).**

For Requester's Reply (optional): TWO MONTHS from the **date of service** of any timely filed Patent Owner's Statement (37 CFR 1.535). **NO EXTENSION OF THIS TIME PERIOD IS PERMITTED.** If Patent Owner does not file a timely statement under 37 CFR 1.530(b), then no reply by requester is permitted.

2. ☐ The request for *ex parte* reexamination is DENIED.

This decision is not appealable (35 U.S.C. 303(c)). Requester may seek review by petition to the Commissioner under 37 CFR 1.181 within ONE MONTH from the mailing date of this communication (37 CFR 1.515(c)). **EXTENSION OF TIME TO FILE SUCH A PETITION UNDER 37 CFR 1.181 ARE AVAILABLE ONLY BY PETITION TO SUSPEND OR WAIVE THE REGULATIONS UNDER 37 CFR 1.183.**

In due course, a refund under 37 CFR 1.26 ( c ) will be made to requester:

    a) ☐ by Treasury check or,

    b) ☐ by credit to Deposit Account No. _____, or

    c) ☐ by credit to a credit card account, unless otherwise notified (35 U.S.C. 303(c)).

| | | |
|---|---|---|
| | | |

cc:Requester ( if third party requester )

EXHIBIT 10
Page 77

Application/Control Number: 90/010,266                                    Page 2
Art Unit: 3993

## DECISION GRANTING *EX PARTE* REEXAMINATION

1.      A substantial new question of patentability affecting claims 1-8 of United States Patent
Number 5,735,754 is raised by the present request for *ex parte* reexamination.

### *Listing of Documents*

2.      The following is a listing of the documents referred to in this Office action, together with
the short-hand reference used for each document.

**US Patents**

| Short-hand | Document |
| --- | --- |
| "Krzynowek et al." | US Patent No. D363,961. |
| "Hueber" | US Patent No. D372,063. |
| "Ortiz" | US Patent No. 6,257,991. |
| "Antonious '176" | US Patent No. D350,176. |
| "MacDougall" | US Patent No. 5,456,469. |

**Ben Hogan H40 References**

| Short-hand | Document |
| --- | --- |
| "H40 #1" | *Ben Hogan H40 woods*, Golf Magazine, March 1994, page 66. |
| "H40 #2" | Advertisement for *New Ben Hogan H40s*, Golf Digest, March 1994, page 11. |
| "H40 #3" | Advertisement for *Ben Hogan H40 cast clubs*, Golf Digest, April 1994, page 93. |
| "H40 #4" | Advertisement for *Ben Hogan H40 cast clubs*, Golf Magazine, May 1994. |
| "H40 #5" | Advertisement for *Ben Hogan H40 cast clubs*, Golf Digest, May 1994, page 175. |
| "H40 #6" | Advertisement for *Ben Hogan H40 cast clubs*, Golf Magazine, June 1994. |
| "H40 #7" | Advertisement for *Ben Hogan H40 cast clubs*, Golf Digest, June 1994, page 185. |

EXHIBIT 10
Page 78

Application/Control Number: 90/010,266                                    Page 3

Art Unit: 3993

## **Nicklaus Air Bear References**

| Short-hand | Document |
|---|---|
| "Air Bear #1" | *There's something in the air at Nicklaus Golf...air Bear has landed*, Nicklaus Golf Equipment 1996 promotional material. |
| "Air Bear #2" | *Test Drive: The Nicklaus air Bear Driver*, Petersen's Golfing, 1996. |
| "Air Bear #3" | *'96 Show Products: A titanium sampler...*, Golf Digest, April 1996. |
| "Air Bear #4" | Advertisement for *Nicklaus air Bear*, Golf Magazine, March 1996. |
| "Air Bear #5" | Advertisement for *Nicklaus air Bear*, Golf Magazine, April 1996. |
| "Air Bear #6" | Advertisement for *Nicklaus* Golf Products, Golf Magazine, May 1996. |
| "Air Bear #7" | *Sizing It Up* by Rob Sauerhaft, Golf Magazine, September 1996, page 70. |

### *Substantial New Questions of Patentability Proposed by Requester*

3.    The request indicates that the third party requester considers the following substantial new questions of patentability (SNQs) to be raised by the prior art cited in the request:

    A.    The third party requester considers a substantial new question of patentability as to claims 1-8 of Patent No. 5,735,754 to be raised by H40 #1, H40 #2, H40 #3, H40 #4, H40 #5, H40 #6 or H40 #7 taken alone.

    B.    The third party requester considers a substantial new question of patentability as to claims 1-8 of Patent No. 5,735,754 to be raised by Air Bear #1, Air Bear #2, Air Bear #3, Air Bear #4, Air Bear #5, Air Bear #6 or Air Bear #7 taken alone.

    C.    The third party requester considers a substantial new question of patentability as to claims 1-8 of Patent No. 5,735,754 to be raised by Krzynowek et al. taken alone.

    D.    The third party requester considers a substantial new question of patentability as to claims 1-8 of Patent No. 5,735,754 to be raised by Hueber taken alone.

    E.    The third party requester considers a substantial new question of patentability as to claims 1-8 of Patent No. 5,735,754 to be raised by Ortiz taken alone.

EXHIBIT 10
Page 79

Application/Control Number: 90/010,266                                      Page 4
Art Unit: 3993

### *Prosecution History of Patent No. 5,735,754*

4.      During the earlier-concluded examination of Patent No. 5,735,754, no claim rejections were made based upon prior art patents and printed publications. In the Notice of Allowance mailed on 18 July 1997, the examiner indicated that claims 1-8 of Patent No. 5,735,754 were patentable because the prior art made of record during the earlier-concluded examination failed to teach or suggest a golf club head with a C-shaped slot having an open end facing forwardly toward the ball striking surface.

### *Examiner's Decision on SNQs Proposed by Requester*

5.      It is agreed that consideration of H40 #1 or H40 #2 taken alone raises a substantial new question of patentability as to claims 1-8 of Patent No 5,735,754. NOTE: None of the H40 references were cited in Patent No. 5,735,754.

        H40 #1 and H40 #2 each teach a golf club head having a bottom surface formed with a C-shaped slot having an open end facing forwardly toward the ball striking surface of the club head. Since this structure taught by the H40 #1 and H40 #2 references was cited by the examiner during the original prosecution as rendering claims 1-8 patentable, there is a substantial likelihood that a reasonable examiner would consider the teachings of H40 #1 or H40 #2 important in deciding whether or not claims 1-8 of Patent No. 5,735,754 are patentable. Accordingly, H40 #1 or H40 #2 raises a substantial new question of patentability as to claims 1-8, which question has not been decided in a previous examination of Patent No. 5,735,754.

        The request for *ex parte* reexamination was accompanied by the Declaration of Mr. Clay Long, in which Mr. Long asserts that H40 #1 and H40 #2 each teach a golf club head having a bottom surface formed with a C-shaped slot having an open end facing forwardly toward the ball striking surface of the club head. This assertion of Mr. Long has been found to be persuasive.

6.      Consideration of H40 #3, H40 #4, H40 #5, H40 #6 or H40 #7 taken alone does <u>not</u> raise a substantial new question of patentability as to claims 1-8 of Patent No. 5,735,754 for the following reason:

        The H40 #3, H40 #4, H40 #5, H40 #6 and H40 #7 references each fail to disclose a golf club head having a bottom surface formed with a C-shaped slot having an open end facing

EXHIBIT 10
Page 80

Application/Control Number: 90/010,266                                     Page 5
Art Unit: 3993

forwardly toward the ball striking surface of the club head. The text of H40 #3, H40 #4, H40 #5, H40 #6 and H40 #7 does not describe the shape or orientation of the slot in the bottom surface of the club head. Further, the illustration of the club head does not establish that the slot is C-shaped, with an open end facing the ball striking surface.

7.      It is agreed that consideration of Air Bear #3, Air Bear #6 or Air Bear #7 taken alone raises a substantial new question of patentability as to claims 1-8 of Patent No 5,735,754. NOTE: None of the Air Bear references were cited in Patent No. 5,735,754.

Air Bear #3, Air Bear #6 and Air Bear #7 each teach a golf club head having a bottom surface formed with a C-shaped slot having an open end facing forwardly toward the ball striking surface of the club head. Since this structure taught by the Air Bear #3, Air Bear #6 and Air Bear #7 references was cited by the examiner during the original prosecution as rendering claims 1-8 patentable, there is a substantial likelihood that a reasonable examiner would consider the teachings of Air Bear #3, Air Bear #6 or Air Bear #7 important in deciding whether or not claims 1-8 of Patent No. 5,735,754 are patentable. Accordingly, Air Bear #3, Air Bear #6 or Air Bear #7 raises a substantial new question of patentability as to claims 1-8, which question has not been decided in a previous examination of Patent No. 5,735,754.

The request for *ex parte* reexamination was accompanied by the Declaration of Mr. Clay Long, in which Mr. Long asserts that Air Bear #3, Air Bear #6 and Air Bear #7 each teach a golf club head having a bottom surface formed with a C-shaped slot having an open end facing forwardly toward the ball striking surface of the club head. This assertion of Mr. Long has been found to be persuasive.

8.      Consideration of Air Bear #1 or Air Bear #2 taken alone does not raise a substantial new question of patentability as to claims 1-8 of Patent No. 5,735,754 because insufficient evidence exists at this time to support reliance on the Air Bear #1 or Air Bear #2 reference as a prior art "printed publication".

With respect to Air Bear #1, there is insufficient evidence presently before the Office to establish a publication date for this reference prior to the filing date of Patent No. 5,735,754. It would appear that Air Bear #1 was disseminated at a trade show, but such dissemination does not

EXHIBIT 10
Page 81

Application/Control Number: 90/010,266                                    Page 6
Art Unit: 3993

necessarily constitute "publication". Further, there is insufficient evidence presently before the

Office to show that this document was disseminated or otherwise made available to the extent

that persons interested and ordinarily skilled in the subject matter or art, exercising reasonable

diligence, could have located it. See MPEP 2128. To qualify as a "printed publication" evidence

must exist to establish the probability of sufficient circulation of the document such that a

presumption is raised that the portion of the public concerned with the art would have known of

its existence. See MPEP 2128.01.

.    · With respect to Air Bear #2, there is insufficient evidence presently before the Office to

establish a publication date for this reference prior to the filing date of Patent No. 5,735,754. Air

Bear #2 bears a copyright date of 1996, but it is unclear whether Air Bear #2 was published prior

to the 04 December 1996 filing date of Patent No. 5,735,754.


9.      Consideration of Air Bear #4 or Air Bear #5 taken alone does <u>not</u> raise a substantial new

question of patentability as to claims 1-8 of Patent No. 5,735,754 for the following reason: .

        The Air Bear #4 and Air Bear #5 references each fail to disclose a golf club head having

a bottom surface formed with a C-shaped slot having an open end facing forwardly toward the

ball striking surface of the club head. The text of Air Bear #4 and Air Bear #5 does not describe

the shape or orientation of the slot in the bottom surface of the club head. Further, the single

illustration of the club head does not establish that the slot is C-shaped, with an open end facing

the ball striking surface.


10.     It is agreed that consideration of Krzynowek et al. taken alone raises a substantial new

question of patentability as to claims 1-8 of Patent No 5,735,754. NOTE: Krzynowek et al. was

not cited in Patent No. 5,735,754..

        Krzynowek et al. teaches a golf club head having a bottom surface formed with a C-

shaped slot having an open end facing generally forwardly toward the ball striking surface of the

club head, and wherein the C-shaped slot is offset toward the heel of the club head with respect

to a centerline extending perpendicular to the ball striking surface. See Figs. 4, 5 and 7. Since

this structure taught by the Krzynowek et al. reference was cited by the examiner during the

original prosecution as rendering claims 1-8 patentable, there is a substantial likelihood that a

EXHIBIT 10
Page 82

Application/Control Number: 90/010,266                                    Page 7
Art Unit: 3993

reasonable examiner would consider the teachings of Krzynowek et al. important in deciding whether or not claims 1-8 of Patent No. 5,735,754 are patentable. Accordingly, Krzynowek et al. raises a substantial new question of patentability as to claims 1-8, which question has not been decided in a previous examination of Patent No. 5,735,754.

11.     It is agreed that consideration of Hueber taken alone raises a substantial new question of patentability as to claims 1-8 of Patent No 5,735,754. NOTE: Hueber was not cited in Patent No. 5,735,754.

        Hueber teaches a golf club head having a bottom surface formed with a C-shaped portion having an open end facing generally forwardly toward the ball striking surface of the club head. See Fig. 7. Since this structure taught by the Hueber reference is similar to the structure cited by the examiner during the original prosecution as rendering claims 1-8 patentable, there is a substantial likelihood that a reasonable examiner would consider the teachings of Hueber important in deciding whether or not claims 1-8 of Patent No. 5,735,754 are patentable. Accordingly, Hueber raises a substantial new question of patentability as to claims 1-8, which question has not been decided in a previous examination of Patent No. 5,735,754.

12.     It is agreed that consideration of Ortiz taken alone raises a substantial new question of patentability as to claims 1-8 of Patent No 5,735,754. NOTE: Ortiz was not cited in Patent No. 5,735,754.

