SEPEHR DAGHIGHIAN, State Bar No. 239349
**LAW OFFICES OF SEPEHR DAGHIGHIAN, P.C.**
433 North Camden Drive, Fourth Floor
Beverly Hills, California 90210
Telephone: (310) 887-1333
Facsimile: (310) 887-1334
E-mail: sepehr@daghighian.com

MELVIN K. SILVERMAN, *Pro Hac Vice*
**M.K. SILVERMAN & ASSOCIATES, P.C.**
One Gateway Center, Suite 2600
Newark, NJ 07102
Telephone: (973) 508-5033
Facsimile: (888) 889-5866
E-mail: mks@mkspc.com

Attorneys for Plaintiff:
**THE IRREVOCABLE TRUST OF ANTHONY J. ANTONIOUS**

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| THE IRREVOCABLE TRUST OF ANTHONY J. ANTONIOUS, a Florida Trust,<br><br>    Plaintiff/Counterclaim Defendant,<br><br>v.<br><br>ROGER CLEVELAND GOLF COMPANY, INC. a California Corporation,<br><br>    Defendant/Counterclaim Plaintiff. | Case No.: SACV10-1198 CJC (RNBx)<br><br>**MEMORANDUM OF POINTS & AUTHORITIES IN OPPOSITION TO MOTION FOR PARTIAL SUMMARY JUDGMENT THAT PLAINTIFF IS PRECLUDED FROM RECOVERING DAMAGES FOR PRODUCTS PRESENT IN THE UNITED STATES BEFORE JANUARY 5, 2010**<br><br>Date:   January 10, 2011<br>Time:   1:30 p.m.<br>Place:  Courtroom 9B<br>Judge:  Hon. Cormac J. Carney |

# **TABLE OF CONTENTS**

I. INTRODUCTION ......................................................................................... 5

II. STATEMENT OF FACTS .......................................................................... 6

III. STATEMENT OF LAW ............................................................................. 7

IV. ARGUMENT ............................................................................................ 11

    A. THE REEXAMINED CLAIMS ARE SUBSTANTIVELY IDENTICAL TO THE ORIGINAL CLAIMS OF THE '754 PATENT. .............. 11

        1. THE "WITHIN AND SUBSTANTIALLY PARALLEL TO" LANGUAGE WOULD HAVE BEEN READ INTO CLAIM 4 BASED ON THE INTRINSIC EVIDENCE OF RECORD. ............................................. 11

        2. THE OTHER CHANGES IN CLAIM 9 DO NOT SUBSTANTIVELY ALTER THE CLAIM SCOPE. .................................................. 14

    B. THE MOTION IS NOT TIMELY BECAUSE NEITHER THE ORIGINAL NOR THE REEXAMINED CLAIMS HAVE BEEN CONSTRUED BY ANY COURT. .............. 15