        Ortiz teaches a golf club head having a bottom surface formed with a C-shaped slot 54 having an open end facing generally forwardly toward the ball striking surface 20 of the club head, and wherein the C-shaped slot 54 is offset toward the heel 16 of the club head with respect to a centerline extending perpendicular to the ball striking surface 20. See Fig. 4. Since this structure taught by the Ortiz reference was cited by the examiner during the original prosecution as rendering claims 1-8 patentable, there is a substantial likelihood that a reasonable examiner would consider the teachings of Ortiz important in deciding whether or not claims 1-8 of Patent No. 5,735,754 are patentable. Accordingly, Ortiz raises a substantial new question of patentability as to claims 1-8, which question has not been decided in a previous examination of Patent No. 5,735,754.

EXHIBIT 10
Page 83

Application/Control Number: 90/010,266                                              Page 8
Art Unit: 3993

### *Additional SNQs Raised by Examiner*

13.     Consideration of Antonious '176 taken alone raises a substantial new question of patentability as to claims 1-8 of Patent No 5,735,754. NOTE: Antonious '176 was cited in Patent No. 5,735,754.

        Antonious '176 teaches a golf club head having a bottom surface formed with a pair of C-shaped slots having open ends facing generally forwardly toward the ball striking surface of the club head, and wherein one of the C-shaped slots is offset toward the heel of the club head with respect to a centerline extending perpendicular to the ball striking surface, and wherein the other C-shaped slot is offset toward the toe of the club head with respect to the centerline extending perpendicular to the ball striking surface. See Figs. 4-6. Since this structure taught by the Antonious '176 reference was cited by the examiner during the original prosecution as rendering claims 1-8 patentable, there is a substantial likelihood that a reasonable examiner would consider the teachings of Antonious '176 important in deciding whether or not claims 1-8 of Patent No. 5,735,754 are patentable. Accordingly, Antonious '176 raises a substantial new question of patentability as to claims 1-8, which question has not been decided in a previous examination of Patent No. 5,735,754.

14.     The above SNQ is based solely upon art cited during the earlier-concluded examination of Patent No. 5,735,754. During the previous examination, the examiner did not rely upon the Antonious '176 reference to reject any claim, and the relevance of this particular reference to the patentability of the claims was not discussed. Therefore, the SNQ based on Antonious '176 is proper in this reexamination proceeding. See MPEP 2258.01, item "(B)", section "(1)".

15.     Consideration of Air Bear #3, Air Bear #6, Air Bear #7, Krzynowek et al. or Antonious '176 taken together with Hueber and MacDougall raises a substantial new question of patentability as to claims 1-3 and 7 of Patent No 5,735,754. NOTE: Air Bear #3, Air Bear #6 or Air Bear #7, Krzynowek et al. and Hueber were not cited in Patent No. 5,735,754, but Antonious '176 and MacDougall were cited in the patent.

EXHIBIT 10
Page 84

Application/Control Number: 90/010,266                                    Page 9
Art Unit: 3993

Air Bear #3, Air Bear #6, Air Bear #7, Krzynowek et al. and Antonious '176 are each
discussed in detail above. Hueber teaches a golf club head having a skid surface formed on and
raised from a bottom surface of the club head, with a wall separating the skid surface from the
bottom surface. See Figs. 3, 5 and 7. MacDougall teaches a golf club head having skid surfaces
26, 28 formed on and raised from a bottom surface of the club head, with walls separating the
skid surfaces from the bottom surface. See Figs. 1-3. MacDougall's skid surfaces 26, 28 facilitate
head motion in grass or in the rough, and also lower the center of gravity to add distance and
power to the ball strike (see column 3, lines 51-63).

For these reasons, there is a substantial likelihood that a reasonable examiner would
consider the teachings of Air Bear #3, Air Bear #6, Air Bear #7, Krzynowek et al. or Antonious
'176 taken together with Hueber and MacDougall important in deciding whether or not claims 1-
3 and 7 of Patent No. 5,735,754 are patentable. Accordingly, Air Bear #3, Air Bear #6, Air Bear
#7, Krzynowek et al. or Antonious '176 taken together with Hueber and MacDougall raises a
substantial new question of patentability as to claims 1-3 and 7, which question has not been
decided in a previous examination of Patent No. 5,735,754.

16.    Accordingly, claims 1-8 of Patent No. 5,735,754 will be reexamined.

### Information Disclosure Statements

17.    The Information Disclosure Statements (IDSs) filed with the request for *ex parte*
reexamination have been considered by the examiner. The IDS forms (PTO/SB/08) list several
documents which are not discussed in the request for *ex parte* reexamination in the manner
required by 37 CFR 1.510(b)(1) and (2). Accordingly, these un-discussed documents have not
been addressed in the instant Decision Granting Ex Parte Reexamination, and these documents
have been lined through on the IDS forms.

### Remarks

18.    Extensions of time under 37 CFR 1.136(a) will not be permitted in these proceedings
because the provisions of 37 CFR 1.136 apply only to "an applicant" and not to parties in a
reexamination proceeding. Additionally, 35 U.S.C. 305 requires that *ex parte* reexamination

EXHIBIT 10
Page 85

Application/Control Number: 90/010,266                                Page 10
Art Unit: 3993

proceedings "will be conducted with special dispatch" (37 CFR 1.550(a)). Extensions of time in *ex parte* reexamination proceedings are provided for in 37 CFR 1.550(c).

19.     Any proposed amendment filed in this reexamination proceeding must be made in accordance with 37 CFR 1.530(d)-(j) and comply with the formal requirements of 37 CFR 1.52(a) and (b). See MPEP 2250.

20.     Responses to this Office action may be submitted by registered users via the EFS-Web electronic filing system, at https://sportal.uspto.gov/authenticate/authenticateuserlocalepf.html.

        Response may also be submitted by facsimile and should be directed to the Central Reexamination Unit using facsimile number 571-273-9900. A confirmation of receipt will be generated automatically for all papers transmitted via this facsimile number.

        All responses to be delivered by the United States Postal Service (USPS) should be addressed as follows:

                Mail Stop Ex Parte Reexam
                Central Reexamination Unit
                Commissioner for Patents
                PO Box 1450
                Alexandria, VA 22313-1450

        Hand-delivered responses should be labeled "Attn: Central Reexamination Unit" and delivered to:

                Customer Service Window
                Randolph Building, Lobby Level
                401 Dulany Street
                Alexandria, VA 22314

        For EFS-Web transmissions, 37 CFR 1.8(a)(1) states that correspondence (*except for a request for reexamination and a corrected or replacement request for reexamination*) will be considered timely if it (a) is transmitted via the Office's electronic filing system in accordance with 37 CFR 1.6(a)(4), and (b) includes a certificate of transmission for each piece of correspondence stating a date of transmission which is prior to the expiration of the period for response set by the previous Office action.

EXHIBIT 10
Page 86

Application/Control Number: 90/010,266                                      Page 11
Art Unit: 3993

21.     Any document filed by either the patent owner or third party requester *must be served* on
the other party (or parties in a merged proceeding) in the reexamination proceeding in the
manner provided by 37 CFR 1.248. See 37 CFR 1.550(f) and MPEP 2266.03.

22.     The patent owner is reminded of the continuing responsibility under 37 CFR 1.565(a) to
apprise the Office of any litigation activity, or other prior or concurrent proceeding, involving the
patent throughout the course of this reexamination proceeding.  The third party requester is also
reminded of the ability to similarly apprise the Office of any such activity or proceeding
throughout the course of this reexamination proceeding. See MPEP §§ 2207, 2282 and 2286.

23.     Any inquiry concerning this communication or earlier communications from the
Reexamination Examiner should be directed to Peter English whose telephone number is
(571)272-6671.  The examiner can normally be reached on Monday through Thursday (7:00 AM
- 5:00 PM). If attempts to reach the examiner by telephone are unsuccessful, the examiner's
supervisor, Andres Kashnikow, can be reached at 571-272-4361.

        For general information regarding reexamination proceedings please call the Central
Reexamination Unit at 571-272-7705. For guidance on reexamination practice and procedure
please call the Office of Patent Legal Administration at 571-272-7703.

                                                        10/29/08

                                                Peter C. English
                                                Primary Examiner
                                                Central Reexamination Unit

Conferees:

pe
29 October 2008

EXHIBIT 10
Page 87



UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 90/010,266 | 09/02/2008 | 5735754 | ADAM-070208.044 | 2019 |

| 27353          7590          03/23/2009 |
|---|
| MELVIN K. SILVERMAN AND ASSOCS PC |
| 500 WEST CYPRESS CREEK ROAD |
| SUITE 350 |
| FT. LAUDERDALE, FL 33309 |

| EXAMINER |
|---|
|  |

| ART UNIT | PAPER NUMBER |
|---|---|
|  |  |

DATE MAILED: 03/23/2009

Please find below and/or attached an Office communication concerning this application or proceeding.

 UNITED STATES PATENT AND TRADEMARK OFFICE

Commissioner for Patents
United States Patent and Trademark Office
P.O. Box 1450
Alexandria, VA 22313-1450
www.uspto.gov

**DO NOT USE IN PALM PRINTER**

(THIRD PARTY REQUESTER'S CORRESPONDENCE ADDRESS)

Michael J. Gallagher
GALLAGHER & DAWSEY CO, LPA
PO Box 785
Columbus, OH 43216

# *EX PARTE* REEXAMINATION COMMUNICATION TRANSMITTAL FORM

REEXAMINATION CONTROL NO. *90/010,266.*

PATENT NO. *5,735,754.*

ART UNIT *3993.*

Enclosed is a copy of the latest communication from the United States Patent and Trademark Office in the above identified *ex parte* reexamination proceeding (37 CFR 1.550(f)).

Where this copy is supplied after the reply by requester, 37 CFR 1.535, or the time for filing a reply has passed, no submission on behalf of the *ex parte* reexamination requester will be acknowledged or considered (37 CFR 1.550(g)).

PTOL-465 (Rev.07-04)

EXHIBIT 11
Page 89

| *Office Action in Ex Parte Reexamination* | Control No. 90/010,266 | Patent Under Reexamination 5,735,754 |
|---|---|---|
| | Examiner PETER C. ENGLISH | Art Unit 3993 | |

*-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address --*

a☐ Responsive to the communication(s) filed on ____ .    b☐ This action is made FINAL.
c☒ A statement under 37 CFR 1.530 has not been received from the patent owner.

A shortened statutory period for response to this action is set to expire *1* month(s) from the mailing date of this letter.
Failure to respond within the period for response will result in termination of the proceeding and issuance of an *ex parte* reexamination certificate in accordance with this action. 37 CFR 1.550(d). **EXTENSIONS OF TIME ARE GOVERNED BY 37 CFR 1.550(c).**
If the period for response specified above is less than thirty (30) days, a response within the statutory minimum of thirty (30) days will be considered timely.

Part I    THE FOLLOWING ATTACHMENT(S) ARE PART OF THIS ACTION:

1. ☐ Notice of References Cited by Examiner, PTO-892.    3. ☐ Interview Summary, PTO-474.
2. ☐ Information Disclosure Statement, PTO/SB/08.    4. ☐ _____.

Part II    SUMMARY OF ACTION

1a. ☒ Claims *1-8* are subject to reexamination.
1b. ☐ Claims _____ are not subject to reexamination.
2. ☐ Claims _____ have been canceled in the present reexamination proceeding.
3. ☒ Claims *2 and 8* are patentable and/or confirmed.
4. ☒ Claims *1 and 3-7* are rejected.
5. ☐ Claims _____ are objected to.
6. ☐ The drawings, filed on _____ are acceptable.
7. ☐ The proposed drawing correction, filed on _____ has been (7a)☐ approved (7b)☐ disapproved.
8. ☐ Acknowledgment is made of the priority claim under 35 U.S.C. § 119(a)-(d) or (f).

   a)☐ All  b)☐ Some*  c)☐ None    of the certified copies have

   1☐ been received.
   2☐ not been received.
   3☐ been filed in Application No. _____ .
   4☐ been filed in reexamination Control No. _____.
   5☐ been received by the International Bureau in PCT application No. _____.

   * See the attached detailed Office action for a list of the certified copies not received.

9. ☐ Since the proceeding appears to be in condition for issuance of an *ex parte* reexamination certificate except for formal matters, prosecution as to the merits is closed in accordance with the practice under *Ex parte* Quayle, 1935 C.D. 11, 453 O.G. 213.

10. ☐ Other: _____

cc: Requester (if third party requester)

Application/Control Number: 90/010,266                                      Page 2
Art Unit: 3993

## DETAILED ACTION

### *Listing of Documents*

1.      The following is a listing of the documents referred to in this Office action, together with the short-hand reference used for each document.

**Nicklaus Air Bear References**

| Short-hand | Document |
|---|---|
| "Air Bear #3" | *'96 Show Products: A titanium sampler*..., Golf Digest, April 1996. |
| "Air Bear #6" | Advertisement for *Nicklaus* Golf Products, Golf Magazine, May 1996. |
| "Air Bear #7" | *Sizing It Up* by Rob Sauerhaft, Golf Magazine, September 1996, page 70. |

**US Patents**

| Short-hand | Document |
|---|---|
| "Krzynowek et al." | US Patent No. D363,961. |
| "Ortiz" | US Patent No. 6,257,991. |
| "Antonious '176" | US Patent No. D350,176. |
| "Hueber" | US Patent No. D372,063. |
| "MacDougall" | US Patent No. 5,456,469. |

### *Claim Rejections - 35 USC § 102*

2.      The following is a quotation of the appropriate paragraphs of 35 U.S.C. 102 that form the basis for the rejections under this section made in this Office action:

A person shall be entitled to a patent unless —

(a) the invention was known or used by others in this country, or patented or described in a printed publication in this or a foreign country, before the invention thereof by the applicant for a patent.