V. CONCLUSION .......................................................................................... 17

LAW OFFICES OF SEPEHR DAGHIGHIAN, P.C.
433 NORTH CAMDEN DRIVE, FOURTH FLOOR
BEVERLY HILLS, CALIFORNIA 90210

# TABLE OF AUTHORITIES

## CASES

*Cybor Corp. v. FAS Technologies*
   138 F.3d 1448 (Fed. Cir. 1998) ............................................................................. 13
*Duval Wiedmann, LLC v. Inforocket.com, Inc.*
   620 F.3d 496 (5th Cir. 2010) ............................................................................. 5, 16
*Fortel Corp. v. Phone-Mate, Inc.*
   825 F.2d 1577 (Fed. Cir. 1987) ...................................................................... 5, 9, 16
*Interactive Gift Express, Inc. v. CompuServe, Inc.*
   256 F.3d 1323 (Fed. Cir. 2001) ............................................................................. 13
*Kaufman Company, Inc. v. Lantech, Inc.*
   807 F.2d 970 (Fed. Cir. 1986) ................................................................................. 9
*Key Mfg. Group, Inc. v. Microdot, Inc.*
   925 F.2d 1444 (Fed. Cir. 1991) ............................................................................. 13
*Kim v. Earthgrains Co.*
   2010 WL 625220 (N.D.Ill. Feb 18, 2010) ............................................................. 15
*Laitram Corp. v NEC Corp. (Laitram I)*
   62 F.3d 1388 (Fed. Cir. 1995) ............................................................................ 9, 11
*Laitram Corp. v. NEC Corp. (Laitram II).*
   163 F.3d 1342, 1347 (Fed. Cir. 1998) ................................................................ 9, 11
*Markman v. Westview Instrs., Inc.*
   52 F.3d 967 (Fed. Cir. 1995) (*en banc*), *aff'd,* 517 U.S. 370 (1996) .............. 5, 12, 14, 15
*Seattle Box Co. v. Int'l Trading and Packaging Co.*
   731 F.2d 816 (Fed. Cir. 1984) ................................................................................. 8
*Slimfold Manufacturing v. Kinkead Ind.*
   626 F.Supp. 493 (N.D. Ga. 1985); *Aff'd,* 810 F.2d 1113, 1115 (Fed. Cir. 1987) ...... 9, 10, 11, 14
*Tennant v. Hako*
   878 F.2d 1413 (Fed. Cir. 1989) ........................................................................... 9, 10
*Vitornics Corp. v. Concentronic, Inc.*
   90 F.3d. 1576, 1582 (Fed. Cir. 1996) .................................................................... 13

## STATUTES

35 U.S.C. § 252 .......................................................................................... 5, 8, 9, 11
35 U.S.C. § 305 ...................................................................................................... 7, 8
35 U.S.C. § 307(b) ............................................................................................ 5, 8, 9

LAW OFFICES OF SEPEHR DAGHIGHIAN, P.C.
433 NORTH CAMDEN DRIVE, FOURTH FLOOR
BEVERLY HILLS, CALIFORNIA 90210

**MEMORANDUM OF POINTS & AUTHORITIES IN OPPOSITION TO
MOTION FOR PARTIAL SUMMARY JUDGMENT**

# MEMORANDUM OF POINTS & AUTHORITIES

Plaintiff, The Irrevocable Trust of Anthony J. Antonious (the "Plaintiff" or "Antonious") hereby submits its memorandum of points and authorities in opposition to Defendant Roger Cleveland Golf Company, Inc.'s ("Cleveland Golf") Motion for Partial Summary Judgment that Plaintiff is Precluded from Recovering Damages for Products Present in the United States Before January 5, 2010 (the "Motion.")

This is a patent infringement case based upon U.S. Patent No. 5,735,754 ("the '754 Patent"), which was issued on April 7, 1998. (**Exhibit "A").** The '754 Patent was issued for an Aerodynamic Metal Wood Golf Club Head to Anthony J. Antonious.  Mr. Antonious, who has been called "Golf's Edison" by Sports Illustrated Magazine, was a prolific inventor who, during his lifetime, received some three-hundred patents.  The '754 Patent was reexamined by the United States Patent and Trademark Office ("U.S.P.T.O.") and a reexamination certification issued on January 5, 2010. **(Exhibit "B").** This action was filed on August 9, 2010 for infringement of the '754 Patent by Cleveland Golf, an international manufacturer and seller of golf clubs.  In filing the instant motion, Cleveland Golf seeks an order that damages be computed only from after January 5, 2010, the date when the U.S.P.T.O. issued the Reexamination Certificate, pursuant to 35 U.S.C. §§ 252 and 307(b).  The issue set forth in the Motion is whether the '754 Patent's original and reexamined claims are substantively identical.

Plaintiff does not dispute the bulk of Cleveland Golf's Statement of Uncontroverted Facts. (*see: State of Genuine Issues in Opposition to Motion for Summary Judgment,* filed concurrently herewith).   The Motion should, nevertheless, be denied for a number of reasons: *first,* the reexamined claims are substantively identical to the original claims in the '754 Patent; and, *second,* the Motion is procedurally defective because it is being filed prior to parties having been able to litigate how the patent claims should be properly construed.  The '754

- 4 -

Patent's claims must be construed by the Court in a *Markman* hearing prior to the grant of a motion for summary judgment under 35 U.S.C. § 252 or 35 U.S.C. § 307(b). Nevertheless, from facts apparent and not in dispute, it is clearly evident that the reexamined claims are substantively identical to the original claims. Accordingly, the Motion must be denied.