(b) the invention was patented or described in a printed publication in this or a foreign country or in public use or on sale in this country, more than one year prior to the date of application for patent in the United States.

EXHIBIT 11
Page 91

Application/Control Number: 90/010,266                                    Page 3

Art Unit: 3993

(e) the invention was described in a patent granted on an application for patent by another filed in the United States before the invention thereof by the applicant for patent, or on an international application by another who has fulfilled the requirements of paragraphs (1), (2), and (4) of section 371(c) of this title before the invention thereof by the applicant for patent.

3.    Claims 4 and 6 of Patent No. 5,735,754 are rejected under 35 U.S.C. 102(a) as being anticipated by Air Bear #3, Air Bear #6 or Air Bear #7. NOTE: None of the Air Bear references were cited in Patent No. 5,735,754.

Air Bear #3, Air Bear #6 and Air Bear #7 each teach a golf club head having a bottom surface formed with a C-shaped slot having an open end facing forwardly toward the ball striking surface of the club head. Air Bear #3 shows the C-shaped slot in the bottom surface of the golf club head and describes it as "an aerodynamic heel-to-toe channel" (see the lower left picture and caption). Air Bear #6 shows the C-shaped slot in the bottom surface of the golf club head, with the slot tapering from a narrow portion near the heel to a wider portion near the toe (see the lower left picture). Air Bear #7 shows the C-shaped slot in the bottom surface of the golf club head and describes it as "an air-flow channel" that "directs air around the oversized head and reduces drag forces" (see the upper right picture and the description at the bottom of the left column). As shown in the pictures, Air Bear's C-shaped slot is considered to be offset toward the toe of the club head relative to a longitudinal centerline of the bottom surface (i.e., a centerline extending perpendicular to the ball striking surface), as broadly claimed.

4.    Claims 4 and 5 of Patent No. 5,735,754 are rejected under 35 U.S.C. 102(b) as being anticipated by Krzynowek et al. NOTE: Krzynowek et al. was not cited in Patent No. 5,735,754.

Krzynowek et al. teaches a golf club head having a bottom surface formed with a C-shaped slot having an open end facing generally forwardly toward the ball striking surface of the club head, and wherein the C-shaped slot is offset toward the heel of the club head with respect to a longitudinal centerline of the bottom surface (i.e., a centerline extending perpendicular to the ball striking surface). See Figs. 4, 5 and 7.

5.    Claims 4 and 5 of Patent No. 5,735,754 are rejected under 35 U.S.C. 102(e) as being anticipated by Ortiz. NOTE: Ortiz was not cited in Patent No. 5,735,754.

EXHIBIT 11
Page 92

Application/Control Number: 90/010,266                                          Page 4
Art Unit: 3993

Ortiz teaches a golf club head having a bottom surface formed with a C-shaped slot 54
having an open end facing generally forwardly toward the ball striking surface 20 of the club
head, and wherein the C-shaped slot 54 is offset toward the heel 16 of the club head with respect
to a longitudinal centerline of the bottom surface (i.e., a centerline extending perpendicular to the
ball striking surface 20). See Fig. 4.

6.      Claims 4-6 of Patent No. 5,735,754 are rejected under 35 U.S.C. 102(b) as being
anticipated by Antonious '176. NOTE: Antonious '176 was cited in Patent No. 5,735,754.

Antonious '176 teaches a golf club head having a bottom surface formed with a pair of C-
shaped slots having open ends facing generally forwardly toward the ball striking surface of the
club head, and wherein one of the C-shaped slots is offset toward the heel of the club head with
respect to a longitudinal centerline of the bottom surface (i.e., a centerline extending
perpendicular to the ball striking surface), and wherein the other C-shaped slot is offset toward
the toe of the club head with respect to the centerline. See Figs. 4-6.

The above ground of rejection is based solely upon art cited during the earlier-concluded
examination of Patent No. 5,735,754. During the previous examination, the examiner did not rely
upon the Antonious '176 reference to reject any claim, and the relevance of this particular
reference to the patentability of the claims was not discussed. Therefore, the ground of rejection
based on Antonious '176 is proper in this reexamination proceeding. See MPEP 2258.01, item
"(B)", section "(1)".

### *Claim Rejections - 35 USC § 103*

7.      The following is a quotation of 35 U.S.C. 103(a) which forms the basis for all
obviousness rejections set forth in this Office action:

> (a) A patent may not be obtained though the invention is not identically disclosed or described as set forth in
> section 102 of this title, if the differences between the subject matter sought to be patented and the prior art are
> such that the subject matter as a whole would have been obvious at the time the invention was made to a person
> having ordinary skill in the art to which said subject matter pertains. Patentability shall not be negatived by the
> manner in which the invention was made.

EXHIBIT 11
Page 93

Application/Control Number: 90/010,266                                    Page 5
Art Unit: 3993

8.      Claims 1, 3 and 7 of Patent No. 5,735,754 are rejected under 35 U.S.C. 103(a) as being

unpatentable over Air Bear #3, Air Bear #6, Air Bear #7, Krzynowek et al. or Antonious '176 in

view of Hueber and MacDougall. NOTE: Air Bear #3, Air Bear #6, Air Bear #7, Krzynowek et

al. and Hueber were not cited in Patent No. 5,735,754, but Antonious '176 and MacDougall were

cited in the patent.

        Air Bear #3, Air Bear #6, Air Bear #7, Krzynowek et al. and Antonious '176 are each

discussed in detail above. Each of these references fails to teach a skid surface separated from

the bottom surface of the club head by a wall. Hueber teaches a golf club head having a skid

surface formed on and raised from a bottom surface of the club head, with a wall separating the

skid surface from the bottom surface. See Figs. 3, 5 and 7. MacDougall teaches a golf club head

having skid surfaces 26, 28 formed on and raised from a bottom surface of the club head, with

walls separating the skid surfaces from the bottom surface. See Figs. 1-3. MacDougall's skid

surfaces 26, 28 facilitate head motion in grass or in the rough, and also lower the center of

gravity to add distance and power to the ball strike (see column 3, lines 51-63). From these

teachings of Hueber and MacDougall, it would have been obvious to one of ordinary skill in the

art at the time the invention was made to modify Air Bear #3, Air Bear #6, Air Bear #7,

Krzynowek et al. or Antonious '176 by providing a skid surface separated from the bottom

surface of the club head by a wall in order to facilitate head motion in grass or in the rough, and

also lower the center of gravity to add distance and power to the ball strike.

        With respect to claims 3 and 7, the slots taught by Air Bear #3, Air Bear #6, Air Bear #7,

Krzynowek et al. and Antonious '176 are all offset from the heel and toe of the club head (i.e.,

the slots are not located at the heel or the toe, but are located on the bottom surface between the

heel and the toe).

### Patentable Claims

9.      The following is an examiner's statement of reasons for patentability and/or confirmation

of the claims found patentable in this reexamination proceeding:

        Claims 2 and 8 are confirmed as patentable because the cited prior art patents and printed

publications fail to teach a golf club head, as defined in these claims, including a C-shaped slot

EXHIBIT 11
Page 94

Application/Control Number: 90/010,266                                              Page 6
Art Unit: 3993

on the bottom surface of the club head together with a venturi opening in fluid communication
with and extending rearwardly from the C-shaped slot toward the rear surface of the club head.

## Remarks

10.    Litigation involving Patent No. 5,735,754 (*Adams Golf, Inc. v. Anthony J. Antonious
Irrevocable Trust, US District-Ohio Southern, No. 2:08cv517*) has been stayed for the purposes
of reexamination. Accordingly, a shortened statutory period of 1 month is set for response to
Office actions in this proceeding. See MPEP 2263.

11.    Extensions of time under 37 CFR 1.136(a) will not be permitted in these proceedings
because the provisions of 37 CFR 1.136 apply only to "an applicant" and not to parties in a
reexamination proceeding. Additionally, 35 U.S.C. 305 requires that *ex parte* reexamination
proceedings "will be conducted with special dispatch" (37 CFR 1.550(a)). Extensions of time in
*ex parte* reexamination proceedings are provided for in 37 CFR 1.550(c).

12.    In order to ensure full consideration of any amendments, affidavits or declarations, or
other documents as evidence of patentability, such documents must be submitted in response to
this Office action. Submissions after the next Office action, which is intended to be a final
action, will be governed by the requirements of 37 CFR 1.116, which will be strictly enforced.

13.    Any proposed amendment filed in this reexamination proceeding must be made in
accordance with 37 CFR 1.530(d)-(j) and comply with the formal requirements of 37 CFR
1.52(a) and (b). See MPEP 2250.

14.,    Responses to this Office action may be submitted by facsimile and should be directed to
the Central Reexamination Unit using facsimile number 571-273-9900. A confirmation of receipt
will be generated automatically for all papers transmitted via this facsimile number.

       All responses to be delivered by the United States Postal Service (USPS) should be
addressed as follows:  :

EXHIBIT 11
Page 95

Application/Control Number: 90/010,266                                    Page 7

Art Unit: 3993

> Mail Stop Ex Parte Reexam
> Central Reexamination Unit
> Commissioner for Patents
> PO Box 1450
> Alexandria, VA 22313-1450

Hand-delivered responses should be labeled "Attn: Central Reexamination Unit" and delivered to:

> Customer Service Window
> Randolph Building, Lobby Level
> 401 Dulany Street
> Alexandria, VA 22314

Submissions for reexamination proceedings may also be submitted through EFS-Web (the USPTO's web-based document submission system).

15.    Any document filed by either the patent owner or third party requester *must be served* on the other party (or parties in a merged proceeding) in the reexamination proceeding in the manner provided by 37 CFR 1.248. See 37 CFR 1.550(f) and MPEP 2266.03.

16.    The patent owner is reminded of the continuing responsibility under 37 CFR 1.565(a) to apprise the Office of any litigation activity, or other prior or concurrent proceeding, involving the patent throughout the course of this reexamination proceeding. The third party requester is also reminded of the ability to similarly apprise the Office of any such activity or proceeding throughout the course of this reexamination proceeding. See MPEP §§ 2207, 2282 and 2286.

17.    Any inquiry concerning this communication or earlier communications from the Reexamination Examiner should be directed to Peter English whose telephone number is (571)272-6671. The examiner can normally be reached on Monday through Thursday (7:00 AM - 5:00 PM). If attempts to reach the examiner by telephone are unsuccessful, the examiner's supervisor, Andres Kashnikow, can be reached at 571-272-4361.

EXHIBIT 11
Page 96

Application/Control Number: 90/010,266                                    Page 8
Art Unit: 3993

   For general information regarding reexamination proceedings please call the Central

Reexamination Unit at 571-272-7705. For guidance on reexamination practice and procedure

please call the Office of Patent Legal Administration at 571-272-7703.

                   3/18/09
                  Peter C. English
                  Primary Examiner
                  Central Reexamination Unit

Conferees:

pe
18 March 2009

EXHIBIT 11
Page 97

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

APPLICANT:                                  Anthony J. Antonious

RE-EXAM APPLICATION NO.:    90/010,266

RE-EXAM FILING DATE:              09/02/2008

PATENT NO.:                              5,735,754

CONFIRMATION NO.                   2019

ATTORNEY DOCKET NO.            ADAM-070208.044

EXAMINER:                                 Peter English

### RESPONSE UNDER 37 CFR 1.530 TO OFFICIAL ACTION

Mail Stop: Ex-Parte Re-Exam
Central Re-Examination Unit
Hon. Commissioner for Patents
P.O. Box 1450
Alexandria, VA 22313-1450

Dear Sir:

Responsive to the Official Action dated March 23, 2009, kindly enter of

record the following Amendments and Remarks:

**Amendments to the Specification** begin on Page 2 of this paper.

**Amendments to the Claims** begin on Page 3 of this paper.

**Amendments to the Drawings**. None.

**Remarks/Arguments** begin on Page 6 of this paper.

CERTIFICATE OF MAILING BY EXPRESS MAIL

Express Mail mailing label number: EH 801530148 US
I hereby certify that this correspondence is being deposited with the United States Postal Service "Express Mail Post Office to Addressee" service under 37 CFR 1.10 in an envelope addressed to: Commissioner for Patents, Mail Stop Patent Application, P. O. Box 1450, Alexandria, VA 22313-1450.

Marcia Scruggs                                                    Date

EXHIBIT 12
Page 98

Application No. 90/010,266
Amdt. dated 4/22/09
Reply to Office Action dated 3/23/09

**Amendments to the Specification**:

In Column 3, please amend the paragraphs of Lines 22-30, as follows:

FIG. 9 shows another embodiment of the present invention. A golf club head 300 is similar to the club head described in FIGS. 1-5 and includes a bottom surface 325, a side surface 327 and an aerodynamic slot 330 on said bottom surface which is offset in the direction of the toe 316 of the club head 300.

FIG. 10 shows another embodiment similar to FIG. 9. A golf club head 400 and includes a bottom surface 425, a side surface 427 and an aerodynamic slot 430 on said bottom surface which is offset in the direction of the heel 414 of the club head 400.

Page 2 of 15

EXHIBIT 12
Page 99

Application No. 90/010,266
Amdt. dated 4/22/09
Reply to Office Action dated 3/23/09

## Amendments to the Claims:

This listing of claims will replace all prior versions, and listing of claims in this application.