## I.   INTRODUCTION

The '754 Patent's claims, as originally issued and as reexamined, are substantially identical. While the nuanced wording of the original patent claims and the reexamined claims differ, for the purposes of 35 U.S.C. § 252 and 35 U.S.C. § 307(b), the claims are identical because they would be constructed in an identical manner in a court's *Markman* hearing. *Markman v. Westview Instrs., Inc.,* 52 F.3d 967, 981 (Fed. Cir. 1995) (*en banc*), *aff'd,* 517 U.S. 370 (1996).

Cleveland Golf seeks summary judgment on an issue related to claim construction, prior to this Court (or any other court) having been given an opportunity to conduct a *Markman* hearing and prior to the parties having been given an opportunity to litigate the proper construction of the claims. Accordingly, the Motion is premature. Cleveland Golf's reliance upon *Duval Wiedmann, LLC v. Inforocket.com, Inc.,* 620 F.3d 496, 504 (5th Cir. 2010) for the premise that "without the need for extensive claim construction," a court may determine "whether or not reexamined claims are 'substantially identical' to original claims" is misplaced. (Motion, pp. 8, 10). *Duval Wiedmann* is a Firth Circuit case dealing with the breach of a patent license agreement and is not binding authority on this point. *Second,* the court in *Duval Wiedmann* cites to *Fortel Corp. v. Phone-Mate, Inc.,* 825 F.2d 1577, 1580-81 (Fed. Cir. 1987). In *Fortel,* the changes to claim language was so extensive that the court found the "amended claim [] substantively different from original claim 8 [] an inescapable conclusion upon a mere reading of those claims. *Fortel,* at 1580-1581. Here, the changes in the claims are subtle and nuanced and the parties should be given an opportunity to fully litigate the issues of

LAW OFFICES OF SEPEHR DAGHIGHIAN, P.C.
433 NORTH CAMDEN DRIVE, FOURTH FLOOR
BEVERLY HILLS, CALIFORNIA 90210

claim construction prior to a ruling on the date from which damages will be computed.

## II. STATEMENT OF FACTS

The '754 Patent is directed to an Aerodynamic Metal Wood Golf Club Head. **(Exhibit "A").** The '754 Patent was applied for December 4, 1996 by the late Anthony J. Antonious, a prolific inventor of golf equipment. (*See:* **Exhibits "C," "D," and "E."**). The '754 Patent application (No. 08/759,924) was filed with seven original claims. An office action issued on the application on June 9, 1997, wherein the Examiner recited, at Page 3, the prior art that he had reviewed and made of record in considering the application. **(Exhibit "F").** Therein, the Examiner made reference to Antonious' Design Patent D350,176 (1994) and MacDougall Patent No. 5,456,469 (1995). (**Exhibits G, H**). Therein, the Examiner concluded, "[t]his application is in condition for allowance except for the following formal matters: Note the objections to the claims, specifications, and drawings, as outlined above."

Following this Office Action, Mr. Antonious submitted an Amendment dated June 24, 1997. **(Exhibit "I").** Thereafter, the Examiner, having an issue with the Amendment, conducted a telephone interview with Mr. Antonious' patent counsel on July 9, 2997. **(Exhibit "J").** Subsequently, a Notice of Allowability issued on July 16, 1997 with an Examiner's Amendment that made additional changes to the claims. **(Exhibit "K").** The Examiner's Amendment amended original 4 (the predecessor to re-issued Claim 9), in order to insert the phrases "centerline passing through a longitudinal" and "in a heel-to-toe direction," which language then appeared in Claim 4 of the '754 Patent and the reexamined patent. The Examiner stated the following as his reasons for allowance:

> "Claims 1-8 are allowable over the prior art references of record because it would not have been obvious to modify any of the prior art devices of record to include a c-shaped slot having an open end facing

forwardly toward the ball strike and face."