1.      (Currently amended)  An aerodynamic golf club head including a club head body having a heel, toe, rear surface, ball striking face, upper surface and bottom surface, <u>said club head including a virtual face-to-rear centerline of the club head</u> wherein the improvement comprises:

an aerodynamic configuration on<u>, and substantially parallel with,</u> said bottom surface adjacent said rear surface in the form of a c-shaped slot having an open end facing forwardly toward said ball striking face; said aerodynamic configuration further including a skid surface formed on and raised from said bottom surface <u>by</u> [[;]] a wall separating said skid surface from said bottom surface[[.]]<u>,  said c-shaped slot transecting said face-to-rear centerline of the club head</u>.

2.      (Original)      The aerodynamic golf club head of claim 1 further including a venturi opening in fluid communication with and extending rearwardly from said c-shaped aerodynamic slot toward said rear surface.

3.      (Currently Amended)  The aerodynamic golf club head of claim 1 wherein said slot is further defined by being <u>substantially</u> offset from said heel of said club head.

4.      Cancelled.

EXHIBIT 12
Page 100

Application No. 90/010,266
Amdt. dated 4/22/09
Reply to Office Action dated 3/23/09

5.    (Currently amended) The aerodynamic golf club head of claim [[4]] 9 wherein said slot is offset toward said heel.

6.    (Currently amended) The aerodynamic golf club head of claim [[4]] 9 wherein said slot is offset toward said toe.

7.    (Currently amended) The aerodynamic golf club of claim 1, wherein said slot is further defined by being substantially offset from said toe of said club head.

8.    (Original) An aerodynamic golf club head including a club head body having a heel, toe, rear surface, ball striking face, upper surface and bottom surface, wherein the improvement comprises:

an aerodynamic configuration on said bottom surface adjacent said rear surface in the form of a c-shaped slot having an open end facing forwardly toward said ball striking face; said aerodynamic configuration further including a venturi opening in fluid communication with and extending rearwardly from said c-shaped aerodynamic slot toward said rear surface.

9.    (New) An aerodynamic golf club head including a club head body having a heel, toe, rear surface, ball striking face, upper surface and bottom surface, in which the improvement comprises:

an aerodynamic configuration within, and substantially parallel to, said bottom surface, adjacent said rear surface, in the form of a c-shaped slot

Page 4 of 15

EXHIBIT 12
Page 101

Application No. 90/010,266
Amdt. dated 4/22/09
Reply to Office Action dated 3/23/09

having an open end facing forwardly toward said ball striking face, said slot substantially offset from, and a portion thereof passing through, a virtual centerline of said golf club head defined by a longitudinal passing transversely through a heel-to-toe axis of said golf club head.

EXHIBIT 12
Page 102

Application No. 90/010,266
Amdt. dated 4/22/09
Reply to Office Action dated 3/23/09

## **REMARKS/ARGUMENTS**

Reconsideration is hereby requested.

The Requestor has been served with a copy of this Response in accordance with 37 C.F.R. 1.248(a)(4). A Certificate of Service is attached herewith.

Patentee has amended the specification at Col. 3, Lines 24 and 28 in order to include the phrase "on said bottom surface" in the paragraphs of the specification which describe Figs. 9 and 10. Such amendments of the specification are permissible under MPEP 609.01 (I) which states:

> "In establishing a disclosure, Applicant may rely not only on the description and drawings as followed but also on the original claims if their content justifies it."

Patentee has also cancelled original Claim 4 in favor of new Claim 9. New Claim 9 recites that the aerodynamic configuration within the bottom surface of the club is also substantially parallel therewith. Antecedent support therefore appears in Fig. 5 of the '757 patent which is incorporated into the description of Figs. 9 and 10 thereof at Column 3, Lines 24 and 28, of the specification. Claims 1, 3, 5, 6 and 7 have also been amended.

A declaration under 37 CFR 1.131 of one George Slupski is enclosed herewith, as are declarations under 37 CFR 1.132 of one John Gillig and

Page 6 of 15

EXHIBIT 12
Page 103

Application No. 90/010,266
Amdt. dated 4/22/09
Reply to Office Action dated 3/23/09

Douglas Winfield. Because of the constraints of time associated with this Response, a copy of the original of the Winfield declaration is enclosed. The original thereof will be submitted to the Examiner upon its receipt by the undersigned.

Further to Page 3, ¶3 of the Official Action dated March 23, 2009, Claims 4 and 6 of U.S. Patent 5,735,754 ("the '754 patent") stand rejected under 35 U.S.C. 102(a) as anticipated by the Air Bear (hereinafter "AB") #3, AB #6 or AB #7. Responsive thereto, the Respondent has submitted herewith a Declaration under 37 C.F.R 1.131 of one George Slupski, a colleague of the late inventor of the '754 patent, indicating that the subject matter of Claims 4 and 6 was conceived by at least January 1996, at which time he observed a wood mock-up of the club head of Fig. 9 or 10 and that Slupski then tested an operational prototype thereof in January 1997, this providing a reduction to practice. As such, none of the AB references, as applied, can stand for purposes of 35 U.S.C. 102(a) in that they do not indicate that the invention of the '754 patent was known or used by others in this country, or described in a printed publication in this or a foreign country before the invention thereof by the applicant for patent. The Slupski declaration also indicates that the conception of the invention of the '754 patent most likely occurred as early as January, 1995. This Declaration also establishes that Antonious was diligent prior to January 1996 when Slupski saw a prototype of the inventive club of Claims 4 and 6, and then prior to January 1997 when Slupski received and tested a functional prototype.

Page 7 of 15

EXHIBIT 12
Page 104

Application No. 90/010,266
Amdt. dated 4/22/09
Reply to Office Action dated 3/23/09

The Examiner is therefore urged to withdraw AB #3, AB #6 and AB #7 as prior art for purposes of §102(a) since they are all publications subsequent to January 1996, as set forth in the affidavit of Clayton Long.

In the event that the Examiner does not accept the declaration of Slupski, the patentee notes the following material distinctions between Claim 4, now amended in the form of new Claim 9, and Claim 6 as amended, if AB #3 AB #6 or AB #7 become cited for purposes of §102(b) or §103(a) or any other purpose.

As is elaborated in the within Declarations under 37 C.F.R. 1.132 of experts Gillig and Winfield, the heel end of the aerodynamic channel of the AB does not face the ball striking face but, rather, is directed toward the hosel of the club. Gillig Dec. ¶14. Also, the aerodynamic channel thereof is not "substantially offset" from the front- to-rear centerline of the club, as is claimed in new Claim 9. Gillig Dec. ¶14. Original Claim 4 did not claim a "substantial offset" relative to the front-to-rear centerline of the club.

Yet further, the aerodynamic channel of the AB is a heel-to-toe channel, which is not the case in patentee's structure. Gillig Dec., ¶s 10-13; Winfield Dec. ¶9. That is, the heel-to-toe channel of the AB was intended to reduce toe-side drag of the club and to narrow the width of the air flow separation distance (AFS) as air passes across the club. This is in distinction to the aerodynamic channel

EXHIBIT 12
Page 105

Application No. 90/010,266
Amdt. dated 4/22/09
Reply to Office Action dated 3/23/09

of the '754 patent which is intended to reduce rear surface drag upon the club by maximizing the so-called laminar effect described by the patentee in the Background of the Invention. Winfield Dec. ¶10. The patentee achieves this objective by the provision of an essentially front-to-rear aerodynamic channel formed within the bottom surface of the club and which is essentially parallel with the sole plate of the club. Gillig Dec. ¶s 16-19; Winfield Dec. ¶7.

The channel of the AB, although asymmetric, is not substantially offset relative to the centerline of the club. Gillig Dec. ¶14. Winfield Dec. ¶8. Further, the heel of the AB channel tails upwardly and away from the striking face while the toe end of the AB channel is larger and tails downwardly toward the striking face, although each end of the AB channel is almost equidistant from the face of the AB. Gillig Dec. ¶14; Winfield Dec.¶8. As such, the channel of the AB is not substantially offset toward either the heel or toe of the club, as is the case in Figs. 9 and 10 of the '754 patent and Col. 3, Lines 23-30 thereof.

In summary, the aerodynamic channel of the AB, in addition to its complete difference in strategy and function, is asymmetric but not substantially offset relative to the centerline of the AB club. It also does not define a plane which is substantially parallel with the sole plate of the club. The asymmetry of the concave channel of the AB club apparently produces an illusion of offset relative to the centerline when, in fact, the ends of the channel thereof are actually equidistant from the striking face of the AB club.

Page 9 of 15

EXHIBIT 12
Page 106

Application No. 90/010,266
Amdt. dated 4/22/09
Reply to Office Action dated 3/23/09

In view of the above, neither AB #3, AB #6 or AB #7 are valid prior art under any of §s 102(a), 102(b) or 103(a) of Title 35.

At Page 3, ¶4 of the Official Action, Claims 4 and 5 of the '754 patent stand rejected under §102(b) as anticipated by Krzynowek. Applicant notes that Claim 4 has been cancelled in favor of new Claim 9. Nonetheless, Krzynowek, a design patent, does not teach material limitations of either original Claim 4 or new Claim 9. In particular, Krzynowek does not teach the use of an aerodynamic slot which passes through a front-to-rear centerline of the club and, further, does not employ an aerodynamic channel which faces the ball striking face of the club. See Fig. 5 thereof and Gillig Dec. ¶28. As such, Krzynowek, while teaching an arguably c-shaped slot offset toward the heel of the club with respect to the longitudinal centerline, does not meet the limitations of original Claim 4 or new Claim 9 regarding a channel having a channel facing forwardly toward the striking face or transecting of the centerline of the club. The slot of Krzynowek faces directly toward the toe of the club, not the striking face thereof, and does not transect the centerline of the club thereof.

In that Claim 5 now depends upon new Claim 9, Claim 5 is entitled to allowance for the reasons that Claim 9 is allowable.

Further to Page 3, ¶5 of the Official Action, Claims 4 and 5 of the '754 patent stand rejected under 35 U.S.C. 102(e) as anticipated by Ortiz.

Page 10 of 15

EXHIBIT 12
Page 107

Application No. 90/010,266
Amdt. dated 4/22/09
Reply to Office Action dated 3/23/09

Responsive thereto, patentee notes that in view of the Declaration of Slupski,
Ortiz cannot stand for purposes of §102(e) in that Slupski establishes the
conception of the invention of the '754 patent in 1995 or early 1996, long prior to
the effective date of Ortiz.

Notwithstanding the above, Applicant notes that Ortiz would not be
applicable to Claim 4 (now re-drafted as new Claim 9), or Claim 5, inasmuch as
Ortiz does not teach the use of any offset of slot 54 (see Fig. 4 thereof) from the
front-to-rear centerline of the club, nor does it teach the location of its symmetric
slot within the bottom surface of the club.   See, for example, Figs. 2 and 3 of
Ortiz which shows slot 54 located well above the sole plate and, in fact, within the
sidewalls. Also, as may be seen in Fig. 2, the slot 54 of Ortiz is not formed within
the bottom surface of the club and is certainly not parallel therewith.   Gillig Dec.
¶s 30-31.

At the top of Page 4 of the Official Action, the Examiner states that "the c-
shaped slot 54 is offset toward the heel 16 of the club with respect to the
longitudinal centerline of the bottom surface... See Fig. 4." However, as may be
seen in Figs. 2-5 of Ortiz, there does not exist a perceptible asymmetry of the slot
54 relative to the centerline of the club,  sufficient to define a "substantial" offset.

Further to Page 4, ¶6 of the Official Action, Claims 4-6 of the '754 patent
stands rejected under 35 U.S.C. 102(b) as anticipated by Antonious '176.

Page 11 of 15

EXHIBIT 12
Page 108

Application No. 90/010,266
Amdt. dated 4/22/09
Reply to Office Action dated 3/23/09

Antonious is a design patent which contains no teaching whatsoever of an offset, much less a substantial offset, as is now claimed, relative to the centerline of the club and, as may be clearly seen in the views of Figs. 4 and 5 thereof, cavities are formed within the sidewalls, as opposed to the bottom of the club. As such, Antonious '176 is in many respects comparable in structure to that of the AB, the notable exception being the existence of an integral barrier along the entire centerline thereof which precludes heel-to-toe cross flow, thereby negating the objectives of the AB while also creating cavities which operate to trap front-to-rear air flow, thereby also negating the objectives of the '754 patent.  Gillig Dec. ¶26; Winfield Dec. ¶12.

The Examiner apparently asserts that Antonious '176 is applicable because one of the cavities thereof is c-shaped and located at the toe end of the club while another cavity is c-shaped and located at the heel of the club. However, these cavities are discontinuous and, as such, do not relate in either structure or function to the invention of the '754 patent.  Taken as a whole, Antonious '176 does not teach any unitary offset channel whatsoever or an aerodynamic groove parallel to the sole plate.  Further, given that the reference is a design patent, the functional objectives of this geometry are unknown, that is, cannot relate to the functions set forth in the '754 patent including that of the embodiments of Figs. 9 and 10 which correspond to the language of original Claims 4-6 of the patent.

Page 12 of 15

EXHIBIT 12
Page 109

Application No. 90/010,266
Amdt. dated 4/22/09
Reply to Office Action dated 3/23/09

At Page 5, ¶8 of the Official Action, Claims 1, 3 and 7 stand rejected under 35 U.S.C. 103(a) over AB #3, AB #6, AB #7, Krzynowek or Antonious '176 in view of Hueber and MacDougall. As above set forth, AB #3, AB #6 and AB #7 cannot be employed as prior art because the dates thereof are after the date of conception of the '754 patent, as set forth in the Declaration of Slupski.