A Request for Reexamination of the '754 Patent was filed in the U.S.P.T.O. on September 2, 2008 by third-party requested Michael J. Gallagher. **(Exhibit "L").** Mr. Gallagher is counsel to Adams Golf, Inc., the defendant in a patent infringement case related to this same patent in the United States District Court for the District of New Jersey. *Irrevocable Trust of Anthony J. Antonious v. Adams Golf, Inc., et al.* Case No.: 2:08-cv-03253 (the "Adams Golf Matter").[1]

On March 23, 2009, the U.S.P.T.O. issued an Office Action wherein the Examiner rejected many of the '754 Patent's claims as being anticipated by and/or obvious in view of many of the prior art references cited in the Request for Reexamination. **(Exhibit "M").** On April 22, 2009, in response to the Office Action, Antonious filed an amendment that clarified the patent claims. **(Exhibit "N").** No new matter was introduced to the patent or claims as such new matter would have been barred under 35 U.S.C. § 305. Subsequently, the U.S.P.T.O. issued a Notice of Intent to Issue Ex Parte Reexamination Certificate on October 9, 2009. **(Exhibit "O").** The Reexamination Certificate issued thereafter on January 5, 2010. **(Exhibit "B").**

### III.   STATEMENT OF LAW

The Motion concerns the retroactive applicability of the '754 Patent after reexamination and is governed by 35 U.S.C. §§ 252, 305 and 307, which read in pertinent part as follows:

---

[1] The defendants in the Adams Golf Matter sought a similar Motion for Partial Summary Judgment on the Date of Accrual of Any Damages on or about March 31, 2010. The court in the Adams Golf Matter denied the defendants leave to file a motion for partial summary judgment as being premature. The Adams Golf Court held that it "appear[ed] that the motion will require the Court to familiarize itself with the claims in the patent and reexamination; and as the Court will engage in such activity as part of the Markman process, the Markman briefing/hearing phase of this case [would be] the most efficient way for the Court to address this issue." *See:* **Exhibit "S"** – Order on Informal Application by United States Magistrate Judge Patty Shwartz dated April 5, 2010.

LAW OFFICES OF SEPEHR DAGHIGHIAN, P.C.
433 NORTH CAMDEN DRIVE, FOURTH FLOOR
BEVERLY HILLS, CALIFORNIA 90210

<u>35 U.S.C. § 252. Effect of Re-Issue</u>
The surrender of the original patent shall take effect upon the issue of the reissued patent, and every reissued patent shall have the same effect and operation in law, on the trial of actions for causes thereafter arising, as if the same had been originally granted in such amended form, but in so far as the claims of the original and reissued patents are substantially identical, such surrender shall not affect any action then pending nor abate any cause of action then existing, and the reissued patent, to the extent that its claims are substantially identical with the original patent, shall constitute a continuation thereof and have effect continuously from the date of the original patent.

<u>35 U.S.C. § 305. Conduct of Reexamination Proceedings</u>
In any reexamination proceeding under this chapter, the patent owner will be permitted to propose any amendment to his patent and a new claim or claims thereto, in order to distinguish the invention as claimed from the prior art cited under the provisions of section 301 of this title, or in response to a decision adverse to the patentability of a claim of a patent. No proposed amended or new claim enlarging the scope of a claim of the patent will be permitted in a reexamination proceeding under this chapter.

<u>35 U.S.C. § 307(b). Certificate of Patentability</u>
Any proposed amended or new claim determined to be patentable and incorporated into a patent following a reexamination proceeding will have the same effect as that specified in section 252 of this title for reissued patents on the right of any person who made, purchased, or used within the United States, or imported into the United States, anything patented by such proposed amended or new claim, or who made substantial preparation for the same, prior to issuance of a certificate under the provisions of subsection (a) of this section.

The courts have grappled with the phrase "substantially identical" as used in 35 U.S.C. § 252 and have determined that the phrase was intended by Congress to mean "substantive change" of the scope of the re-examined claim(s) relative to the scope of the corresponding original claim(s). *See: Seattle Box Co. v. Int'l Trading and Packaging Co.,* 731 F.2d 816, 827-28 (Fed. Cir. 1984); *Slimfold Manufacturing v. Kinkead Ind.,* 626 F.Supp. 493, 416-418 (N.D. Ga. 1985); *Aff'd,* 810 F.2d 1113,

- 8 -

1115 (Fed. Cir. 1987); *Tennant v. Hako,* 878 F.2d 1413, 1417 (Fed. Cir. 1989); *Laitram Corp. v NEC Corp. (Laitram I),* 62 F.3d 1388 (Fed. Cir. 1995); and *Laitram Corp. v. NEC Corp. (Laitram II).,* 163 F.3d 1342, 1347 (Fed. Cir. 1998).