Applicant has amended Claim 1 to more specifically indicate that bottom surface 124 of the golf club head of the '754 patent and the aerodynamic slot are substantially parallel, and the slot transects the virtual centerline of the club head. Claim 1 as amended also makes explicit that the c-shaped slot is formed within the substantially flat bottom surface 124 of the '754 patent.

Patentee, in amending original Claim 1 to clarify that the c-shaped slot of the invention must transect a front-to-rear centerline of the club head, obviates the references to Krzynowek and MacDougall, both of which teach a club head having bottom surface recesses that do not intersect the front-to-rear virtual centerline of the club head. Gillig Dec. ¶s 28, 32. Further, MacDougall does not exhibit a c-shaped aerodynamic slot, or any slot in the sense of the '754 patent.

The patentee has amended Claims 1, 3 and 7 to more particularly define over all references whether or not the declaration of Slupski is accepted. These amendments, in pertinent portion, express that the aerodynamic configuration is substantially parallel with the bottom surface of the club and that said

Page 13 of 15

EXHIBIT 12
Page 110

Application No. 90/010,266
Amdt. dated 4/22/09
Reply to Office Action dated 3/23/09

configuration transects the face-to-rear centerline of the club. These limitations, in combination, cannot be met by any of the AB references. Gillig Dec. ¶25, 29; Winfield Dec. ¶s 7-10

Hueber does not teach a c-shaped slot in any sense of the term. Gillig Dec. ¶29. The amendments of Claims 3 and 7 indicate that the aerodynamic slot thereof is substantially offset from the heel of the club but that at least a portion thereof transects the centerline thereof. These limitations cannot be met by Krzynowek, Antonious '176, Hueber, or MacDougall, however combined. Gillig Dec. ¶s 25-29, 32; Winfield Dec. ¶12, as to Antonious '176.

In view of the above, all rejections of record have been sufficiently responded to and the confirmation of the claims, as amended, is indicated.

Respectfully submitted,
IRREVOCABLE TRUST OF
ANTHONY ANTONIOUS

4. 22. 09

Date of Signature

By: Melvin K. Silverman
Registration No. 26,234

Enclosures:
1. Declarations of Slupski, Gillig and Winfield.
2. Certificate of Service under 37 CR 1.248 and 1.550

Page 14 of 15

EXHIBIT 12
Page 111

Application No. 90/010,266
Amdt. dated 4/22/09
Reply to Office Action dated 3/23/09

**PLEASE ADDRESS CORRESPONDENCE TO:**

**CUSTOMER NUMBER 27353**

Page 15 of 15

EXHIBIT 12
Page 112

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

APPLICANT: Anthony J. Antonious        EXAMINER: Peter English

RE-EXAM APPLICATION NO.:     90/010,266

RE-EXAM FILING DATE:        09/02/2008

PATENT NO.:                 5,735,754

CONFIRMATION NO.        2019

ATTORNEY DOCKET NO. ADAM-070208.044

## DECLARATION UNDER 37 CFR 1.132 IN SUPPORT OF
## RE-EXAMINATION RESPONDENT/PATENTEE

I, John P. Gillig, do hereby declare and aver as follows:

1.     I reside at 2823 N. Course Drive, Unit 204, Pompano Beach, Florida 33069 and am the Vice President for Research and Development of Triple Tee Golf, Inc., Pompano Beach, Florida.

2.     Since approximately age 21, I have been a professional golfer and golf instructor in various areas of the country, and since about 1990 have worked out of Broward County, in south Florida.

3.     I have participated in many golf tournaments including the World Long Drive Championship in which I have finished as high as seventeenth in the world.

4.     During the approximately last twenty years, I have been extensively involved in the design and development of golf clubs and golf club head designs. In the

1

EXHIBIT 13
Page 113

course thereof, I became aware of the work of Anthony J. Antonious, a prolific golf club inventor and developer and eventually became acquainted with him.

5.      Following the passing of Antonious, several years ago, I was retained by his Trust as a consultant for the purpose of assisting in the licensing of the many patents of Antonious which were still unexpired at the time of his passing.

6.      I have had occasion to review U.S. Patent No. 5,735,754 (the '754 patent) which is the subject of this re-examination.

7.      I understand from counsel for the Trust of Antonious that the so-called Air Bear 1 driver golf club, manufactured and marketed by the Nicklaus Golf Company during the 1996 to 1997 period is a reference of record in this case.

8.      In the course of my career as a golf club developer and designer, I had occasion to meet one Thomas Stites who, I learned, was a design and development consultant to the Nicklaus Golf Company during the 1990s. It is my understanding from Stites himself, that he was the inventor of the Air Bear 1 club. I have seen and used this club on various occasions and information in connection therewith remains in my possession. More particularly, I have attached as Exh. A herewith mechanical or shop drawings which show the Air Bear 1 club in top, sole, face, heel, and toe views. I have further attached as Exh. B herewith a pamphlet entitled "Air Bear Aerodynamic Features" which was made generally available to professionals in the golf business when this product was originally introduced. As may be noted, the illustrations, at page 4 of this pamphlet are substantially identical to those shown in the drawings of Exh. A. As such, Exhs. A and B are true, valid and complete representations of the Air Bear product as I know it existed at the time of its introduction in 1996.

2

EXHIBIT 13
Page 114

9.  The structures as well as the principles of operation of the Air Bear driver are set forth in the attached pamphlet of Exh. B, however I will attempt to briefly summarize the same.

10.  The concept of the Air Bear was to reduce so-called airflow separation (AFS) distance because the greater the AFS, the greater the resultant drag force at the toe of the club (see Page 3 of Exh. B). This is also shown in Exh. 10 of Requestor's petition (Exh. C herewith). The Air Bear sought to minimize the width of the AFS and thereby reduce the heel-to-toe drag of the club by minimizing turbulence about the sides or periphery of the club. The Air Bear sought to accomplish this by providing a concave groove about almost the entire periphery, or sides, of the club other than the face of the club itself. This resulted in a somewhat pear-shaped geometry as is apparent from the views at the right of Exh. A and at the middle right of Page 4 of Exh. B.

11.  These features are particularly recited upon the "Fact Sheet" of Page 5 of Exh. B, in which reference is made to the "aerodynamic heel-to-toe airflow channel." This, as may be seen in the illustration at the bottom right of that page refers to the concave peripheral channel mentioned above and shown in Exh. A. As such, the heel-to-toe aerodynamic channel of the Air Bear was formed within the sidewalls of the club which, as may be noted in the illustrations, possessed a very small bottom or sole plate.

12.  Further, the curvature of the aerodynamic channel of the Air Bear was not parallel to either the sole plate or the crown of the club.

13.  The objective of the aerodynamic channel of the Air Bear was to accelerate heel-to-toe airflow while narrowing the AFS distance. This objective could not have been accomplished if the aerodynamic channel of Air Bear was disposed in

3



EXHIBIT 13
Page 115

or upon the bottom or sole plate of the club.  Page 3 of Exh. B states "Normal oversize drivers separate the relative airflow completely around the skirt of the club."  The Air Bear addressed this problem by reducing the dimension of the sole plate and changing the geometry of the "skirt" to thereby reduce toe related turbulence and drag while also facilitating a greater weight of the club head.  In addition, Page 5 of Exh. B indicates that the heel-to-toe aerodynamic channel of the Air Bear also enabled greater speed and ease of the golf swing.  The Air Bear also purported to maximize the so-called "gear effect" for off-center ball strikes.

14.     Further, as may be noted in Exh. A and on the last page of Exh. B, the horse-shoe shaped aerodynamic channel of the Air Bear permitted additional weighting to be provided and, while not precisely symmetric about a front to rear centerline of the club, was not significantly offset from the centerline.  In fact, the forward ends of the Air Bear channel are nearly parallel with, and each end is the same distance from, the plane of the club face.  Further, as may be noted in the reference AB #6, attached herewith as Exh. D, in Exh. B of the Long Declaration, and as I have personally observed, the heel end of the Air Bear channel tails upward, away from the face plate and toward the hosel, while the  toe end of the Air Bear channel is larger and tails downward toward the face plate. As such, the channel of the Air Bear is not substantially parallel to either the sole plate or the crown of the club.

15.     In distinction, the structure of all embodiments of the club taught in the Antonious '754 patent was very different.  Starting with function, the objective of Antonious in the club heads shown in the '754 patent was to provide an aerodynamic structure upon the bottom surface of the club adjacent the rear edge of the club head to

4

EXHIBIT 13
Page 116

produce greater club head speed. Antonious, like Stites, was also concerned with undesirable turbulence and its resultant aerodynamic drag, however, the structure and principles of operation of the club of the '754 patent bear little, if any, relationship to the structure and principles of operation of the Air Bear.

16.    More particularly, Antonious sought to reduce aerodynamic drag by providing a smoother, so-called laminar type of front-to-rear airflow around the club head to enable a golfer to hit balls longer and straighter. Antonious also sought to increase aerodynamic stability of the club head to provide increased control of club head position to the golfer during club swing and to provide more consistent ball strikes and therefore launches.

17.    Antonious sought to achieve the above by providing a c-shaped aerodynamic slot adjacent to the rear surface of the club and upon the bottom surface at a position generally following the contour of the club body.

18.    In his '754 patent, Antonious provided for c-shaped aerodynamic slots 130, 230, 330 and 430, all having the same purpose, that is, to engage the airflow just behind the striking face of the club and to direct the same toward the rear surface of the club and within the walls of the c-shaped slot. The airflow so captured would then be expelled rearwardly out of the slot to thereby minimize turbulence and drag upon the club head which would otherwise occur in the absence of such control of the front-to-rear airflow across the bottom surface of the club. This feature is common to all embodiments of the '754 patent regardless of whether or not a venturi opening, such as opening 232 (shown in Figs. 6 and 7), was included as a part of the c-shaped slot.

5

EXHIBIT 13
Page 117

19.     Regarding the embodiment of Figs. 9 and 10, Antonious employed a golf club head similar in shape to the golf club head described in Figs. 1-5 of the '754 patent. (See Col. 3, Line 24.)   As may be noted in Fig. 5, the aerodynamic slot 130 (which as above noted is common to all embodiments) defines a plane which is substantially parallel to both the bottom surface, or sole plate, and the crown of the club.  Therein, the aerodynamic slots 330 and 430 shown in Figs. 9 and 10 occupy the same plane as the slot shown in Fig. 5, i.e., a plane substantially parallel with both the bottom and top surfaces of the club.  As such, the c-shaped aerodynamic slot of Antonious is separate and apart from the sidewall surfaces 127, 227, 327 and 427 of the respective embodiments of the invention.

20.     The aerodynamic slots of the embodiment of Figs. 9 and 10 differ from those of the other embodiments in that such slots occupy a greater annular dimension and are each asymmetric relative to the centerline from the front-to-rear of the club.  As such, the respective slots 330 and 430 of these embodiments are substantially offset from the centerline but nonetheless at least some portion thereof transverses the front-to-rear centerline of the club.

21.     As to the rationale of Antonious in regard to the embodiments of the invention which appears in Figs. 9 and 10, my understanding is that his objective was to provide a golf club having an improved aerodynamic surface on the bottom sole to substantially reduce drag and improve stability. Another objective was increase lift by concentrating air flow near the rear surface of the clubhead to further reduce the turbulence in airflow at the rear of the club, this to increased club swing speeds and improved swing stability.

6

EXHIBIT 13
Page 118

22.   A key design aspect of the '754 patent appears where the aerodynamic slot is substantially offset from the centerline of a club.  By doing this Antonious could re-direct a component of the front-to-rear airflow which he sought to accelerate, either toward the toe of heel of the clubhead.  The effect of this was to increase or decrease the head speed at the toe end of the clubhead if one or the other of the embodiments of Fig. 9 or Fig. 10 were used.  If club speed were decreased at the toe end, which would be the case in the embodiment of Fig. 9, the speed of the toe end of the club would thereby be equalized with the speed of the heel end, thus resulting in substantially uniform speed across the entire face of the golf club.  This would be an important consideration to low handicap golfers such as myself or a higher handicap golfer who has a problem slicing the ball.

23.   However, if, because of a problem associated with a particular swing characteristic, one wished to reduce head speed at the heel of the club, such as for a golfer that hooks the ball (the embodiment of Fig. 10), this could also be accomplished. Swing problem characteristics exist both with left and right handed golfers.  As such, Antonious sought to accommodate the needs of each, regardless of whether or not the particular golfer was a low handicap competitor who was concerned with equalizing the slight difference in head speed that normally exists between the toe and heel of the golf club.

24.   In my opinion, Antonious' objectives of minimizing front-to-rear turbulence and reduction of drag upon the club, while enhancing club speed and stability, could not have been achieved if his aerodynamic slot was located within any of the sidewalls or side surfaces of the embodiments set forth in the '754 patent or if the slot

7

EXHIBIT 13
Page 119

was not substantially parallel with the bottom and crown of the club. As such, I consider the cross-sectional view of Fig. 5 to be controlling with regard to the shape and geometry of the slot that was common to all embodiments of the invention.