Section 307(b) extends the vested rights provisions of the reissue statute (Section 252) to persons making, buying or using anything patented by the amended or new claims. For example, in *Kaufman Company, Inc. v. Lantech, Inc.*, 807 F. 2d 970, 978 (Fed. Cir. 1986), the Federal Circuit confirmed that claims amended during a reexamination do not lose their retroactive effect to the original patent issuance date if the amendments do not make a "substantive change" in the scope of the claims. It rejected the accused infringer's argument that, "because reexamination is granted only upon a showing of a 'substantial new question of patentability,' all amendments are deemed substantial."

In *Fortel Corp. v. Phone-Mate, Inc*., 825 F.2d 1577, 1580-1581 (Fed. Cir. 1987), the Federal Circuit noted that the doctrine of intervening rights, codified in the second paragraph of Section 252, has nothing to do with liability for acts occurring before the date of the reexamination certificate. It held that the district court properly granted summary judgment because all of the alleged infringing acts occurred before the issuance of the reexamination certificate and the only claim at issue had been substantively amended: "That [the independent claim in suit as amended in the reexamination] is substantively different from [the] original claim ... is an inescapable conclusion upon a mere reading of those claims" because the patentee admitted that the limitations inserted were "slightly broader" than the original limitations. *Fortel* at 1581.

In *Slimfold Manufacturing v. Kinkead Ind.,* 626 F.Supp. 493, 416-418 (N.D. Ga. 1985); *Aff'd,* 810 F.2d 1113, 1115 (Fed. Cir. 1987), a patent owner was ordered by a district court to file an application for reissue of the patent at issue in an infringement suit. In the reissue examination, the examiner held all four claims of the patent to be patentable over the references cited by the accused infringer but

MEMORANDUM OF POINTS & AUTHORITIES IN OPPOSITION TO
MOTION FOR PARTIAL SUMMARY JUDGMENT

rejected three of the claims for indefiniteness. The examiner's position was that there was no antecedent for the term "said collar" in the claim. After unsuccessfully arguing against the examiner's position, the patent owner amended the claim to add the limitation "a collar on said sleeve." After reissue of the patent with the amended claims, the accused infringer moved for summary judgment of noninfringement on the ground that the three amended claims in the reissue patent were not "identical" to those of the original patent. The district court denied the motion but certified the matter to the Federal Circuit. The Federal Circuit held that the amended claims were identical despite the amendment despite the changed language. It rejected the accused infringer's argument that the amendment to the claims was "necessarily substantive" because it was in response to the examiner's Section 112 rejection: "The courts have determined whether a change is substantive turns upon the facts of each case, without reliance on the motives or the correctness of the motives of either the patent examiner or the applicant." The court indicated that the amendment "did not enlarge the scope of the claims." *Slimfold* at 1117. The *Slimfold* court explains that it is not the motives or correctness of the examiner or application that are relevant; it is the actual worlds of the claims and their meaning. *Id.*

Similarly, in *Tennant v. Hako,* 878 F.2d 1413, 1417 (Fed. Cir. 1989) the court held that a reexamination amendment to the claim in suit did not make a substantive change but merely made the claim more definite. During reexamination of the patent in suit, the claim was amended to add the word "bottom" as follows: "hopper having a movable first bottom wall section, a main part that includes a second bottom wall section...." The court noted that "The [patent] specification makes numerous references to a movable bottom wall... Because a second cannot exist without a first, common sense dictates that the claimed first wall section is also a bottom wall section."

**MEMORANDUM OF POINTS & AUTHORITIES IN OPPOSITION TO
MOTION FOR PARTIAL SUMMARY JUDGMENT**

## IV. ARGUMENT

### A. THE REEXAMINED CLAIMS ARE SUBSTANTIVELY IDENTICAL TO THE ORIGINAL CLAIMS OF THE '754 PATENT.

The Federal Circuit has advised that the phrase "substantially identical" in 35 U.S.C. § 252 should be construed to mean similar in scope or construction as opposed to merely different in literal language. *Seattle Box Company* at 827-28. That is, the test of whether or not a reexamined claim is identical to its original counterpart is that of whether or not there has been a "substantive change" relative to the scope of the original claim. *Id.* In determining whether a substantive change has been made, one must first determine the scope of the original counterpart claim(s) and whether the scope of the claim(s) resultant of the reexamination is the same as that of the claims(s) of the reexamination proceeding to clarify claims of the original patent. *See: Slimfold Mfg.* at 1115.