25.     I have also reviewed Design Patent No. 350,176, entitled Wood Type Golf Club Head. Apart from the fact that the symmetric cavities thereof possess no offset or asymmetry relative to the front-to-rear centerline of the club, the salient features of this patent are a centerline barrier wall, as particularly shown in Fig. 6 of this patent, and the fact that the toe-and-heel side cavities of the club are concavely carved or formed out of the sidewalls of the club, this as is clearly shown in Figs. 4 and 5 of the '176 patent.  In many respects, this sidewall curvature is similar to that of the Air Bear club discussed above. However, because of the existence of the centerline barrier, heel-to-toe airflow in the manner of the Air Bear club cannot occur.

26.     As is the case with the Air Bear, the "kidney-shaped cavities" of the Antonious '176 patent are not helpful in producing the laminar airflow with which the Antonious '754 patent was concerned.  In fact, the structure of the '176 design patent would be detrimental to the aerodynamics of the clubhead. Both the barrier walls in the center of the clubhead and steep walls at the sides are easily distinguishable from the interior surface of the cavities. Also, the walls form a sharp edge with the inner surface of the deep symmetric cavities. The effect is to trap air inside the cavities and to impede air from flowing freely over the steep walls which act as a barrier to air flow causing increased drag on the clubhead. It should be noted that if the walls were connected to the inner cavity by a curved fillet surface, smoother more aerodynamic airflow would result,

8

EXHIBIT 13
Page 120

but this is not the case. Further, the '176 design patent disclose an "ornamental design for a wood type golf club" whose purpose was for aesthetics.

27.    In my opinion, the only value, in terms of enhanced stability of the club of the '176 patent, would occur during the upward part of a golfer's swing, commencing shortly before ball strike and continuing through the end of the club swing.

28.    I have also reviewed U.S. Design Patent 363,961 (1995) to Krzynowek et al, entitled Golf Clubs. This, like the '176 reference is also a design patent. As shown in Fig. 5 thereof, the sole cavity in the plate of the '961 patent transects an angle of about 60 degrees, does not pass through the face-to-rear centerline, does not define a c-shaped slot, and does not have ends that are directed toward the face of the club. As such, I do not see any structural or functional relationships between the '961 design patent and the '754 utility patent of Antonious. As a design patent, the intended function of small cavity of the '961 patent is unknown.

29.    I have also reviewed U.S. Design Patent 372,063 (1996) to Hueber, another design patent for a golf club head, and cannot find in it any geometry which could be termed a c-shaped slot. More particularly, Fig. 7 indicates an essentially rectangular and centerline symmetric recess in the bottom of the club. As such its only apparent relationship to the '754 patent is the existence of some form of recess within the bottom of the club. This appears to be a "rail" club of a type popular in the mid-1990s in which the objective was to minimize contact between the club and the turf, upon ball strike. This is perhaps the only feature in common between the '063 design patent and the Antonious '754 patent which also had a rail feature which was elements 126, 226, 325 and 425 of the club.

9

EXHIBIT 13
Page 121

30.     I have also reviewed U.S. Patent No. 6,257, 991(2001) to Ortiz, entitled Metal Club Head and Drive. This patent has some similarities to the embodiment of Figs. 1-5 of the '754 patent and, in fact, the Abstract page of this patent, under "References Cited" indicates that the Examiner of the '991 patent cited to the '754 patent.

31.     As may be seen in Fig. 4 of the '991 patent, this patent does not include a skid like the geometry of the embodiment of Figs. 1-5 of the '754 patent and, in lieu thereof, employs runners 52. During this period, such runners were used in golf club drivers as alternatives to skids to minimize club contact with the golf course turf. Regarding the c-shaped groove 54 of the '991 patent, this groove is symmetric relative to the front to rear centerline of the club and, as such, cannot be relevant to the embodiment of Figs. 9-10 of the '754 patent. Figs. 2 and 3 of the '991 patent show that the c-shaped groove 54 thereof was located well above the sole plate of the club, exhibited an irregular crown-to-sole axis geometry and was not parallel to the sole plate, as was the aerodynamic slot of the '754 patent.

32.     I have also review U.S. Patent No. 5,456,469 (1995) to MacDougall, entitled Dynamically Stabilized Golf Club. This club teaches the provision of an E-shaped geometry as the sole plate. This geometry appears to be integrally formed with the solid body of the club itself in which so-called strakes 26 and 28 perform a function comparable to the runners 52 in the '991 patent. As may be seen in the cross-sectional view of Fig. 3 of the '469 patent, airflow is necessarily directed along the recess between the strakes 26 and 28 such that airflow in that channel is accelerated while, in the '754 patent, airflow is blocked along the centerline of the club to create an acceleration of

10

EXHIBIT 13
Page 122

airflow within and along the particular aerodynamic slot along the edges of the bottom surface.

33.     Further, the E-shaped recess of the '469 patent is substantially symmetric about the front-to-rear centerline of the club, this in distinction to the substantially off-center positioning of the aerodynamic slot in the embodiments of Figs. 9-10 of the '754 patent.

34.   I declare that all statements made herein of my own knowledge are true and that all statements made on information and belief are believed to be true and, further, that these statements were made with the knowledge that willful, false statements and the like so made are punishable by fine or imprisonment, or both, under 18 U.S.C. 1001, and that such willful false statements may jeopardize the validity of this patent or of any successor patent issued thereupon.


_4/20/09_
DATE

JOHN P. GILLIG


Exhibits herewith:
A. Mechanical drawings of Air Bear Club.
B. Brochure entitled Air Bear Aerodynamic Features.
C. Exh. 10 of Requestor's Petition.
D. Examiner's Reference AB #6


11

EXHIBIT 13
Page 123

EXH. A



EXHIBIT 13
Page 124

EXH. B

# AIR BEAR
# AERODYNAMIC FEATURES

EXHIBIT 13
Page 125

## AIR BEAR AERODYNAMIC FEATURES

Why should the club head be aerodynamically efficient from heel to toe?

During 99% of the pre impact swing, the club is cutting through the air heel first. From the top of the swing until final rotation at impact, the club is presented to the air heel first. Maximum head speed is achieved during this pre impact portion of the swing. A club that is aerodynamically efficient must account for the heel orientation to the relative wind. If the club does not cut smoothly through the air, larger drag forces will pull on the club head to slow it down.



EXHIBIT 13
Page 126



AIR BEAR DRIVER

- THE AIR BEAR SEPARATES HEEL RELATIVE AIR FLOW ONLY A SLIGHT DISTANCE AND THEN BRINGS THE FLOW SMOOTHLY BACK TOGETHER. THIS MINIMIZES TURBULENCE WHICH SIGNIFICANTLY REDUCES THE DRAG FORCE.
- DRAG FORCES ON THE AIR BEAR DRIVERS ARE 1.0 TO 1.3 POUNDS.
- REDUCED DRAG HELPS THE GOLFER TO SWING FASTER WITHOUT LOSS OF CONTROL. THIS ALLOWS HIGHER HEAD-WEIGHTS WITHOUT LOSS OF HEAD SPEED.

AIR FLOW COMES BACK TOGETHER

TURBULENCE PRODUCES DRAG

RELATIVE AIR FLOW SEPARATION

NORMAL OVERSIZE DRIVER

DRAG – SLOWING OR PULLING FORCE THAT IS THE RESULT OF AIR FLOW SEPARATION.

AFS – AIR FLOW SEPARATION DISTANCE; THE GREATER AFS BECOMES THE GREATER THE DRAG FORCE BECOMES.

- DURING MOST OF THE GOLF SWING THE CLUBHEAD IS LED BY THE HEEL/HOSEL AREA.
- NORMAL OVERSIZE DRIVERS SEPARATE THE RELATIVE AIR FLOW COMPLETELY AROUND THE SKIRT OF THE CLUB.
- LARGE AFS NUMBERS PRODUCE LARGE DRAG FORCES AND TURBULENCE.
- FOR NORMAL OVERSIZE (200 cc) DRIVER THE PULLING OR DRAG FORCE IS 1.5 – 2.0 POUNDS.

EXHIBIT 13
Page 127

## AERODYNAMIC FORCES
## EXERTED ON A GOLF CLUB HEAD

*WIND TUNNEL ORIENTATIONS*



⊕  *WIND FORCE INTO FACE*

*VARIABLE DEFINITIONS:*

(+)S – *SIDE FORCE* (lbs)

(+)D – *DRAG FORCE* (lbs) – (+) is positive drag slowing the golf club.

(+)Ym – *YAW MOMENT* (ft–lbs) – The lever force that tries to rotate the club head in the (+) direction or the (−) direction.

*WIND* – The direction of the relative wind or air the club is cutting through.

(+)L – *LIFT FORCE* (lbs)

(+)Pm – *PITCH MOMENT* (ft–lbs) – The lever force that tries to rotate the club head in the (+) direction or the (−) direction.

(+)Rm – *ROLL MOMENT* (ft–lbs) – The lever force that tries to rotate the club head in the (+) direction or the (−) direction.

⊕ – Indicates wind direction as if the wind was going straight into this sheet of paper.

⊠ – Indicates the rotational moment center point.

EXHIBIT 13
Page 128

FACT SHEET - AIR BEAR

| *Feature(s)* | | *Benefit(s)* | |
|---|---|---|---|
| 1. | Oversize high moment woods | 1. | Maximum forgiveness for off center hits |
| 2. | Aerodynamic heel to toe air flow channel | 2. | Allows golfer to swing the club faster and easier |
| 3. | Computer design and performance tested face | 3. | Maximum "gear effect" for off center hits |



NORMAL OVERSIZE DRIVER

DRAG - SLOWING OR PULLING FORCE THAT IS THE RESULT OF
  AIR FLOW SEPARATION.
AFS - AIR FLOW SEPARATION DISTANCE. THE GREATER AFS
  BECOMES THE GREATER THE DRAG FORCE BECOMES.

* DURING MOST OF THE GOLF SWING THE CLUBHEAD IS LED
  BY THE HEEL/HOSEL AREA.
* NORMAL OVERSIZE DRIVERS SEPARATE THE RELATIVE AIR
  FLOW COMPLETELY AROUND THE SKIRT OF THE CLUB.
* LARGE AFS NUMBERS PRODUCE LARGE DRAG FORCES AND
  TURBULENCE.
* FOR NORMAL OVERSIZE (200 cc) DRIVER THE PULLING OR
  DRAG FORCE IS 1.5 - 2.0 POUNDS.



AIR BEAR DRIVER

* THE AIR BEAR SEPARATES HEEL RELATIVE AIR FLOW ONLY
  A SLIGHT DISTANCE AND THEN BRINGS THE FLOW SMOOTHLY
  BACK TOGETHER.  THIS MINIMIZES TURBULENCE WHICH
  SIGNIFICANTLY REDUCES THE DRAG FORCE.
* DRAG FORCES ON THE AIR BEAR DRIVERS ARE 1.0 TO
  1.3 POUNDS.
* REDUCED DRAG HELPS THE GOLFER TO SWING FASTER
  WITHOUT LOSS OF CONTROL.  THIS ALLOWS HIGHER HEAD
  WEIGHTS WITHOUT LOSS OF HEAD SPEED

EXHIBIT 13
Page 129

**Air Channel Weight**

Another special aspect of the Air Bear is it's increased cross-sectional air channel weight. This extra weight around a horseshoe perimeter effectively makes the club more toe, heel and back weighted. This is exactly what is needed to reduce twisting on off-center hits.

## ANOTHER AIR CHANNEL BENEFIT

### AIR CHANNEL ADDS PERIMETER WEIGHT

*THE AIR CHANNEL GIVES 10% TO 14% MORE PERIMETER WEIGHT THAN STANDARD METAL WOODS*



EXTRA WEIGHT

= *LESS TWIST ON TOE AND HEEL HITS*

= *BETTER DISTANCE ON TOE AND HEEL HITS*

### CROSS-SECTION OF AIR CHANNEL



14% MORE WEIGHT

*THE USGA RULE TO PREVENT BREADTH (FRONT TO BACK WIDTH) FROM BEING MORE THAN LENGTH (TOE TO HEEL) IS TO KEEP CLUBS FROM LAUNCHING HIGHER WITH LESS SPIN. THIS WOULD MAKE FOR LONGER SHOTS. BACK WEIGHTS HELP IN PRODUCING THESE SHOTS. THE 12% AVERAGE HIGHER CONCENTRATION OF WEIGHT TO MAKE THE AIR FLOW CHANNEL HELPS FOR OPTIMIZING LAUNCH ANGLE, PLUS MAKING THE CLUBS MORE HEEL AND TOE WEIGHTED.*

EXHIBIT 13
Page 130



*The channel on the Air Bear's soleplate reduces airflow separation, turbulence and, ultimately, drag.*

some control problems. Said another low-handicapper: "I had some adjustment time with this driver. On the range I hit a long succession of hooks, but once I relaxed my grip pressure and slowed my tempo a bit. I had no problem repeating gentle draws. It's a light club, which requires a relaxed, smooth swing. Even though I had some difficulty with it at first, I think this is a good driver for me. It forced me to slow my tempo and relax my grip pressure, and I think these swing thoughts helped my iron game as well."

Other commentary in this category concerned the driver's lightness. Testers split: Some thought that this made them susceptible to pulled drives and too-quick swings; others thought that it made the Air Bear easy to swing and promoted a smooth, repeating action.