It is, therefore, necessary to compare the scope of the claims of the respective original and reexamined patents in light of the particular facts which bear upon the scope of the corresponding original claim, using the tools of claim construction established by the Federal Circuit, namely, the prior art of record upon the grant of the original patent, the prosecution history, the specification, other claims and other pertinent information. *Laitram II* at 1347.

A comparison of the original Claim 4 and corresponding reexamined Claim 9 is attached hereto as **Exhibit "P."**

#### 1. THE "WITHIN AND SUBSTANTIALLY PARALLEL TO" LANGUAGE WOULD HAVE BEEN READ INTO CLAIM 4 BASED ON THE INTRINSIC EVIDENCE OF RECORD.

In following the exercise established by *Laitram I, Laitram II,* and other authority, one construes the claims of the '754 Patent in light of the Office Action of June 9, 1997. **Exhibit "E."** The Examiner, after raising some issues of

"antecedent basis for the claimed subject patter" proceeds to recite, at Page 3, the prior art which he had reviewed and made of record in considering the application. The Examiner makes reference to Antonious' Design Patent D350,176 (1994) and MacDougall Patent No. 5,456,469 (1995). (**Exhibits "G," "H"**). Both of these references show golf clubs having concave structures within the sole plates thereof, <u>each of which structures are not parallel with the bottom surface of the club head.</u> At Page 3 of the Office Action, the Examiner concluded, "[t]his application is in a condition for allowance except for the following formal matters: Note the objections to the claims, specifications and drawings, as outlined above.

Following the Office Action, Antonious submitted an Amendment dated June 24, 1997. Thereafter, the Examiner, having an issue with said Amendment, conducted a telephone interview with patent counsel for Antonious on July 9, 1997. Therein, the Examiner amended original Claim 4 (the predecessor to Claim 9) in order to insert the phrases "centerline passing through a longitudinal" and "in a heel-to-toe direction" which language then appeared in Claim 4 of the patent thereafter granted and carried through to reexamined Claim 9. The Examiner then recited his Statement of Reasons for Allowance:

> "Claims 1-8 are allowable over the prior art references of record because it would not have been obvious to modify any of the prior art devices of record to include a c-shaped slot having an open end facing forwardly toward the ball strike and face."

The "prior art devices" to which the Examiner refers are the prior art of record to which he referred in the Office Action date June 9, 1997.

Original Claim 4 is construed in light of this "intrinsic evidence" of record as it would have been construed if it were subject to a *Markman* hearing before the occurrence of the re-examination. Patent infringement analysis is a two-step process: first, the court must interpret the meaning (or construction) of the claims; and second, the fact finder must apply the correctly-interpreted claims to the

MEMORANDUM OF POINTS & AUTHORITIES IN OPPOSITION TO
MOTION FOR PARTIAL SUMMARY JUDGMENT

accused device. *Cybor Corp. v. FAS Technologies,* 138 F.3d 1448, 1554 (Fed. Cir. 1998); *Markman v. Westview Instruments, Inc.,* 52 F.3d 967, 976 (Fed. Cir. 1995) (en bank), *aff'd, Markman v. Westview Instruments,* 517 U.S. 370, 384 (1996). Of these two steps, the emphasis must be on proper claim interpretation at the outset: "Before analyzing a claim to determine whether infringement occurs, the court must properly interpret the claim. Improper claim construction can distort the entire infringement analysis." *Key Mfg. Group, Inc. v. Microdot, Inc.,* 925 F.2d 1444, 1448 (Fed. Cir. 1991). It is well settled that, in interpreting an asserted claim, the Court should first look to the intrinsic evidence of record, i.e., the patent itself, including the claims, the specification and, if in evidence, the prosecution history. Such intrinsic evidence is the most significance source of the legally operative meaning of disputed claim language. *Vitornics Corp. v. Concentronic, Inc.*, 90 F.3d. 1576, 1582 (Fed. Cir. 1996); *Interactive Gift Express, Inc. v. CompuServe, Inc.*, 256 F.3d 1323, 1329 (Fed. Cir. 2001).