### DISTANCE/BALL FLIGHT

Some big excitement in the Distance category. While a significant number of testers noticed no extra yardage with the Air Bear (none reported being noticeably shorter with the driver), this driver had several jumping up and down and pounding their chests like King Kong, awarding the club five stars. Said this 7: "I'd say without question that this is the longest driver I've ever hit. A good drive for me is around 250 yards, but on good swings with the Air Bear I was in the 270-yard range. The first hole at my club is normally a driver and 7- or 8-iron. The Air Bear left me with a gap

wedge approach. I can recall at least three holes where I was longer than I'd ever been before." "This driver is a cannon," said a 13. "It gave me some truly memorable drives." Said a 10 and extremely long hitter. "My best efforts with this driver were around 290 yards. I'm longer with my own driver [a Yonex Tour], but only by a few yards, and the shaft in my driver is an inch longer. This is definitely longer than most drivers I've hit."

On the ball-flight front, those testers who noticed a deviation from their usual ball flight found the Air Bear to deliver a slightly, yet notice-

| DISTANCE/ BALL FLIGHT |
|---|
| Low-Handicappers: ★★★★ |
| Mid-Handicappers: ★★★★½ |
| High-Handicappers: ★★★★ |

ably lower trajectory. Said a 9: "My tee shots were a bit lower with this driver, which is surprising because it was a 10.5-degree loft, and I usually hit a 9.5."

### FEEL

The Air Bear has a distinct feeling at impact. It was difficult for our testers to describe—"light," "soft," "subtle" and "numb" appeared frequently in our testers' evaluations. Not only did they have a difficult

time describing the sensation, they couldn't decide whether they liked this soft feel. Many testers appreciated the lack of vibration; others thought impact felt weak or "lifeless." "It felt to me that the driver lacked punch," said a 9. "Sometimes instructors suggest that you try to swing as if the ball weren't there. This driver complements that swing thought because you can barely feel the ball. I tested the Air Bear at a course that I've played numerous times, and I was repeatedly surprised at how far I'd driven the ball because impact felt so dull. I was frequently

| FEEL |
|---|
| Low-Handicappers: ★★½ |
| Mid-Handicappers: ★★★½ |
| High-Handicappers: ★★★½ |

hitting less club into greens."

Also complimented was the driver's weight. True to Nicklaus' word, the driver feels very light. Again, testers varied as to whether they liked this feature. While some thought that it made the club easy and effortless to swing, others thought that the light weight caused them to hit from the top, or to get too quick with the transition from backswing to forwardswing.

### FORGIVENESS

Our testers were quite pleased with how the Air Bear treated mis-hits.

EXHIBIT 13
Page 131

AB#6

EXH. D



EXHIBIT 13
Page 132



EXHIBIT 13
Page 133

APPLICANT:  Anthony J. Antonious                    EXAMINER: Peter English

RE-EXAM APPLICATION NO.:      90/010,266

RE-EXAM FILING DATE:          09/02/2008

PATENT NO.:                   5,735,754

CONFIRMATION NO.              2019

ATTORNEY DOCKET NO. ADAM-070208.044


## DECLARATION UNDER 37 CFR 1.132 IN SUPPORT OF
## RE-EXAMINATION RESPONDENT/PATENTEE


I, Douglas Winfield, do declare and hereby state as follows:

1.  I am over the age of 21 years old.

2.  I hold a Ph.D. in mechanical engineering from University of Memphis and am inventor on over 20 United States Patents.

3.  I have worked in the golf equipment industry in various roles since 1991.  More particularly, I have held numerous jobs in the golf Industry working in research and development including True Temper Sports, United States Golf Association, Acushnet Company, and Dunlop-Slazenger Group. I have consulted with various other companies including AccuSport, Orlamar, Wilson Sports; and Full Swing Golf.

EXHIBIT 14
Page 134

4. I am familiar with Nicklaus Golf Equipment's "Air Bear" golf club, first marketed in 1996.

5. I have read and examined carefully United States Patent 5,735,754 ('754 patent) by Anthony J. Antonious.

6. The invention described in the '754 patent is substantially different in structure and function than that of the "Air Bear" driver. The aerodynamic surface on the "Air Bear" is oriented about the side walls of the driver.

7. The aerodynamic slot described in the '754 patent is on the bottom surface or sole of the driver and defines a plane substantially parallel with the slot, as is shown in Fig. 5 of the patent.

8. The aerodynamic channel of the Air Bear, while not precisely symmetric about a front to rear centerline of the club, was not significantly offset from the centerline. In fact, the forward ends of the Air Bear channel are nearly parallel with, and each end is the same distance from, the plane of the striking face. Further, as may be noted in the reference AB #6, in Exh. B of the Declaration of Clayton Long, and as I have personally observed, the heel end of the Air Bear channel curves upward, away from the club face and toward the hosel, while the toe end of the Air Bear channel is larger and curves downward toward the club face. As such, the channel of the Air Bear is not substantially parallel to the sole plate of the club.

9. The concept, as stated by their promotional materials, of the Air Bear was to reduce so-called airflow separation (AFS) distance because the greater the AFS, the greater the resultant drag force on the club. The Air Bear sought to minimize the front-to-rear width

EXHIBIT 14
Page 135

of the AFS to thereby reduce the heel-to-toe drag of the club by minimizing turbulence about the sides or periphery of the club. The Air Bear sought to accomplish this by providing a concave groove about almost the entire periphery, or side walls, of the club other than the face of the club. This resulted in a somewhat pear-shaped geometry of the club head.

10. Antonious according to the '754 patent sought to reduce aerodynamic drag by providing a smoother, so-called laminar front-to-rear airflow around the club head to enable a golfer to hit balls longer and straighter. Antonious also sought to increase aerodynamic stability of the club head to provide increased control of club head position to the golfer during club swing and to provide more consistent ball strikes and therefore launches.

11. The aerodynamic slots of the embodiment of Figs. 9 and 10 of the '754 patent differ from those of the other embodiments of the patent in that such slots are wider and are each asymmetric relative to the centerline from the front-to-rear of the club. As such, the respective slots 330 and 430 of these embodiments are substantially offset from the centerline but nonetheless at least some portion intersects the front-to-rear centerline of the club.

12. I have also reviewed Design Patent No. 350,176 ('176 patent), entitled Wood Type Golf Club Head. The cavities are symmetrically oriented with respect to the front-to-rear centerline of the clubhead. The sole is comprised of a centerline barrier wall, as particularly shown in Fig. 6, and the toe-and-heel side cavities of the club are concavely carved or formed out of the sidewalls of the club as shown in Figs. 4 and 5 of the '176 patent. In many respects, this sidewall curvature is similar to that of the Air Bear club

EXHIBIT 14
Page 136

discussed above.  However, because of the existence of the centerline barrier wall, unimpeded heel-to-toe airflow in the manner of the Air Bear club cannot occur.

13.  I hereby declare that all statements made herein of my own knowledge are true and that all statements I declare that all statements made herein of my own knowledge are true and that all statements made on information and belief are believed to be true and, further, that these statements were made with the knowledge that willful, false statements and the like so made are punishable by fine or imprisonment, or both, under 18 U.S.C. 1001.

4-21-09
DATE

DOUGLAS WINFIELD, PH.D.

EXHIBIT 14
Page 137



## UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 90/010,266 | 09/02/2008 | 5735754 | ADAM-070208.044 | 2019 |

| | | | | |
|---|---|---|---|---|
| 27353 | 7590 | 08/27/2009 | EXAMINER | |

MELVIN K. SILVERMAN AND ASSOCS PC
500 WEST CYPRESS CREEK ROAD
SUITE 350
FT. LAUDERDALE, FL 33309

| ART UNIT | PAPER NUMBER |
|---|---|
| | |

DATE MAILED: 08/27/2009

Please find below and/or attached an Office communication concerning this application or proceeding.

PTO-90C (Rev. 10/03)

EXHIBIT 15
Page 138

 UNITED STATES PATENT AND TRADEMARK OFFICE

Commissioner for Patents
United States Patent and Trademark Office
P.O. Box 1450
Alexandria, VA 22313-1450
www.uspto.gov

**DO NOT USE IN PALM PRINTER**

(THIRD PARTY REQUESTER'S CORRESPONDENCE ADDRESS)

Michael J. Gallagher
GALLAGHER & DAWSEY CO, LPA
PO Box 785
Columbus, OH 43216

## *EX PARTE* REEXAMINATION COMMUNICATION TRANSMITTAL FORM

REEXAMINATION CONTROL NO. *90/010,266*.

PATENT NO. *5735754*.

ART UNIT *3993*.

Enclosed is a copy of the latest communication from the United States Patent and Trademark Office in the above identified *ex parte* reexamination proceeding (37 CFR 1.550(f)).

Where this copy is supplied after the reply by requester, 37 CFR 1.535, or the time for filing a reply has passed, no submission on behalf of the *ex parte* reexamination requester will be acknowledged or considered (37 CFR 1.550(g)).

PTOL-465 (Rev.07-04)

EXHIBIT 15
Page 139

| *Office Action in Ex Parte Reexamination* | Control No.<br>90/010,266 | | Patent Under Reexamination<br>5735754 | |
|---|---|---|---|---|
| | Examiner<br>PETER C. ENGLISH | | Art Unit<br>3993 | |

*-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address --*

a☒ Responsive to the communication(s) filed on *22 April 2009 and 29 April 2009* .   b☒ This action is made FINAL.
c☐ A statement under 37 CFR 1.530 has not been received from the patent owner.

A shortened statutory period for response to this action is set to expire *1* month(s) from the mailing date of this letter.
Failure to respond within the period for response will result in termination of the proceeding and issuance of an *ex parte* reexamination certificate in accordance with this action. 37 CFR 1.550(d). **EXTENSIONS OF TIME ARE GOVERNED BY 37 CFR 1.550(c).**
If the period for response specified above is less than thirty (30) days, a response within the statutory minimum of thirty (30) days will be considered timely.

Part I    THE FOLLOWING ATTACHMENT(S) ARE PART OF THIS ACTION:

1. ☐ Notice of References Cited by Examiner, PTO-892.      3. ☐ Interview Summary, PTO-474.

2. ☐ Information Disclosure Statement, PTO/SB/08.      4. ☐ _____ .

Part II   SUMMARY OF ACTION

1a. ☒ Claims *1-3 and 5-9* are subject to reexamination.

1b. ☐ Claims _____ are not subject to reexamination.

2. ☒ Claims *4* have been canceled in the present reexamination proceeding.

3. ☒ Claims *8* are patentable and/or confirmed.

4. ☒ Claims *1-3,5-7 and 9* are rejected.

5. ☒ Claims *1,3,5 and 9* are objected to.

6. ☐ The drawings, filed on _____ are acceptable.

7. ☐ The proposed drawing correction, filed on _____ has been  (7a)☐ approved  (7b)☐ disapproved.

8. ☐ Acknowledgment is made of the priority claim under 35 U.S.C. § 119(a)-(d) or (f).

      a)☐ All  b)☐ Some* c)☐ None      of the certified copies have

      1☐ been received.

      2☐ not been received.

      3☐ been filed in Application No. _____ .

      4☐ been filed in reexamination Control No. _____.

      5☐ been received by the International Bureau in PCT application No. _____.

      * See the attached detailed Office action for a list of the certified copies not received.

9. ☐ Since the proceeding appears to be in condition for issuance of an *ex parte* reexamination certificate except for formal matters, prosecution as to the merits is closed in accordance with the practice under *Ex parte* Quayle, 1935 C.D. 11, 453 O.G. 213.

10. ☐ Other: _____

cc: Requester (if third party requester)
U.S. Patent and Trademark Office
PTOL-466 (Rev. 08-06)                    Office Action in Ex Parte Reexamination                    Part of Paper No. 20090825

EXHIBIT 15
Page 140

Application/Control Number: 90/010,266                                    Page 2
Art Unit: 3993

### DETAILED ACTION

#### *Listing of Documents*

1.      The following is a listing of the documents referred to in this Office action, together with
the short-hand reference used for each document.

**Nicklaus Air Bear References**

| Short-hand | Document |
|---|---|
| "Air Bear #3" | *'96 Show Products: A titanium sampler...*, Golf Digest, April 1996. |
| "Air Bear #6" | Advertisement for *Nicklaus Golf Products*, Golf Magazine, May 1996. |
| "Air Bear #7" | *Sizing It Up* by Rob Sauerhaft, Golf Magazine, September 1996, page 70. |

**US Patents**

| Short-hand | Document |
|---|---|
| "Krzynowek et al." | US Patent No. D363,961. |
| "Ortiz" | US Patent No. 6,257,991. |
| "Antonious '176" | US Patent No. D350,176. |
| "Hueber" | US Patent No. D372,063. |
| "MacDougall" | US Patent No. 5,456,469. |

#### *Specification*

2.      The patent's disclosure is objected to because of the following informality:
        At column 3, line 29, "head 400 and includes" should be "head 400 [and] includes".
        Appropriate correction is required.

3.      The patent's disclosure is objected to as failing to provide proper antecedent basis for the
claimed subject matter. See 37 CFR 1.75(d)(1) and MPEP § 608.01(o). Specifically, the
patent's disclosure fails to describe: .