Noteworthy amongst the referenced cited by the Examiner are two patents, which were also considered on reexamination, namely Antonious D350,176 and MacDougall No. 5,456,469. **(Exhibits "G" and "H").** Both of these references show golf clubs having concave structures within the sole plates thereof, <u>each of which structures are not parallel with the bottom surface of the club head.</u> In reviewing Figure 5 of the '754 Patent, the aerodynamic configuration being substantially parallel to the bottom surface is clearly apparent.

The very function of the '754 Patent could not be achieved if the slot within the aerodynamic configuration of the bottom surface were not substantially parallel to the bottom surface. That is, the patent recites at Col. 2, Lines 10-14:

> "Another object is to provide a golf club head which increases club head speed and lift by concentrating air flow near the rear surface of the club head where turbulence occurs to reduce drag on the club head as it is swung."

LAW OFFICES OF SEPEHR DAGHIGHIAN, P.C.
433 NORTH CAMDEN DRIVE, FOURTH FLOOR
BEVERLY HILLS, CALIFORNIA 90210

As such, air flow could not be effectively concentrated if the channel within the aerodynamic configuration were not substantially parallel to the bottom surface of the club.

The Examiner, at the time of reexamination recited his reasons for allowance of Claim 9 as:

> "Claim 9 is patentable because the cited prior art patents and printed publications fail to teach a golf club head, as defined in this claim, including a C-shaped slot within the bottom surface of the club head, the slot being substantially parallel to the bottom surface and offset from a centerline passing transversely through a heel-to-toe axis of the club head, with a portion of the slot passing through the centerline."

Antonious' D350,176 Patent, MacDougall, and Milligan, and the specification of the '754 patent clearly shows that a C-shaped slot or channel is not substantially parallel with the bottom surface of the club. As is evident from the intrinsic evidence, the scope of the original Claim 4 (the predecessor of re-issue Claim 9) would have been construed for *Markman* purposes to include a C-shaped slot or channel the plane of which was substantially parallel with the bottom surface of the club head.

### 2. THE OTHER CHANGES IN CLAIM 9 DO NOT SUBSTANTIVELY ALTER THE CLAIM SCOPE.

As illustrated in **Exhibit "P,"** the remaining changes in claim scope consist of the following: said slot ~~being~~ offset from, <u>and a portion thereof passing through,</u> a <u>virtual</u> ~~center of said bottom surface~~ centerline passing <u>transversely</u> through a <u>heel-to-toe axis of said club head</u>. ~~longitudinal in a heel-to-toe direction~~. These changes do not change the substance or breadth of the claim scope. In both original Claim 4 and reexamined Claim 5, the slot is offset from the center of the club head, passes through a virtual centerline of the club head, and would be align transversely relative to the heel to toe axis of the club head. As such, these remaining changes

1  do nothing to alter the claim scope and merely clarify the claim terms.

2  In *Slimfold Manufacturing v. Kinkead Ind.,* 626 F.Supp. 493, 416-418 (N.D. Ga. 1985); *Aff'd,* 810 F.2d 1113, 1117 (Fed. Cir. 1987), the Federal Circuit advised that such changes in claim language do not necessarily alter claim scope. *Slimfold* at 1117. In reviewing Figures 9 and 10 of the '754 Patent, the basis for clarification for the centerline terms is apparent. (See, also: **Exhibit "N," Page 124:** Paragraph 28 of the Declaration of Gillig filed as part of the response to the Office Action in reexamination.) Here, like *Slimfold*, the language of the claims is changed; but the scope of what is claimed is not changed.

As such, new Claim 9 clarified and confirmed the actual scope of original Claim 4 as it would have been construed by a court reviewing the claim.