EXHIBIT 15
Page 141

Application/Control Number: 90/010,266                                   Page 3
Art Unit: 3993

- The club head as including a "virtual face-to-rear centerline" (claim 1, line 3).
- The c-shaped slot as being "substantially parallel with" the bottom surface of the club head (claim 1, line 5).
- The c-shaped slot as "transecting" the virtual "face-to-rear centerline" of the club head (claim 1, line 10).
- The c-shaped slot as being "substantially" offset (claim 3, line 2; claim 7, line 2).
- The c-shaped slot as being "substantially parallel to" the bottom surface of the club head (claim 9, line 5).
- The club head as including a "virtual centerline" (claim 9, lines 7-8) that is "defined by a longitudinal passing transversely through a heel-to-toe axis" of the club head (claim 9, lines 8-9).
- The c-shaped slot as having "a portion thereof passing through" the "virtual centerline" of the club head (claim 9, lines 7-8).
  Correction is required.

4.      In order to comply with 37 CFR 1.530(d)(1), changes to the specification must be made by submission of the entire text of a rewritten paragraph including markings pursuant to 37 CFR 1.530(f) and (i).

### *Claim Objections*

5.      Claims 1, 3, 5-7 and 9 are objected to for failing to fully comply with 37 CFR 1.530 (f) and (i).

   In claim 1, at line 9, "by [[;]] a" should be "by [; said skid surface having] a".

   In claim 1, at line 10, "[[.]]" should be "[.]".

   In claims 3 and 7, at line 2, single brackets should be used in place of strikethrough.

   In claims 5 and 6, at line 1, "[[4]]" should be "[4]".

   New claim 9 should be underlined in its entirety.

   Correction is required.

EXHIBIT 15
Page 142

Application/Control Number: 90/010,266                                    .Page 4

Art Unit: 3993

6.      Claims 3 and 7 are objected to because the amendments made at line 2 of each of these claims results in an incomplete grammatical structure. The examiner suggests:

In claim 3, at line 2, change "slot ~~is further defined by being~~ substantially" to "slot is [further defined by being] substantially".

In claim 7, at line 2, change "~~wherein said slot~~ ~~is further defined by being~~ substantially" to "wherein said slot is [further defined by being] substantially".

Appropriate correction is required.

7.      Any future amendments to the claims must fully comply with 37 CFR 1.530(d)(2), (e), (f), (g) and (i).

### Claim Rejections - 35 USC § 112

8.      The following is a quotation of the second paragraph of 35 U.S.C. 112:

The specification shall conclude with one or more claims particularly pointing out and distinctly claiming the subject matter which the applicant regards as his invention.

9.      Claims 3, 5-7 and 9 are rejected under 35 U.S.C. 112, second paragraph, as being indefinite for failing to particularly point out and distinctly claim the subject matter which applicant regards as the invention.

Claims 3 and 7 have been amended to recite that the slot is "substantially" offset, and this limitation is also recited in new claim 9 (line 7). This change to the claims renders the scope of these claims unclear because it is unclear what constitutes a "substantially" offset slot. To what degree must a slot be offset in order to constitute a "substantial" offset? What is the line of distinction between a "substantial" offset and a "non-substantial" offset? These questions are not answered by the patent's disclosure. Therefore, the metes and bounds of the claim are not defined with a reasonable degree of clarity.

### Claim Rejections - 35 USC § 305

10.     Claims 1-3, 5-7 and 9 are rejected under 35 U.S.C. 305 as enlarging the scope of the claim(s) of the patent being reexamined. In 35 U.S.C. 305, it is stated that "[n]o proposed

EXHIBIT 15
Page 143

amended or new claim enlarging the scope of a claim of the patent will be permitted in a reexamination proceeding... ." A claim presented in a reexamination "enlarges the scope" of the patent claim(s) where the claim is broader than any claim of the patent. A claim is broader in scope than the original claims if it contains within its scope any conceivable product or process which would not have infringed the original patent. A claim is broadened if it is broader in any one respect, even though it may be narrower in other respects.

Claim 1 has been amended by removing the recitation "said skid surface having a...[wall]" (see line 10 of original patent claim 1). Removing the limitation that the wall is part of the skid surface broadens the scope of the original patent claim.

Claims 3 and 7 have been amended to recite that the slot is "substantially" offset, and this limitation is also recited in new claim 9 (line 7). The original patent claims, i.e., claims 3-7, recited that the slot is "offset". In patent language claim interpretation, the term "substantially" is often considered to be a broad term that is synonymous with the terms "generally" and "approximately". The patent's disclosure fails to define what is meant by "substantially" offset; therefore, these ordinary meanings (i.e., "generally" and "approximately") associated with the term "substantially" must be considered to be within the metes and bounds of the claim. Accordingly, amending the claim language to state that the slot is "generally" or "approximately" offset broadens the scope of the original patent claims.

### Response to Arguments

11.    Patent owner's arguments filed on 22 April 2009 have been fully considered.

Patent owner argues that amended claims 1, 3 and 5-7 and new claim 9 define over the Air Bear #3, Air Bear #6, Air Bear #7, Krzynowek et al., Ortiz, Antonious '176, Hueber and MacDougall references applied to the claims in the previous Office action. In support of these arguments, patent owner has submitted the declarations of John P. Gillig and Douglas Winfield under 37 CFR 1.132 (filed on 22 April 2009 and 29 April 2009). The examiner agrees that amended claims 1, 3 and 5-7 and new claim 9 define over the cited prior art patents and printed publications. Specifically, Air Bear #3, Air Bear #6, Air Bear #7, Ortiz and Antonious '176 fail to teach a c-shaped slot formed within/on the bottom surface of a club head and extending parallel with/to the bottom surface. Further, Krzynowek et al. and Antonious '176 fail to teach a

EXHIBIT 15
Page 144

Application/Control Number: 90/010,266                                                Page 6
Art Unit: 3993

slot that transects or intersects a virtual face-to-rear centerline of the club head. These
deficiencies in Air Bear #3, Air Bear #6, Air Bear #7, Krzynowek et al., Ortiz and Antonious
'176 are not overcome by Hueber and MacDougall. Accordingly, the rejections based on the Air
Bear #3, Air Bear #6, Air Bear #7, Krzynowek et al., Ortiz, Antonious '176, Hueber and
MacDougall references have been withdrawn.

     Patent owner further argues that the declaration of George Slupski under 37 CFR 1.131
(filed on 22 April 2009) overcomes the Air Bear #3, Air Bear #6, Air Bear #7 and Ortiz
references. The examiner disagrees with this argument for the reasons given below.

### *Declaration under 37 CFR 1.131*

12.    The declaration of George Slupski under 37 CFR 1.131 (filed on 22 April 2009) is
ineffective to overcome the Air Bear #3, Air Bear #6, Air Bear #7 and Ortiz references because it
is not executed by an individual/entity entitled or empowered to make such a declaration under
37 CFR 1.131.

    The following parties may make an affidavit or declaration under 37 CFR 1.131:

    (A)   All the inventors of the subject matter claimed.

    (B)   Less than all named inventors where it is shown that less than all named inventors
invented the subject matter of the claim or claims under rejection.

    (C)   A party qualified under 37 CFR 1.42, 1.43 or 1.47 to serve as legal representative.

    (D)   The assignee or other party in interest when it is not possible to produce the
affidavit or declaration of the inventor.

    See MPEP 715.04.

    Mr. George Slupski is not the inventor named in Patent No. 5,735,754, has not been
established to be a legal representative under 37 CFR 1.42, 1.43 or 1.47, and is not the assignee
or other party in interest. Accordingly, Mr. Slupski is not entitled or empowered to make a
declaration under 37 CFR 1.131 in the instant proceeding.

    Since the declaration under 37 CFR 1.131 was not properly executed by a qualified party,
the declaration will not be further considered as to its merits.

EXHIBIT 15
Page 145

Application/Control Number: 90/010,266                                    Page 7
Art Unit: 3993

### *Patentable Claims*

13.     The following is an examiner's statement of reasons for patentability and/or confirmation
of the claims found patentable in this reexamination proceeding:

        Claim 8 is confirmed as patentable because the cited prior art patents and printed
publications fail to teach a golf club head, as defined in this claim, including a C-shaped slot on
the bottom surface of the club head together with a venturi opening in fluid communication with
and extending rearwardly from the C-shaped slot toward the rear surface of the club head.

14.     Claims 1-3, 5-7 and 9 would be patentable if amended or rewritten to overcome the
rejections under 35 USC 112 and 35 USC 305 set forth above. Claim 1 would be patentable
because the cited prior art patents and printed publications fail to teach a golf club head, as
defined in this claim, including a C-shaped slot on the bottom surface of the club head, and a
skid surface raised from the bottom surface and separated from the bottom surface by a wall,
wherein the slot is substantially parallel with the bottom surface and transects a centerline
passing through the ball striking face and rear surface of the club head. Claims 2, 3 and 7 would
be patentable because of their dependency from claim 1. Further, claim 2 would be patentable
because the cited prior art patents and printed publications fail to teach a golf club head, as
defined in this claim, including a C-shaped slot on the bottom surface of the club head together
with a venturi opening in fluid communication with and extending rearwardly from the C-shaped
slot toward the rear surface of the club head. Claim 9 would be patentable because the cited prior
art patents and printed publications fail to teach a golf club head, as defined in this claim,
including a C-shaped slot within the bottom surface of the club head, the slot being substantially
parallel to the bottom surface and offset from a centerline passing transversely through a heel-to-
toe axis of the club head, with a portion of the slot passing through the centerline. Claims 5 and 6
would be patentable because of their dependency from claim 9.

### *Final Action*

15.     Patent owner's amendment filed on 22 April 2009 necessitated the new grounds of
rejection presented in this Office action. Accordingly, **THIS ACTION IS MADE FINAL**. See
MPEP § 706.07(a).

EXHIBIT 15
Page 146

Application/Control Number: 90/010,266                                      Page 8
Art Unit: 3993

### *Remarks*

16.     Litigation involving Patent No. 5,735,754 (*Adams Golf, Inc. v. Anthony J. Antonious Irrevocable Trust, US District-Ohio Southern, No. 2:08cv517*) has been stayed for the purposes of reexamination. Accordingly, a shortened statutory period of 1 month is set for response to Office actions in this proceeding. See MPEP 2263.

17.     Extensions of time under 37 CFR 1.136(a) do not apply in reexamination proceedings. The provisions of 37 CFR 1.136 apply only to "an applicant" and not to parties in a reexamination proceeding. Further, in 35 U.S.C. 305 and in 37 CFR 1.550(a), it is required that reexamination proceedings "will be conducted with special dispatch within the Office."

        Extensions of time in reexamination proceedings are provided for in 37 CFR 1.550(c). A request for extension of time must be filed on or before the day on which a response to this action is due, and it must be accompanied by the petition fee set forth in 37 CFR 1.17(g). The mere filing of a request will not effect any extension of time. An extension of time will be granted only for sufficient cause, and for a reasonable time specified.

        The filing of a timely first response to this final rejection will be construed as including a request to extend the shortened statutory period for an additional month, which will be granted even if previous extensions have been granted. In no event, however, will the statutory period for response expire later than SIX MONTHS from the mailing date of the final action. See MPEP § 2265.

18.     Any proposed amendment filed in this reexamination proceeding must be made in accordance with 37 CFR 1.530(d)-(j) and comply with the formal requirements of 37 CFR 1.52(a) and (b). See MPEP 2250.

19.     Responses to this Office action may be submitted by facsimile and should be directed to the Central Reexamination Unit using facsimile number 571-273-9900. A confirmation of receipt will be generated automatically for all papers transmitted via this facsimile number.

EXHIBIT 15
Page 147

Application/Control Number: 90/010,266                                    Page 9
Art Unit: 3993

All responses to be delivered by the United States Postal Service (USPS) should be

addressed as follows:

> Mail Stop Ex Parte Reexam
> Central Reexamination Unit
> Commissioner for Patents
> PO Box 1450
> Alexandria, VA 22313-1450

Hand-delivered responses should be labeled "Attn: Central Reexamination Unit" and

delivered to:

> Customer Service Window
> Randolph Building, Lobby Level
> 401 Dulany Street
> Alexandria, VA 22314

Submissions for reexamination proceedings may also be submitted through EFS-Web

(the USPTO's web-based document submission system).

20.     Any document filed by either the patent owner or third party requester *must be served* on
the other party (or parties in a merged proceeding) in the reexamination proceeding in the
manner provided by 37 CFR 1.248. See 37 CFR 1.550(f) and MPEP 2266.03.

21.     The patent owner is reminded of the continuing responsibility under 37 CFR 1.565(a) to
apprise the Office of any litigation activity, or other prior or concurrent proceeding, involving the
patent throughout the course of this reexamination proceeding. The third party requester is also
reminded of the ability to similarly apprise the Office of any such activity or proceeding
throughout the course of this reexamination proceeding. See MPEP §§ 2207, 2282 and 2286.

22.     Any inquiry concerning this communication or earlier communications from the
Reexamination Examiner should be directed to Peter English whose telephone number is
(571)272-6671. The examiner can normally be reached on Monday through Thursday (7:00 AM
- 5:00 PM). If attempts to reach the examiner by telephone are unsuccessful, the examiner's
supervisor, Andres Kashnikow, can be reached at 571-272-4361.

EXHIBIT 15
Page 148

Application/Control Number: 90/010,266                                    Page 10
Art Unit: 3993

      For general information regarding reexamination proceedings please call the Central

Reexamination Unit at 571-272-7705. For guidance on reexamination practice and procedure

please call the Office of Patent Legal Administration at 571-272-7703.

Peter C. English                        8/25/09
Primary Examiner
Central Reexamination Unit

Conferees: *BKJ2*
        *M/b*

pe
25 August 2009

EXHIBIT 15
Page 149