### B. THE MOTION IS NOT TIMELY BECAUSE NEITHER THE ORIGINAL NOR THE REEXAMINED CLAIMS HAVE BEEN CONSTRUED BY ANY COURT.

While a motion for summary judgment may be brought in order to limit the duration for which damages are computed following reexamination, bringing such a motion at this stage of litigation unfairly prejudices the parties. As is demonstrated by the plaintiff and defendant's claim construction charts from the Adams Golf Matter (**Exhibits "Q"** and **"R,"** respectively), the construction of the '754 Patent widely differs among the parties. In the Adams Golf Matter, the New Jersey District court correctly postponed resolution of the date of infringement matter until after the *Markman* hearing. **(Exhibit "M").** Here, the Defendant seeks to have its motion for partial summary judgment heard on a matter that requires claim construction, before a *Markman* hearing has occurred on the '754 Patent in any court. As such, the Motion is premature.

This matter was filed on August 9, 2010 and discovery has only recently begun. The Court issued its Scheduling Order on December 3, 2010, which set a discovery cutoff of April 20, 2012 and trial for July 31, 2012. (**Exhibit "T").** The

- 15 -

LAW OFFICES OF SEPEHR DAGHIGHIAN, P.C.
433 NORTH CAMDEN DRIVE, FOURTH FLOOR
BEVERLY HILLS, CALIFORNIA 90210

Motion cites *Kim v. Earthgrains Co.,* 2010 WL 625220 (N.D.Ill. Feb 18, 2010) for the premise that "summary judgment has been granted in this very context." Defendant is correct. In *Kim,* however, the parties and the court had received the benefit of having exchanged *Markman* briefs and having had a ruling on claim construction by the court, prior to such a motion being heard. (See: **Exhibit "U"** – docket for *Kim v. Earthgrains Co.,* Docket Entry No. 70 on 1/10/2005: "The Court has construed the disputed terms in claims 5 through 8 and 10 of the patent…").

Here, defendant seeks partial summary judgment on a matter intimately related to claim construction even though the claims have not yet been construed by *any* court.[2] The Defendant has not cited any authority that would allow the Court to make such a ruling at this early stage of the proceedings.

Cleveland Golf's reliance upon *Duval Wiedmann, LLC v. Inforocket.com, Inc.,* 620 F.3d 496, 504 (5th Cir. 2010) for the premise that "without the need for extensive claim construction," a court may determine "whether or not reexamined claims are 'substantially identical' to original claims" is misplaced. (Motion, pp. 8, 10). *Duval Wiedmann* is a Firth Circuit case dealing with the breach of a patent license agreement and is not binding authority on this point. *Duval Wiedmann* cites to *Fortel Corp. v. Phone-Mate, Inc.,* 825 F.2d 1577, 1580-81 (Fed. Cir. 1987). In *Fortel*, the changes to claim language was so extensive that the court found the "amended claim [] substantively different from original claim 8 [] an inescapable conclusion upon a mere reading of those claims. *Fortel,* at 1580-1581. (See: the extensive changes to the claim language reproduced in the *Fortel* decision).

Here, the changes in the claims are subtle and nuanced and the parties should be given an opportunity to fully litigate the issues of claim construction prior to a ruling on the date from which damages will be computed. These changes cannot be

---

[2] In the Adams Golf Matter, although the parties have exchanged opening claim construction briefs, a *Markman* ruling has not yet been issued by the New Jersey District Court.

- 16 -

compared to the extensive changes considered by the *Fortel* court.

At a minimum, even if the claims are not construed by this Court, the claims should be construed by the New Jersey District Court prior to a ruling on this matter. The New Jersey District Court has received opening *Markman* briefs on claim construction and will receive rely *Markman* briefs on claim construction on December 23, 2010. Accordingly, Plaintiff anticipates this matter to be resolved much sooner in the District of New Jersey than it will in the Central District of California. (See: **Exhibit "V"** – the latest scheduling order from the U.S. District Court, District of New Jersey in the Adams Golf Matter).

## V.     CONCLUSION

For the reasons set forth herein, the Motion should be denied. Alternatively, the Court should deny the Motion without prejudice for being premature and instruct the Plaintiff to re-file after a *Markman* ruling has been made on the claims.

Dated: December 20, 2010

Respectfully submitted,
**LAW OFFICES OF SEPEHR DAGHIGHIAN, P.C.**

/s/Sepehr Daghighian
SEPEHR DAGHIGHIAN, ESQ.
Attorney for Plaintiff: The Irrevocable Trust of Anthony J. Antonious
E-mail: sepehr@daghighian.com