# EXHIBIT "A"

# United States Patent [19]

**Antonious**

[11] **Patent Number:** 5,735,754

[45] **Date of Patent:** Apr. 7, 1998

[54] **AERODYNAMIC METAL WOOD GOLF CLUB HEAD**

[76] Inventor: **Anthony J. Antonious**, 7738 Calle Facil, Sarasota, Fla. 34238

[21] Appl. No.: **759,924**

[22] Filed: **Dec. 4, 1996**

[51] Int. Cl.⁶ ............................................... **A63B 53/04**
[52] U.S. Cl. ...................................... **473/328**; 473/345
[58] Field of Search .......................... D21/214, 215, D21/216, 217, 218, 219, 220; 473/327, 328, 324, 228, 286, 345, 346

[56] **References Cited**

**U.S. PATENT DOCUMENTS**

| | | | |
|---|---|---|---|
| D. 350,176 | 8/1994 | Antonious | D21/214 |
| D. 363,749 | 10/1995 | Kenmi | D21/214 |
| D. 364,204 | 11/1995 | Lin | D21/214 |
| 2,041,676 | 5/1936 | Gallagher | 473/328 |
| 2,550,846 | 5/1951 | Milligan | 473/327 |
| 3,841,639 | 10/1974 | Werner | 473/286 |
| 5,271,622 | 12/1993 | Rogerson | 473/327 |
| 5,314,185 | 5/1994 | Gorman | 473/327 |
| 5,456,469 | 10/1995 | MacDougall | 473/328 |
| 5,467,988 | 11/1995 | Henwood | 473/328 |
| 5,524,890 | 6/1996 | Kim | 473/327 |

*Primary Examiner*—Sebastiano Passaniti
*Attorney, Agent, or Firm*—Aquilino & Welsh

[57] **ABSTRACT**

A metal wood type golf club head having a c-shaped aerodynamic configuration formed in the bottom surface adjacent a rear surface and having an open end extending forwardly toward the ball striking face in combination with a skid surface.

**8 Claims, 3 Drawing Sheets**





FIG. 1

FIG. 2

FIG. 3



FIG. 4

FIG. 5

FIG. 6

FIG. 7

Exhibit A
Page 21



*FIG. 8*

*FIG. 9*

*FIG. 10*

1

# AERODYNAMIC METAL WOOD GOLF CLUB HEAD

## BACKGROUND OF THE INVENTION

The present invention relates to golf club heads and in particular to a metal wood type golf club head having an improved aerodynamic surface on the bottom rear of the sole.

Wood and metal wood type golf club heads are used for hitting a golf ball a longer distance and are usually used for the first shot of a given golf hole from a tee position. Fairway clubs of the same type are also used "through the green" on a golf hole to obtain maximum distance in the direction of or onto a putting surface. The distance the ball travels is determined by the club head speed at the moment of impact and the weight of the club head in accordance with well known laws of physics. Typical wood and metalwood golf club of this type have aerodynamic surfaces, but conventional shapes create substantial air turbulence, which, in turn, causes adverse erratic movement and aerodynamic drag that reduces the club head speed generated for a given force developed by a golfer for a particular golf swing.

Over the years, club heads have been developed with aerodynamic shapes to increase club head speed by reducing the aerodynamic drag of the club head as it is swung. Prior art examples of these type of golf club heads include U.S. Pat. Nos. D275,412 to Simmons, 2,550,840 to Milligan, 3,997,170 to Goldberg, 4,065,133 to Gordos, 4,900,029 to Sinclair, 5,203,565 to Murray et al, and 5,467,989 to Good et al. as well as my own US Pat. Nos. 4,828,265, 4,930,783, 5,004,241, 5,193,810, 5,221,086 and 5,511,786 among others.

## SUMMARY OF THE INVENTION

The present invention represents an improvement over known prior art wood type golf club heads by providing an aerodynamic surface on the bottom sole adjacent the rear edge of the club head, which produces greater club head speed when the club head is swung. This aerodynamic surface reduces undesirable air turbulence which causes aerodynamic drag and creates a smoother, laminar air flow around the club head. A golf club using this improvement permits a golfer to hit longer and straighter golf shots for a given applied swing force. The aerodynamic structure also creates increased aerodynamic stability of the club head resulting in increased control of the club head position during the swing, especially at impact, thereby producing more consistent golf shots.

The golf club head of the present invention includes a c-shaped aerodynamic slot formed on the bottom sole surface of the club head. In a preferred embodiment, a metal wood type golf club head, having a smooth upper surface and sloped side walls, includes a c-shaped aerodynamic slot located adjacent the rear surface on the bottom surface or sole which generally follows the contours of the peripheral edges of the club head between the sole and the side walls. The open end of the c-shaped slot faces forwardly toward the front ball striking face of the club. The club head may also include a raised sole plate on the bottom surface having a spacer wall which also provides an aerodynamic effect and creates a skid structure enabling the club to skim across the ground surface when the club head is swung to hit a golf ball.

In another preferred embodiment, a venturi slot is provided between the c-shaped slot and the rear surface of the club head to further direct air flow adjacent the rear surface of the club head where most turbulence occurs.

2

The aerodynamic surfaces of the club head create aerodynamic effects which minimize turbulence and increase laminar air flow to reduce drag resulting in a more stable club head with higher speed for a given application of swing force by the golfer.

A primary object of the present invention is to provide a golf club head having an improved aerodynamic surface on the bottom sole adjacent the rear of the club head to substantially reduce drag and improve swing stability.

Another object is to provide a golf club head which increases club head speed and lift by concentrating air flow near the rear surface of the club head where turbulence occurs to reduce drag on the club head as it is swung.

Other objects and advantages of the present invention will become apparent in the following description of the preferred embodiments taken into conjunction with the accompanying drawings which are incorporated in and constitute a part of the specification and together with the description, serve to explain the principles of the present invention.

## BRIEF DESCRIPTION OF THE DRAWINGS

FIG. 1 is a bottom view of an aerodynamic golf club head in accordance with the present invention.

FIG. 2 is a bottom perspective view of the golf club head of FIG. 1.

FIG. 3 is a rear elevational view thereof.

FIG. 4 is an end elevational view thereof.

FIG. 5 is a sectional view taken along the lines 5—5 of FIG. 3.

FIG. 6 is a bottom view of a second embodiment of an aerodynamic golf club in accordance with the present invention.

FIG. 7 is a bottom perspective view of the golf club head of FIG. 6.

FIG. 8 is rear elevational view thereof.

FIG. 9 is a bottom view of a third embodiment of the present invention.

FIG. 10 is a bottom view of a forth embodiment of the present invention.

## DESCRIPTION OF THE PREFERRED EMBODIMENTS

The detailed embodiments of the present invention are disclosed herein. It should be understood, however, that the disclosed embodiments are merely exemplary of the invention, which may be embodied in various forms. Therefore, the details disclosed herein are not to be interpreted as limited, but merely as the basis for the claims and as a basis for teaching one skilled in the art how to make and/or use the invention.

FIGS. 1–5 show a first embodiment of a golf club head 100 in accordance with the present invention. The golf club head 100 is conventional in shape, except for the aerodynamic surfaces and includes a hosel 112, heel 114, toe 116, upper surface 118, rear surface 120, ball striking face 122 and bottom surface 124. The bottom sole 124 includes a skid member 126 which extends outwardly from the bottom sole 124 and is separated therefrom by a spacer wall 128. A c-shaped aerodynamic slot 130 is formed on the bottom surface 124 and faces forwardly with open ends 132 of the c-shaped slot 130 being toward the ball striking face 122. Preferably, the c-shaped slot 130 extends from a point adjacent the interface of the bottom surface 124 and rear surface 120 across approximately two thirds of the distance to the ball striking face 122.

5,735,754

| 3 | 4 |

The aerodynamic slot 130 catches air just behind the ball striking face 122 and directs it toward the rear surface 120 within the curved walls of the c-shaped slot 130 of the club head 100. The air is expelled rearwardly out of the slot to minimize turbulence and reduce drag as the club head 100 is swung. At the same time, the skid 126 and spacer walls 128 also serve to direct the air flow rearwardly to increase laminar flow in that area of the club head 100.

FIGS. 6, 7, and 8 show a second embodiment of a golf club head 200 in accordance with the present invention. This club head 200 is similar to that described to the club head hereinabove and includes a hosel 212, heel 214, toe 216, upper surface 218, rear surface 220, upper toe 230, side walls 222, a ball striking face 224, bottom surface 225, a skid 226 and a spacer wall 228 separating the skid 226 from the bottom surface 225. A c-shaped aerodynamic slot 230 is formed on the bottom surface 225 adjacent the rear surface 220. The open end of the slot 230 faces forwardly toward the ball striking face 224.

The slot 230 is formed with a venturi opening 232 which extends rearwardly and upwardly into the rear surface 220 creating an additional air channel to direct the air flow.

FIG. 9 shows another embodiment of the present invention. A golf club head 300 is similar to the club head described in FIGS. 1–5 and includes a bottom surface 325, a side surface 327 and an aerodynamic slot 330 which is offset in the direction of the toe 316 of the club head 300.

FIG. 10 shows another embodiment similar to FIG. 9. A golf club head 400 and includes a bottom surface 425, a side surface 427 and an aerodynamic slot 430 which is offset in the direction of the toe 414 of the club head 400.

It will be appreciated that the offset aerodynamic slots of FIGS. 9 and 10 allow greater club head speed at the heel or toe selectively in order to more effectively accommodate the swing characteristics of a particular golfer, whether left-handed or right-handed.

While various preferred embodiments have been shown and described, it will be understood that there is no intent to limit the invention by such disclosure, but rather, is intended to cover all modifications and alternate constructions falling within the spirit and scope of the invention as defined in the appended claims.

I claim:

1. An aerodynamic golf club head including a club head body having a heel, toe, rear surface, ball striking face, upper surface and bottom surface, wherein the improvement comprises:

an aerodynamic configuration on said bottom surface adjacent said rear surface in the form of a c-shaped slot having an open end facing forwardly toward said ball striking face; said aerodynamic configuration further including a skid surface formed on and raised from said bottom surface; said skid surface having a wall separating said skid surface from said bottom surface.

2. The aerodynamic golf club head of claim 1 further including a venturi opening in fluid communication with and extending rearwardly from said c-shaped aerodynamic slot toward said rear surface.

3. The aerodynamic golf club head of claim 1 wherein said slot is further defined by being offset from said heel of said club head.

4. An aerodynamic golf club head including a club head body having a heel, toe, rear surface, ball striking face, upper surface and bottom surface, wherein the improvement comprises:

an aerodynamic configuration on said bottom surface adjacent said rear surface in the form of a c-shaped slot having an open end facing forwardly toward said ball striking face; said slot being offset from a center of said bottom surface centerline passing through a longitudinal in a heel-to-toe direction.

5. The aerodynamic golf club head of claim 4 wherein said slot is offset toward said heel.

6. The aerodynamic golf club head of claim 3 wherein said slot is offset toward said toe.

7. The aerodynamic golf club of claim 1 wherein said slot is further defined by being offset from said toe of said club head.

8. An aerodynamic golf club head including a club head body having a heel, toe, rear surface, ball striking face, upper surface and bottom surface, wherein the improvement comprises:

an aerodynamic configuration on said bottom surface adjacent said rear surface in the form of a c-shaped slot having an open end facing forwardly toward said ball striking face; said aerodynamic configuration further including a venturi opening in fluid communication with and extending rearwardly from said c-shaped aerodynamic slot toward said rear surface.

*   *   *   *   *

UNITED STATES PATENT AND TRADEMARK OFFICE

# CERTIFICATE OF CORRECTION

PATENT NO.        : 5,735,754                                    Page 1 of  1
APPLICATION NO. : 08/759924
DATED            : April 7, 1998
INVENTOR(S)      : Anthony J. Antonious

It is certified that error appears in the above-identified patent and that said Letters Patent is hereby corrected as shown below:

In Col. 4, Line 28, Claim 6: Change "3" to --4--

Signed and Sealed this

First Day of July, 2008

JON W. DUDAS
*Director of the United States Patent and Trademark Office*

# EXHIBIT "B"

US005735754C1

## (12) EX PARTE REEXAMINATION CERTIFICATE (7290th)

# United States Patent
### Antonious

**(10) Number:** US 5,735,754 C1

**(45) Certificate Issued:** Jan. 5, 2010

**(54) AERODYNAMIC METAL WOOD GOLF CLUB HEAD**

**(75) Inventor:** Anthony J. Antonious. Sarasota. FL (US)

**(73) Assignee:** Anthony J Antonious Irrevocable Trust. Wanaque. NJ (US)

**Reexamination Request:**
No. 90/010.266. Sep. 2. 2008

**Reexamination Certificate for:**

| | |
|---|---|
| Patent No.: | 5,735,754 |
| Issued: | Apr. 7, 1998 |
| Appl. No.: | 08/759,924 |
| Filed: | Dec. 4, 1996 |

Certificate of Correction issued Jul. 1, 2008.

**(51) Int. Cl.**
*A63B 53/04* (2006.01)

**(52) U.S. Cl.** ...................................... 473/328; 473/345

**(58) Field of Classification Search** .......................... None
See application file for complete search history.

**(56)** References Cited

### U.S. PATENT DOCUMENTS

| | | | | |
|---|---|---|---|---|
| D350,176 S | * | 8/1994 | Antonious | .............. D21/752 |
| 5.456.469 A | * | 10/1995 | MacDougall | .............. 473/328 |
| D363.961 S | | 11/1995 | Krzynowek et al. | |
| D372.063 S | | 7/1996 | Hueber | |
| 6.257.991 B1 | | 7/2001 | Ortiz | |

### OTHER PUBLICATIONS

Golf Magazine. Mar. 1994. p. 66. Ben Hogan H40 irons. H40 Woods.

Golf Digest. Mar. 1994. p. 11. Advertisement for Ben Hogan H40s.

Golf Digest. Apr. 1994. p. 93. Advertisement for Ben Hogan H40 cast clubs.

Golf Magazine. May 1994. Advertisement for Ben Hogan H40 cast clubs.

Golf Digest. May 1994. p. 175. Advertisement for Ben Hogan H40 cost clubs.

Golf Magazine. Jun. 1994. p. 145. Advertisement for Ben Hogan H40 cast clubs.

Golf Digest. Jun. 1994. p. 185. Advertisement for Ben Hogan H40 cast clubs.

Nicklaus Golf Equipment. Promotional Materials Issued Prior to the 1996 PGA Merchandise Show held in Orlando. FL on Jan. 26–29. 1996.

Petersen's Golfing. 1996. Test Drive: The Nicklaus air Bear Driver.

Golf Digest. Apr. 1996. 196 Show Products, A titanium sampler . . . Nicklaus Golf's Air Bear.

Golf Magazine. Mar. 1996. Advertisement for Nicklaus Air Bear.

Golf Magazine. Apr. 1996. Advertisement for Nicklaus Air Bear.

Golf Magazine. May 1996. Advertisement for Nicklaus golf products.

Golf Magazine. Sep. 1996. p. 70. Sizing It Up by Rob Sauerhaft.

* cited by examiner

*Primary Examiner*—Peter C. English

**(57)** **ABSTRACT**

A metal wood type golf club head having a c-shaped aerodynamic configuration formed in the bottom surface adjacent a rear surface and having an open end extending forwardly toward the ball striking face in combination with a skid surface.



US 5,735,754 C1

**1**

# EX PARTE
# REEXAMINATION CERTIFICATE
# ISSUED UNDER 35 U.S.C. 307

### THE PATENT IS HEREBY AMENDED AS INDICATED BELOW.

Matter enclosed in heavy brackets [ ] appeared in the patent, but has been deleted and is no longer a part of the patent; matter printed in italics indicates additions made to the patent.

### ONLY THOSE PARAGRAPHS OF THE SPECIFICATION AFFECTED BY AMENDMENT ARE PRINTED HEREIN.

Column 2, lines 53–67:

FIGS. 1–5 show a first embodiment of a golf club head 100 in accordance with the present invention. The golf club head 100 is conventional in shape, except for the aerodynamic surfaces and includes a hosel 112, heel 114, toe 116, upper surface 118, rear surface 120, ball striking face 122 and bottom surface 124. The bottom sole 124 includes a skid member 126 which extends outwardly from the bottom sole 124 and is separated therefrom by a spacer wall 128. A c-shaped aerodynamic slot 130 is formed on, *and substantially parallel with*, the bottom surface 124 and faces forwardly with open ends 132 of the c-shaped slot 130 being toward the ball striking face 122. *As shown in FIG. 1, c-shaped aerodynamic slot 130 transects a virtual centerline that passes through ball striking face 122 and rear surface 120 of the club head.* Preferably, the c-shaped slot 130 extends from a point adjacent the interface of the bottom surface 124 and rear surface 120 across approximately two thirds of the distance to the ball striking face 122.

Column 3, lines 22–26:

FIG. 9 shows another embodiment of the present invention. A golf club head 300 is similar to the club head described in FIGS. 1–5 and includes a bottom surface 325, a side surface 327 and an aerodynamic slot 330 *on said bottom surface* which is *substantially parallel with the bottom surface, and offset from a virtual centerline that passes transversely through a heel-to-toe axis of the club head,* in the direction of the toe 316 of the club head 300, *with a portion of slot 330 passing through the virtual centerline.*

Column 3, lines 27–30:

FIG. 10 shows another embodiment similar to FIG. 9. A golf club head 400 [and] includes a bottom surface 425, a side surface 427 and an aerodynamic slot 430 *on said bottom surface* which is offset *from a virtual centerline that passes transversely through a heel-to-toe axis of the club head,* in the direction of the heel 414 of the club head 400, *with a portion of slot 430 passing through the virtual centerline.*

**2**

AS A RESULT OF REEXAMINATION, IT HAS BEEN DETERMINED THAT:

The patentability of claim **8** is confirmed.

Claim **4** is cancelled.

Claims **1**, **3**, **5**, **6** and **7** are determined to be patentable as amended.

Claim **2** dependent on an amended claim, is determined to be patentable.

New claim **9** is added and determined to be patentable.

1. An aerodynamic golf club head including a club head body having a heel, toe, rear surface, ball striking face, upper surface and bottom surface, wherein the improvement comprises:

an aerodynamic configuration on, *and substantially parallel with*, said bottom surface adjacent said rear surface in the form of a c-shaped slot having an open end facing forwardly toward said ball striking face; said aerodynamic configuration further including a skid surface formed on and raised from said bottom surface; said skid surface having a wall separating said skid surface from said bottom surface, *said c-shaped slot transecting a virtual centerline passing through said ball striking face and said rear surface of said club head.*

3. The aerodynamic golf club head of claim 1 wherein said slot is [further defined by being] offset from said heel of said club head.

5. The aerodynamic golf club head of claim [4] *9* wherein said slot is offset toward said heel.

6. The aerodynamic golf club head of claim [4] *9* wherein said slot is offset toward said toe.

7. The aerodynamic golf club of claim 1 wherein said slot is [further defined by being] offset from said toe of said club head.

*9. An aerodynamic golf club head including a club head body having a heel, toe, rear surface, ball striking face, upper surface and bottom surface, in which the improvement comprises:*

*an aerodynamic configuration within, and substantially parallel to, said bottom surface, adjacent said rear surface, in the form of a c-shaped slot having an open end facing forwardly toward said ball striking face, said slot offset from, and a portion thereof passing through, a virtual centerline passing transversely through a heel-to-toe axis of said club head.*

* * * * *

# EXHIBIT "C"

Exhibit C
Page 29

# Golf

www.islandpacket.com

## A weekly look at golf, appearing Thursdays in The Island Packet

# Patent passion

## Love or loathe him, Tony Antonious has a gift for golf inventions



James Achenbach
Golfweek

**A**nthony J. "Tony" Antonious woke up one day and saw the future of golf. Using Velcro on the closure at the back of golf gloves, Antonious, 85, received a U.S. patent and made tens of millions of dollars. He also made enemies. The dollars outnumber the enemies, although his critics aren't shy.

Says Joe Phillips, a 54-year veteran of Wilson Sporting Goods: "He was not well-liked. I can't believe that guy is still around. I can't believe somebody hasn't shot him by now."

Phillips does not mean this literally. He is giving voice to a smoldering rage against what some see as the inequity of the U.S. patent system.

Antonious, an inventor and holder of more than 300 U.S. patents, most of them relating to golf, sees it differently: His life, he will tell anybody, is the American dream come true.

"I started with nothing," he says. "My parents came over from Greece and couldn't even speak the language. Nobody gave me anything; I earned it. This wonderful country provided me with the opportunity to make something of myself, and I had a burning desire to be successful."

The way some of his critics describe him, Antonious is a bulldog who wraps himself in the American flag. Certainly, no other individual has challenged so many major golf companies in court — and won.

Antonious profited enormously from the simplest of golf inventions. He began selling the deep-vent, quick-closure golf glove in late 1969. After he displayed it at the 1970 PGA Merchandise Show in Miami, glovemakers around the world followed one of two tactics: They either licensed the concept from Antonious, or they tried to copy it without a license.

He dragged the copycats into court, suing 14 golf companies, and he made, in his words, "many, many, many millions." Simple math reveals that, after paying his patent attorneys "many millions," he was left with many, many millions.

Antonious, who played his first round of golf when he was 48, lives on a course in Sarasota, Fla., where he remains an active inventor. His glove patent expired in 1988, but he tries not to dwell on past glories. (All royalties stop when patents expire.)

His latest brainstorm, vertical grooves instead of horizontal grooves in the face of a metalwood, can be seen in the new Tour Trajectory driver from Merit Golf.

Patent attorney Nick Aquilino, semi-retired and splitting his time between his office in Virginia and a home in Florida, has known Antonious for almost 30 years.

"I've done work for Tony since the 1970s," says Aquilino, at one time a scratch golfer. "He has a drive unlike any other inventor I have ever encountered. He has several hundred golf patents, some of them fairly significant, and he continues to come up with new and innovative ideas."

Wilson settled with him for several million dollars



Preston Mack/Golfweek

> "This wonderful country provided me with the opportunity to make something of myself, and I had a burning desire to be successful."
>
> —Tony Antonious

Zoid iron, discovered that the iron's weight distribution scheme, or a likeness of it, had been patented by Antonious. Eventually, Mizuno shelled out a few million to acquire the patent.

"Sure, I remember when we settled with him," says Phillips, the Wilson veteran who serves as a consultant to the company. "You want to know my opinion? He just patented everything in sight, whether he invented the product or not. He let everybody use Velcro, and then after they were successful, he said: 'I own that patent, you owe me royalties.' He was very intelligent, and he knew how to play that game."

Barney Adams, founder and CEO of Adams Golf, wonders, "How can anybody patent weight distribution in an iron? We (golf club manufacturers) have been distributing and redistributing weight forever and ever. I

born. He may be viewed as a money-grubbing appendage of the U.S. patent system, but the way he sees it, his life is all about God, country and the rights of the ordinary citizen. Recalling his many appearances in front of juries, he says, "These are my ideas, my inventions. When I go to court, I have to say what's in my heart. Within five minutes, the jurors know who is wearing the white hat.

"Some of them (golf companies) are just spitting in the face of the USA. They won't honor a patent unless you force them to do it. I can't stand that. You act like that, and I will come at you like a banshee."

The accumulation of money has not stopped Antonious from pursuing his goals of acquiring more patents and advising more people, particularly senior citizens. Even a bout with prostate cancer has not slowed him.

Ed Abrain, who was president of three golf companies (Wilson, PowerBilt and Aldila) and who recently retired from the Acushnet Co., says Antonious is genuine.

Abrain, who was the Titleist product manager for clubs and accessories in the early 1970s, was one of the few people in golf who urged his company to pay royalties to Antonious for the Velcro glove.

"I've got to be honest," Abrain says. "Everybody in the industry I talked to, with the exception of (FootJoy co-founder) Dick Tarlow, felt that this was a crazy guy who was making claims about a utility patent that weren't going to hold up. Everybody thought you were nuts if you signed any agreement with him.

"And Dick said to me, 'Look, do you want to be in the glove business?' Dick had a strange wisdom. He said, 'If you can't make money in the glove business paying that percentage (to Antonious), then you're not going to be in the glove business anyway. It's not the percentage that is going to make or break you.' He was right, and I went back to Titleist and convinced them that this guy wasn't the cuckoo clock everybody said he was. In the long run, Titleist probably paid a lower percentage and certainly avoided the expense of any court battle with Tony."

The official royalty percentage was 5 percent of the wholesale selling price, although Antonious and his attorneys offered some special deals. FootJoy's first payments were 5 cents per glove, and Antonious said he immediately made about $500,000 per year from FootJoy. "This was important to me," Antonious said, "because I wanted to give a substantial amount of money to my church."

He can be a captivating man. He will speak for hours about his inventions, including a new glove he is perfecting.

"You won't believe how good it is," Antonious says proudly.

Patents are the American way. Increasingly, so are patent lawsuits.

"It's a way of life in golf," says Barney Adams. "It's simply the way the game is played."

**EXHIBIT "D"**



PRINT THIS

Powered by  Clickability

Click to Print

SAVE THIS | EMAIL THIS | Close



December 16, 2002

# Creative Type

Even at age 85, prolific inventor Tony Antonious never stops searching for his next bright idea

Seth Davis

Tony Antonious, 85, doesn't have senior moments, he has eureka moments—magical visions that this self-proclaimed oldest living inventor of golf products says are so powerful that they must be the stuff of divine provenance. "An idea can simmer in your mind," says Antonious. "You know it's there, but you haven't quite put it all together. Then one day everything falls into line and—boom!—it hits you, because God sees you're ready for it."

As Antonious speaks, he gazes across the practice tee at the TPC at Prestancia, in Sarasota, Fla. A few feet away George Slupski, a thick-necked 37-year-old and a 12-time national long-drive finalist, is whacking golf balls with one of Antonious's recent creations, the Awesome Steel Giant. The Steel Giant looks nothing like other drivers. The clubhead is wider and longer. A ring of steel circles the back of the head from toe to heel. The grooves on the face are vertical, not horizontal. The sole is U-shaped and concave. "It works like the Concorde," says Antonious, rubbing the sole of the club. "Everything on the market looks alike—they're all big and bulky. It's better to be trim and swift."

Antonious's name does not appear on the club, but something far more important does: a host of numbers, as well as PATS. PEND. (for patents pending). Antonious is believed to have accrued more golf-related patents—more than 250 and counting—than anyone in U.S. history. And if anyone, anywhere, ever builds a driver with vertical grooves, a ring of steel around the back or a concave U-shaped sole, without a licensing agreement with Antonious, they will find themselves in court faster than they can say Eureka!

Antonious has made a fortune—he will not say how many millions he is worth—by issuing licenses on his patents and trademarks and pursuing the companies that he believes have infringed on them. "I'll go against a thousand attorneys," he says. "Nobody frightens me, because I know more about my products than anybody else on earth." Says Dennis Antonious, 64, Tony's son (he also has two daughters), "He's like a pit bull. If he gets his teeth into your neck, you won't get him off."

Antonious currently holds more than 220 golf-related patents (a patent, depending on its classification, must be renewed periodically), and says he has applied for two dozen more. "All kinds of ideas pop through my mind lickety-split," he says. "I can't write them down fast enough." Antonious's prolificacy might give the impression that acquiring patents is simple, but each application must prove in specific detail that it offers a unique innovation, and one patent can cost up to $15,000 in processing and legal fees.

The son of Greek immigrants, Antonious and his three brothers and sisters grew up on a farm in Williamsburg, Va. After completing a two-year accounting and auditing course at the University of Maryland, he took a job with Davison Chemicals, which became part of W.R. Grace. During his more than two decades there, he was constantly tinkering with inventions and peddling them to area businesses. Most of his gizmos and gewgaws had a smack-on-the-forehead logic to them: a tongue-and-groove closure for plastic bags, a jar lid that doubled as a coaster and a contraption made of canvas, steel rods and suction cups that prevents snow from piling up on a windshield.

Antonious is strictly an idea man. His first wife, Sarah, who died of cancer in 1971, was an artist who used to limn his visions on paper. Today he hires designers.

In his heyday Antonious was a hearty athlete who ran three miles each way to high school, and as an adult he became an accomplished duckpin bowler. He began playing golf in his late 40s and was a five handicapper in a couple of years. One day, after injuring his hand swinging a club through some rough, he started experimenting with golf gloves. In those days most gloves were closed with a snap, but Antonious came up with the idea to use Velcro instead. He patented the concept and produced several batches of gloves to take to a golf merchandising show in Miami in 1970. "I brought a hundred dozen gloves, and they vanished in two days," Antonious says.

That success helped convince Antonious to leave his job at W.R. Grace at age 54 to go into inventing full time. He struck licensing deals on his gloves with several companies, most notably FootJoy, which incorporated Antonious's design as an entry point into the glove business and is now the world's leading manufacturer in that category. The FootJoy deal was lucrative for Antonious, but not nearly as much as the

14 cases of infringement he he filed against other glove manufacturers. Those lawsuits took almost 10 years to play out, but all were settled in Antonious's favor, and by the time he was 80, he was independently wealthy.

While most people his age were taking long naps and watching sunsets, Antonious amassed a small fortune by churning out scores of inventions. In the early '80s he reaped another windfall when Titleist licensed his Dead Center putter. In a particularly feverish spurt in 1994 and '95, he applied for 72 patents in six months.

What Antonious lacks in formal training he makes up for with a surfeit of creative energy, gleaning insights from natural wonders like birds and fish. "Like my mama used to say, 'God is a master craftsman,' " he says. "Look! The sun rises in the east and settles in the west. And look! The ocean waters go out and come back at the same time. You can predict it precisely to the second. When a ball lands in a pond, look what happens to the force. The ripples are in circles, and they're all parallel, and then the force diminishes. Why? God gave me a gift to think and remember."

A onetime altar boy in the Greek Orthodox Church who remains devout, Antonious views the U.S. patent and trademark system as a grand-scale morality play, pitting small businessmen like him against malevolent conglomerates. "I've had talks with him during which I try to get him to see a different perspective and understand the cost of picking fights, but he doesn't see the world that way," says Richard Stroup, a patent lawyer who has worked for Antonious since the late '70s. "He sees only rights and wrongs, and when a wrong has been committed, he's not interested in what a rational businessman would do."

Antonious has litigated about a half-dozen major infringement cases since his first bouts over the gloves. One trial that did not go his way, however, was a case he initiated in 1994 against Spalding, in which he sought several million dollars in damages, claiming the company's Top-Flite and Tour Edition irons and later its Intimidator woods violated his patents. In June '98 a U.S. District Court in Maryland threw out the suit in summary judgment, ordering Antonious to pay Spalding's court costs and issuing a $30,000 sanction against Stroup's law firm, Finnegan, Henderson, Farabow, Garrett & Dunner, for failing to do an adequate pre-filing investigation of Antonious's claims. The $30,000 sanction was reversed on appeal in a U.S. Circuit Court, but the higher court agreed that Spalding had not infringed on Antonious's patents.

Given his litigiousness, it's no surprise that Antonious has earned the enmity of some executives in the golf industry who see him not as a creative genius but as a gadfly who likes to sprinkle the landscape with legal land mines. Antonious's confrontational style may also alienate some potential business partners. Even one executive who has licensed some of Antonious's patents says his time demands can be onerous, adding, "You have to take the bad with the good when you work with him." Says Larry Hefter, another patent attorney at Finnegan, Henderson, Farabow, Garrett & Dunner, "He has a lot of very valuable patents that have not seen the light of day, because I think these companies are concerned about doing business with Tony. That's a shame, because they're both missing out."

Not surprisingly, Antonious makes no apologies, nor does he lament not landing a high-profile job with any of the leading manufacturers. "Why do I need a job with one of these companies when I've got more money than just about anybody I'm going to talk to there?" he says. "I've dedicated more years to inventing than anybody in their R&D departments. More than 60 years! They don't even have anybody that old."

If Antonious's adversaries are hoping he will soon fade away, they may be disappointed. He was diagnosed as having prostate cancer in the early '90s (the cancer is in remission) and underwent quintuple bypass surgery in July 2001, but is as fit as most men 20 years his junior. He already knows the names of the next drivers he will put on the market (Caged Fury and Sequoia), and claims he'll need another 15 years to finish all his projects.

The only downside to Antonious's work, he says, is that it keeps him from spending more time with his wife, Pat, his children, his eight grandchildren and three great-grandchildren. Nevertheless, retirement may be the one idea Antonious refuses to envision. "Never, never, never will I retire, and my family knows that," he says. "They will bury me with the last item that I invented in my casket."

**Find this article at:**
http://sportsillustrated.cnn.com/vault/article/magazine/MAG1027790/index.htm

🖶 Click to Print

SAVE THIS | EMAIL THIS | Close

☐ Check the box to include the list of links referenced in the article.

Copyright © 2007 CNN/Sports Illustrated.

# EXHIBIT "E"



PRINT THIS

Powered by Clickability



SAVE THIS | EMAIL THIS | Close



February 09, 1998

# Watch Out For Golf's Edison

Inventor Tony Antonious has received nearly 400 patents for golf gizmos—putters, irons, woods, shoes, bags, tees, even a cap that he claims prevents headaches. "He's the hero of every basement tinkerer hoping to fund his retirement with the next great invention," says one equipment manufacturer.

"Don't go to court with him," warns another. "He'll kill you."

A ubiquitous presence at shindigs like last week's PGA Merchandise Show, where he relentlessly hawks his wares, Antonious is best known for a glove he invented in 1967 His masterstroke was literally a finishing touch: the glove's adjustable closing mechanism. "I bought some Velcro and my wife, Sarah, sewed it onto the backs of some gloves," he says. Pros scoffed at the result, but when Antonious placed ads in golf magazines, orders flooded in. He quit his job as an accountant to try to become golf's Thomas Edison. "It was a bold move, but I believed in the security of a U.S. patent," he says. "Little did I realize it's not that secure."

Antonious rails at the fact that U.S. corporations often get away with stealing ideas from men like him—inventors too poor to defend their rights in court. But here was a little guy who had a big appetite for legal battle. He launched lawsuits against Spalding, Wilson and 13 other companies that added Velcro to their golf gloves without paying him royalties. Seven settled out of court. Eight went to trial and he beat them all and ultimately emerged a multimillionaire.

Yet even in triumph he fights a reputation for eccentricity. "I am no kook," Antonious insists. Sure, he speaks five languages, has a right leg that's an inch shorter than his left (the result of a 1934 motorcycle wreck) and keeps his address a secret.

Next on the Antonious docket: a courtroom battle with Spalding over the design of the company's Top-Flite Tour irons and Intimidator driver —stolen from him, he claims. "I have hurt no one and taken nothing that wasn't rightfully mine," says the 80-year-old Velcro man, who has been battling prostate cancer since 1988 and now has one more major goal: "Ultimate peace of mind! I haven't reached it yet, but I'm getting close."

**Find this article at:**
http://sportsillustrated.cnn.com/vault/article/magazine/MAG1011959/index.htm



SAVE THIS | EMAIL THIS | Close

☐ Check the box to include the list of links referenced in the article.

Copyright © 2007 CNN/Sports Illustrated.

# EXHIBIT "F"

UNITED STATES 'ARTMENT OF COMMERCE
Patent and Trade...rk Office
Address: COMMISSIONER OF PATENTS AND TRADEMARKS
Washington, D.C. 20231

| APPLICATION NUMBER | FILING DATE | PATENT/OUS | FIRST NAMED APPLICANT | A... A.IA-405 | ATTY. DOCKET NO |
|---|---|---|---|---|---|

'F3M1/0609'

NICHOLAS J AGUILINO
2121 CRYSTAL DRIVE
SUITE 503
ARLINGTON VA 22202

PASSANITI   EXAMINER

3304   ART UNIT   PAPER NUMBER   4

06/09/97

DATE MAILED:

This is a communication from the examiner in charge of your application.
COMMISSIONER OF PATENTS AND TRADEMARKS

## OFFICE ACTION SUMMARY

☒ Responsive to communication(s) filed on _12-04-96_

☐ This action is FINAL.

☒ Since this application is in condition for allowance except for formal matters, prosecution as to the merits is closed in accordance with the practice under *Ex parte Quayle*, 1935 D.C. 11; 453 O.G. 213.

A shortened statutory  period for response to this action is set to expire _TWO (2)_ month(s), or thirty days, whichever is longer, from the mailing date of this communication. Failure to respond within the period for response will cause the application to become abandoned.  (35 U.S.C. § 133).  Extensions of time may be obtained under the provisions of 37 CFR 1.136(a).

**Disposition of Claims**

☒ Claim(s) _1-7_ is/are pending in the application.

Of the above, claim(s) _____ is/are withdrawn from consideration.

☐ Claim(s) _1, 2, 7_ is/are allowed.

☐ Claim(s) _____ is/are rejected.

☒ Claim(s) _3-6_ is/are objected to.

☐ Claim(s) _____ are subject to restriction or election requirement.

**Application Papers**

☒ See the attached Notice of Draftsperson's Patent Drawing Review, PTO-948.

☐ The drawing(s) filed on _____ is/are objected to by the Examiner.

☐ The proposed drawing correction, filed on _____ is ☐ approved ☐ disapproved.

☒ The specification is objected to by the Examiner.

☐ The oath or declaration is objected to by the Examiner.

**Priority under 35 U.S.C. § 119**

☐ Acknowledgment is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d).

☐ All ☐ Some* ☐ None   of the CERTIFIED copies of the priority documents have been

☐ received.

☐ received in Application No. (Series Code/Serial Number) _____

☐ received in this national stage application from the International Bureau (PCT Rule 17.2(a)).

*Certified copies not received: _____

☐ Acknowledgment is made of a claim for domestic priority under 35 U.S.C. § 119(e).

**Attachment(s)**

☐ Notice of Reference Cited, PTO-892

☐ Information Disclosure Statement(s), PTO-1449, Paper No(s). _____

☐ Interview Summary, PTO-413

☒ Notice of Draftsperson's Patent Drawing Review, PTO-948

☐ Notice of Informal Patent Application, PTO-152

SEBASTIANO PASSANITI
PRIMARY EXAMINER
GROUP 3300

—SEE OFFICE ACTION ON THE FOLLOWING PAGES—

Serial Number: 08/759,924                                                             Page 2

Art Unit: 3304

This Office action is responsive to communication received December 04, 1996 - application papers filed with petition to make special.

The petition to make special was GRANTED on April 24, 1997.

Claims 1-7 are pending.

Following is an action on the MERITS:

Claims 1, 2 and 7 are allowable over the prior art references of record.

Claims 3-6 are objected to under 37 CFR 1.75(a) for failing to failing to particularly point out and distinctly claim the subject matter which the applicant regards as his or her invention.

As to claim 3, where is the centerline located ? Is this the centerline in a front-to-back direction that bisects the longitudinal extent of the club head between the heel and the toe or is the centerline referring to a vertical centerline that extends from the top to the bottom of the head ? How is the slot offset from the centerline ?

As to claim 4, where is the center of the bottom surface ?

The specification is objected to as failing to provide proper antecedent basis for the claimed subject matter. See 37 CFR 1.75(d)(1) and MPEP § 608.01(o). Correction of the following is required: The specification does not provide proper antecedent basis for the "center of said bottom surface" , as recited in claim 4.

This application has been filed with informal drawings which are acceptable for examination purposes only. Formal drawings will be required when the application is allowed.

Serial Number: 08/759,924                                                              Page 3

Art Unit: 3304

The prior art made of record and not relied upon is considered pertinent to applicant's disclosure. Lin, Kenmi, and Antonious ('176) show channels in the sole portion of interest. Note channel (23) in Kim, Rogerson shows channels (24a, 24b) in the sole. Gorman discloses a substantially u-shaped sole channel. See Figure 7 in Milligan. Note cavity (36) in Henwood and arrangement (12) in MacDougall. Werner and Gallagher show sole designs of interest.

This application is in condition for allowance except for the following formal matters:

Note the objections to the claims, specification and drawings, as outlined above.

Prosecution on the merits is closed in accordance with the practice under *Ex parte Quayle*, 1935 C.D. 11, 453 O.G. 213.

A shortened statutory period for response to this action is set to expire **TWO MONTHS** from the date of this letter.

Any inquiry concerning this communication or earlier communications from the examiner should be directed to Sebastiano Passaniti whose telephone number is (703) 308-1006.

S. Passaniti / sp
June 4, 1997

**SEBASTIANO PASSANITI**
**PRIMARY EXAMINER**
**ART UNIT 3304**

# EXHIBIT "G"

# United States Patent [19]

## Antonious

US00D350176S

[11] Patent Number: **Des. 350,176**

[45] Date of Patent: ** Aug. 30, 1994

[54] **WOOD TYPE GOLF CLUB HEAD**

[76] Inventor: **Anthony J. Antonious**, 7738 Calle Facil, Sarasota, Fla. 34238

[**] Term: **14 Years**

[21] Appl. No.: **1,517**

[22] Filed: **Nov. 16, 1992**

[52] U.S. Cl. .................................................... **D21/214**

[58] Field of Search ................................ 273/167–175; D21/214–222

[56] **References Cited**

### U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| D. 247,922 | 5/1978 | Sheldon | 273/167 A |
| D. 343,434 | 1/1994 | Helmstetter et al. | D21/214 |
| 1,139,738 | 5/1915 | Tyler | D21/214 |

### OTHER PUBLICATIONS

Golf World, Aug. 19, 1977, p. 37, bottom right, golf wood.

*Primary Examiner*—Melvin B. Feifer
*Attorney, Agent, or Firm*—N. J. Aquilino

[57] **CLAIM**

The ornamental design for a wood type golf club head, as shown and described.

### DESCRIPTION

FIG. 1 is a front elevational view of a wood type golf club head showing my new design;
FIG. 2 is a top plan view thereof;
FIG. 3 is a rear elevational view thereof;
FIG. 4 is an end elevational view thereof;
FIG. 5 is an end elevational view taken from the opposite end of FIG. 4; and,
FIG. 6 is a bottom view thereof.





FIG. 1

FIG. 2

FIG. 3

Exhibit C
Page 41

**U.S. Patent**      Aug. 30, 1994      Sheet 2 of 2      **Des. 350,176**



FIG. 4

FIG. 5





FIG. 6

Exhibit G
Page 42

# EXHIBIT "H"

# United States Patent [19]

**MacDougall**

[11] Patent Number: **5,456,469**

[45] Date of Patent: **Oct. 10, 1995**

[54] **DYNAMICALLY STABILIZED GOLF CLUB**

[76] Inventor: **Alexander S. MacDougall**, 495 Valley Club Rd., Santa Barbara, Calif. 93108

[21] Appl. No.: **375,801**

[22] Filed: **Jan. 17, 1995**

[51] Int. Cl.$^6$ .................................................... **A63B 53/04**

[52] U.S. Cl. ................ 273/174; 273/167 H; 273/167 A; 273/175

[58] Field of Search ................................. 273/167 R, 168, 273/78, 169, 170, 171, 172, 173, 174, 175, 167 A, 167 B, 167 C, 167 D, 167 E, 167 F, 167 G, 167 H, 167 J, 167 K, 77 R, 77 A, 194 R, 187.4, 164.1, 186.2; D21/214, 215

[56] **References Cited**

### U.S. PATENT DOCUMENTS

| | | |
|---|---|---|
| D. 355,686 | 2/1995 | Hlinka ....................... D21/214 |
| 1,531,821 | 3/1925 | Scott ...................... 273/167 A |
| 1,532,545 | 4/1925 | Pedersen ................... 273/175 |
| 1,619,566 | 3/1927 | Crankshaw .................. 273/174 |
| 2,023,885 | 12/1935 | Hinckley ................... 273/175 |
| 2,301,369 | 11/1942 | Carvill . |
| 2,550,846 | 5/1951 | Milligan . |
| 3,068,011 | 12/1962 | Sano ....................... 273/174 |
| 3,761,095 | 9/1973 | Thompson . |
| 3,815,921 | 6/1974 | Turner . |
| 3,997,170 | 12/1976 | Goldberg . |
| 4,043,563 | 8/1977 | Churchward . |
| 4,332,388 | 6/1982 | Crow . |
| 4,471,961 | 9/1984 | Masghati et al. . |

| | | |
|---|---|---|
| 4,489,945 | 12/1984 | Kobayashi . |
| 4,795,159 | 1/1989 | Nagamoto . |
| 5,013,041 | 5/1991 | Sun et al. . |
| 5,050,879 | 9/1991 | Sun et al. . |
| 5,125,662 | 6/1992 | Antonious . |
| 5,154,423 | 10/1992 | Antonious .................. 273/167 A |
| 5,213,329 | 5/1993 | Okumoto et al. . |
| 5,240,252 | 8/1993 | Schmidt et al. . |
| 5,314,185 | 5/1994 | Gorman .................... 273/167 A |

### FOREIGN PATENT DOCUMENTS

| | | |
|---|---|---|
| 0006733 | 1/1980 | European Pat. Off. . |
| 0005407A1 | 5/1993 | European Pat. Off. . |
| 405049715A | 3/1993 | Japan . |
| 441593 | 1/1936 | United Kingdom ............ 273/174 |
| 2048693 | 12/1980 | United Kingdom . |
| 2126906 | 4/1994 | United Kingdom . |

### OTHER PUBLICATIONS

John W. Baymiller, "Straighter Shots From Curved Clubfaces," Golf Digest, 1965, 5 pages.

*Primary Examiner*—Sebastiano Passaniti
*Attorney, Agent, or Firm*—Marvin E. Jacobs

[57] **ABSTRACT**

A golf club, suitable as a driver or a wood, with a pair of elongated strakes on the bottom that extend back from the ball impacting surface in a converging pattern from locations astride the sweet spot so as to act as skid runners and also dynamically stabilize the sweet spot, reduce the gear effect, and generate longer and more accurate shots.

**9 Claims, 1 Drawing Sheet**



**U.S. Patent**          Oct. 10, 1995          **5,456,469**



*Fig. 1*

*Fig. 2.*



*Fig. 3.*

1

## DYNAMICALLY STABILIZED GOLF CLUB

### TECHNICAL FIELD

This invention relates to the sport of golf, and more specifically golf club heads that are designed to yield more consistent, accurate, and predictable performance.

### BACKGROUND OF THE INVENTION

When a golf club head strikes a golf ball slightly off center, that is, not directly in line with the center of gravity of the head, a spin is induced in the ball causing the ball to curve in flight. This effect is known as the gear effect and is thoroughly explored in U.S. Pat. No. 4,471,961 to Masghati et al. In essence, the off center impact of the ball causes the head to rotate about its center of gravity and this rotation, or spin, is transferred into the golf ball, like two gears meshing, so that the ball spins in the opposite direction. Spinning balls curve as they fly through the air.

In order to compensate for this adverse spin, golf club heads have convex curved impact surfaces, known as bulge, that intentionally deflect the ball sideways by increasing amounts for progressively further off center hits so that the inevitable curve will bring the ball roughly back to the desired path in line with the direction of the club swing. This compensation is approximate at best, and many prior art solutions have been attempted to minimize the gear effect.

The Masghati et al patent, for example, proposes weights in the head at locations far from the rotational axis so as to maximize the rotational inertia and, thus, resist head rotation. But trying to diminish head rotation in this manner is inherently limited because head weights are established at about 200 grams and even if nearly all of this weight is near the edge, the head will still twist in response to off center ball strikes.

Another problem in maintaining accuracy with convex impact surfaces is that all materials have some degree of elasticity. Hence, no matter what material a golf club head is made from, it will elastically deform from the impact of the ball so that the actual shape of the bulge is never fully predictable. It follows that the intentional misdirection of the ball, to compensate for spin, is also somewhat unpredictable. This temporary shape change may also affect the efficiency of the spin transfer to the ball, and, consequently, the magnitude of the gear effect. Modern golf club heads are typically constructed from a thin metal shell that is filled with a fairly stiff plastic foam. This produces a very durable, and very strong, head with a naturally high rotational moment of inertia. However, the head is still a highly dynamically flexible object which must necessarily yield and bend a bit upon impact. If it did not yield, that is, was very hard, it would be, by definition, brittle and would likely shatter on impact.

The discussion above concerns the technology surrounding the very long driving of balls and thus pertains more to drivers and the first shot off a well prepared tee. Once on the fairway, other problems arise as well, although distance may still be required. In this situation, golfers often switch from a driver to a so called wood, which may, in modern practice, be made from metal, wood, or plastics. To facilitate use of the club in taller grass, or in the rough, another class of prior art designs has emerged that use skids or strakes on the bottom surface, or sole, of the club head. These skids slide over or through the ground and keep the bulk of the bottom surface of the head from digging into the ground and grass

2

and, thus, losing momentum. Typical prior art in this class is found in U.S. Pat. Nos. 4,332,388 to Crow, 5,213,329 to Okumoto et al, 5,125,662 to Antonious, 3,761,095 to Thompson, and 3,815,921 to Turner. All of these patents show various kinds of skids or runners on the bottom of the head intended to help the head track smoothly and more easily over the surface of the ground. All of these patents also require that the skids be parallel to the direction of movement of the head or swing. Crow, for example, says in column 3, line 32, that his parallel runners stabilize and track the head when it contacts the ground. Okumoto states that his skids extend in a back and forth direction relative to the direction of swing of the club. Antonious says in column 2, line 6, that his skid members have their longitudinal axis extending in the front to rear direction so as to furrow into the ground and prevent lateral club head movement (column 2, line 53). Thomson recites in column 2, that his so called keel 30 extends along a line that will be the path of swing of the head. Finally, Turner says that his keel is normal to the striking face in column 1, line 36. Clearly, it is the firm opinion in the art that strakes on the club head must be parallel to the swing path to avoid sideways deflections of the club upon ground contact. The present invention contemplates a complete reversal of this orthodoxy in order to achieve not only the benefits of skids, but also the taming of the gear effect, as explained below.

### STATEMENT OF THE INVENTION

Briefly, this invention utilizes skids or strakes on the bottom of the club head that are not parallel to the swing direction, or to each other, but rather converge as they extend back from the bulge toward the rear of the head. It has been discovered that this arrangement provides numerous unexpected advantages. Firstly, no lateral deflections are induced by ground contact since each of the dual strakes are angled in opposite directions from the swing path and, therefore, cancel each other out. However, the strakes still keep the head from the digging into the ground and losing momentum. Secondly, the strakes brace the bulge at critical locations along its length near the ends of the effective strike zone and carry the impact forces back toward the center of gravity of the head. Thus, the bulge is more rigid, where it counts, so that the gear effect compensation is less affected by dynamic flexing and, accordingly, more consistent and predictable. In time, a golfer using this head can learn to be more accurate because the club head does the same thing every time, rather than dynamically bending and changing behavior for different force ball impacts. The head of the present invention is dynamically stabilized and generates more consistent, predictable, and repeatable performance.

The rigidized bulge rebounds faster, and propels the ball away more quickly for off center hits, because it is reinforced by the strakes at the off center locations. Hence, the ball spends less time in contact with the head. There is less time for spin transfer and therefore less gear effect. Since less spin is induced, less energy is absorbed by spin, leaving more energy to drive the ball further, a necessary consequence of the principle of conservation of energy.

The strakes are fairly massive compared to the thin shell of the head and, thus, add weight at a low location and at a forward location. The low location weight increases inertia and driving power. The forward location weight moves the center of gravity of the head forward, nearer the bulge. The gear effect rotates the head about the center of gravity. But since this center is now closer to the bulge, at a lesser radius,

5,456,469

3

the sideways movement of the bulge is lessened, decreasing the gear effect.

As a result of all these above advantages, a club head is provided that is both a good driver and a good wood. The golfer can use the same club for both purposes which enhances learning and skill. Having to change clubs often makes it harder to become consistent and repeatable, harder to get in the groove, as the saying goes. Additional advantages and benefits will become apparent in the following detailed description and the drawings referenced thereby.

BRIEF DESCRIPTION OF THE DRAWINGS

FIG. 1 is a side elevational view of the golf club head of the present invention as seen from the ball impacting, or bulge, face side, showing the bottom strakes extending back from the bulge, the strakes visible, more or less, end on;

FIG. 2 is a bottom view of the head showing how the strakes begin at the bulge and extend back toward the rear, converging generally toward the center of the head and diminishing in size toward the rear so as to move the center of gravity forward toward the bulge; and

FIG. 3 is a fragmentary sectional view of the club head, oriented as in FIG. 1, showing that the head comprises a thin metal shell filled with a reinforcing plastic foam.

DETAILED DESCRIPTION OF THE INVENTION

FIGS. 1 and 2 show the inventive golf club head 10 with an impact surface or bulge 12 and a hosel 14 connected to a shaft 16. The radius of bulge 12 is typically about ten inches. The bulge is the curve over the left to right distance in FIG. 2 and is designed to compensate for the gear effect induced ball spin that curves the ball left and right when struck off center, either toward the heel 18, or the toe 20. Heads also have a curve in the impact surface 12 that is orthogonal to the bulge and referred to as the roll. The roll compensates for high and low strikes in the same manner as the bulge offsets left and right strikes, although the effect is less in terms of accuracy.

There are limits to the width of the effective contact zone, sometimes called a sweet spot, which are represented, for the purpose of the drawing, with numerals 22 and 24 which identify the approximate boundaries of the effective contact zone.

Two strakes 26 and 28 extend back from the bulge, from locations approximately near the boundaries 22 and 24 of the sweet spot, converging toward the center of the head and toward its center of gravity. Strakes 26 and 28 comprises elongated projections or bumps that serve as skids or runners to facilitate head motion in grass or in the rough. However, they decrease in size as they extend rearward so as to keep the preponderance of the mass forward near the bulge and relocate the center of gravity forward which decreases the gear effect. The strakes also lower the center of gravity, generally considered to add distance and power to the ball strike.

The strakes 26 and 28 are not necessarily in line with the swing path, or parallel to each other, as in the prior art. But since they diverge from the swing path in opposite direc-

4

tions, any lateral deflections caused by the strakes digging into the ground are cancelled out and do not generate directional errors.

As may be seen in FIG. 3, head 10 comprises a very thin stainless steel metal shell 29 filled with a suitable reinforcing plastic foam 30. The strakes 26 and 28 may be made from a thicker metal, as shown at 32, if desired, so as to have a greater mass and strength. The foam filled shell is dynamically quite flexible, which makes it strong and tough under impact. But ball impacts that are off center also encounter very complex deflections that vary as a function of location, force, and other environmental conditions. These deflections produce hard to predict, variable, inconsistent compensations to the gear effect that make it harder for a golfer to learn the behavior of the club head. The strakes of the present invention significantly reduce these variables by rigidizing the bulge 12 at the approximate boundaries 22 and 24 of the sweet spot.

Strakes 26 and 28 capture and resist most of the ball impact force and convey it back toward the center of gravity. Since the strakes are positioned generally perpendicular to the ends 22 and 24 of the effective contact zone, they are very stiff and strong. Other parts of the bulge yield more easily and, thus, retreat from the ball impact, leaving the strakes to absorb the brunt of the force. Thus, the force is directed along the length of the strakes and into the center of gravity of the head. The shape of the bulge is better preserved, and the compensation for the gear effect is more consistent.

The more rigid bulge at the edges of the sweet spot rebound the ball quicker so that spin transfer is reduced and more energy is transferred as momentum. The gear effect is reduced as a result of the reduced spin transfer.

The present invention provides a club head with more power, more accuracy, more consistency, and less gear effect. This has been confirmed by many users who have tried the club and report a better feel, straighter shots, more distance, and less variability. The head permits use as both a driver and a wood so that the need to change clubs and relearn the correct swing is lessened. The principles of the invention, and the converging bottom strakes, are equally applicable to any type of club head, or head construction method. We intend, therefore, that the invention be limited only in accordance with the appended claims and their equivalents.

I claim:

1. A golf club head having a ball impact bulge face having an effective contact zone thereon defined by opposite ends and having a bulge face edge adjacent a bottom surface of said club head and said bottom surface having elongated strakes thereon extending back from the bulge face edge, said strakes converging toward each other as they extend away from the bulge face bulge, whereby said strakes serve to both reduce the lateral deflection of said club head upon contact thereof with the ground and brace the bulge face adjacent the ends of the effective contact zone.

2. The head of claim 1 in which there are two of said strakes.

3. The head of claim 1 in which said strakes diminish in size as they extend back from the bulge face edge.

4. The head of claim 1 in which said strakes converge

5,456,469

5

generally toward the center of gravity of the head.

5. The head of claim 1 in which the strakes extend back from the bulge face edge from locations near the ends of the effective contact zone.

6. The head of claim 1 in which the head comprises a thin metal shell filled with a reinforcing plastic foam.

7. The head of claim 2 in which the strakes diminish in size as they extend back from the bulge face edge.

6

8. The head of claim 7 in which the strakes extend back from locations approximately at the ends of the effective contact zone.

9. The head of claim 8 in which the head comprises a thin metal shell filled with reinforcing foam.

\* \* \* \* \*

**EXHIBIT "I"**

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In re Application of:

Anthony J. Antonious

Serial No.: 08/759,924

Filed    : 12/04/96

Title    : AERODYNAMIC METAL WOOD GOLF CLUB HEAD

Group Art Unit: 3304

Examiner: S. Passaniti

AMENDMENT

Commissioner of Patents
  and Trademarks
Box Non-Fee Amendment
Washington, D.C. 20231

Sir:

     In response to the outstanding Office Action of June 9, 1997, please amend the above-identified application as follows:

IN THE CLAIMS:

     Claim 3, line 2, delete the words "a centerline" and insert in its place --said heel--;

     Claim 4, line 7, delete the words "a center of said bottom surface" and insert in its place --said ball striking face--; and

     Add new claim 8

--8. The aerodynamic golf club of claim 1 wherein said slot is further defined by being offset *from* by said toe of said club head.--

1

Exhibit I
Page 49

<u>REMARKS</u>

Reconsideration of this application is respectfully requested in view of the foregoing amendment and the remarks that follow.

In response to the outstanding Office Action, Applicant has rewritten the claims which were objected to in the Office Action by referring to specifically claimed areas on said club head.  In view of the amendment, Applicant respectfully submits that the application is now in condition for allowance and that it be sent to issue.  Early notification thereof is requested.

If it is felt that an interview would expedite prosecution of this application, please do not hesitate to contact the undersigned at the below number.

Respectfully submitted,

Nicholas J. Aquilino
Registration No. 24,527

AQUILINO & WELSH, P.C.
2121 Crystal Drive
Suite 503
Arlington, Virginia 22202
Telephone: (703) 920-1122

Docket No. AJA-405

2

Exhibit I
Page 50

# EXHIBIT "J"

Exhibit I
Page 51

Serial Number: 08/759,924                                                          Page 2

Art Unit: 3304

## EXAMINER'S AMENDMENT

An examiner's amendment to the record appears below.  Should the changes and/or additions be unacceptable to applicant, an amendment may be filed as provided by 37 CFR 1.312. To ensure consideration of such an amendment, it MUST be submitted no later than the payment of the issue fee.

Authorization for this examiner's amendment was given in a telephone interview with Nicholas J. Aquilino, reg. No. 24,527 on July 09, 1997.

The application has been amended as follows:

**IN THE CLAIMS**:

Claim 4 line 7, after "a" , the phrase --centerline passing through a longitudinal-- has been INSERTED and after "surface" , the phrase --in a heel-to-toe direction-- has been INSERTED.

Claim 8 line 2, "by" (second occurrence) has been CHANGED to --from-- .

The following is an examiner's statement of reasons for allowance: Claims 1-8 are allowable over the prior art references of record because it would not have been obvious to modify any of the prior art devices of record to include a c-shaped slot having an open end facing forwardly toward the ball striking face.

Any comments considered necessary by applicant must be submitted no later than the payment of the issue fee and, to avoid processing delays, should preferably accompany the issue fee.  Such submissions should be clearly labeled "Comments on Statement of Reasons for Allowance."

Serial Number: 08/759,924                                                        Page 3

Art Unit: 3304

In order to avoid abandonment, the drawing informalities noted in Paper No. 4, mailed on June 09, 1997, must now be corrected. Correction can only be effected in the manner set forth in the above noted paper.

Formal drawings are now required and must be filed within the THREE MONTH shortened statutory period set for response in the "NOTICE OF ALLOWABILITY" (PTO-37). Extensions of time may be obtained under the provisions of 37 CFR 1.136(a). Failure to timely submit the drawings will result in ABANDONMENT of the application. The drawings should be submitted as a separate paper with a transmittal letter which is addressed to the Official Draftsperson. The art unit number, application number and number of drawing sheets should be written on the reverse side of the drawings.

Any inquiry concerning this communication or earlier communications from the examiner should be directed to Sebastiano Passaniti whose telephone number is (703) 308-1006.

S. Passaniti / sp

July 16, 1997

SEBASTIANO PASSANITI
PRIMARY EXAMINER
ART UNIT 3304

**EXHIBIT "K"**



**UNITED STATES DEPARTMENT OF COMMERCE**
Patent and Trademark Office

Address:   Box ISSUE FEE
ASSISTANT COMMISSIONER FOR PATENTS
WASHINGTON, D.C. 20231

## NOTICE OF ALLOWANCE AND ISSUE FEE DUE

F3M1/0718

NICHOLAS J AQUILINO
2121 CRYSTAL DRIVE
SUITE 503
ARLINGTON VA 22202

| APPLICATION NO. | FILING DATE | TOTAL CLAIMS | EXAMINER AND GROUP ART UNIT | | DATE MAILED |
|---|---|---|---|---|---|
| 08/759,924 | 12/04/96 | 008 | PASSANITI, S | 3304 | 07/18/97 |

First Named Applicant    ANTONIOUS,    ANTHONY J.

TITLE OF INVENTION   AERODYNAMIC METAL WOOD GOLF CLUB HEAD

| ATTY'S DOCKET NO. | CLASS-SUBCLASS | BATCH NO. | APPLN. TYPE | SMALL ENTITY | FEE DUE | DATE DUE |
|---|---|---|---|---|---|---|
| 3   AJA-405 | 473-328.000 | Z99 | UTILITY | YES | $645.00 | 10/20/97 |

***THE APPLICATION IDENTIFIED ABOVE HAS BEEN EXAMINED AND IS ALLOWED FOR ISSUANCE AS A PATENT. PROSECUTION ON THE MERITS IS CLOSED.***

***THE ISSUE FEE MUST BE PAID WITHIN THREE MONTHS FROM THE MAILING DATE OF THIS NOTICE OR THIS APPLICATION SHALL BE REGARDED AS ABANDONED. THIS STATUTORY PERIOD CANNOT BE EXTENDED.***

### HOW TO RESPOND TO THIS NOTICE:

I. Review the SMALL ENTITY status shown above.
   If the SMALL ENTITY is shown as yes, verify your current SMALL ENTITY status:

   A. If the status is changed, pay twice the amount of the FEE DUE shown and notify the Patent and Trademark Office of the change in status, or
   B. If the status is the same, pay the FEE DUE shown above.

If the SMALL ENTITY is shown as NO:

   A. Pay FEE DUE shown above, or

   B. File verified statement of Small Entity Status before, or with, payment of 1/2 the FEE DUE shown above.

II. Part B of this notice should be completed and returned to the Patent and Trademark Office (PTO) with your ISSUE FEE. Even if the ISSUE FEE has already been paid by charge to deposit account, Part B should be completed and returned. If you are charging the ISSUE FEE to your deposit account, section "6b" of Part B should be completed.

III. All communications regarding this application must give application number and batch number.
    Please direct all communication prior to issuance to Box ISSUE FEE unless advised to the contrary.

IMPORTANT REMINDER: Patents issuing on applications filed on or after Dec. 12, 1980 may require payment of maintenance fees. It is patentee's responsibility to ensure timely payment of maintenance fees when due.

E Chan
7-16-97

### UNITED STATES DEPARTMENT OF COMMERCE
**Patent and Trademark Office**
Address: COMMISSIONER OF PATENTS AND TRADEMARKS
Washington, D.C. 20231

| APPLICATION NUMBER | FILING DATE | FIRST NAMED APPLICANT | ATTORNEY DOCKET NO. |
|---|---|---|---|

| EXAMINER |
|---|

| ART UNIT | PAPER NUMBER |
|---|---|
| | 71B |

DATE MAILED:

This is a communication from the examiner in charge of your application.
COMMISSIONER OF PATENTS AND TRADEMARKS

## NOTICE OF ALLOWABILITY

All claims being allowable, PROSECUTION ON THE MERITS IS (OR REMAINS) CLOSED in this application. If not included herewith (or previously mailed), a Notice of Allowance and Issue Fee Due or other appropriate communication will be mailed in due course.

☒ This communication is responsive to _Amendment A (05-24-97)_

☒ The allowed claim(s) is/are _1 - 8_

☐ The drawings filed on _____ are acceptable.

☐ Acknowledgement is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d).

    ☐ All ☐ Some* ☐ None of the CERTIFIED copies of the priority documents have been

    ☐ received.

    ☐ received in Application No. (Series Code/Serial Number) _____

    ☐ received in this national stage application from the International Bureau (PCT Rule 17.2(a)).

    *Certified copies not received: _____

☐ Acknowledgement is made of a claim for domestic priority under 35 U.S.C. § 119(e).

A SHORTENED STATUTORY PERIOD FOR RESPONSE to comply with the requirements noted below is set to EXPIRE THREE MONTHS FROM THE "DATE MAILED" of this Office action. Failure to timely comply will result in ABANDONMENT of this application. Extensions of time may be obtained under the provisions of 37 CFR 1.136(a).

☐ Note the attached EXAMINER'S AMENDMENT or NOTICE OF INFORMAL APPLICATION, PTO-152, which discloses that the oath or declaration is deficient.  A SUBSTITUTE OATH OR DECLARATION IS REQUIRED.

☒ Applicant MUST submit NEW FORMAL DRAWINGS

    ☐ because the originally filed drawings were declared by applicant to be informal.

    ☒ including changes required by the Notice of Draftperson's Patent Drawing Review, PTO-948, attached hereto or to Paper No. _4_

    ☐ including changes required by the proposed drawing correction filed on _____ which has been approved by the examiner.

    ☐ including changes required by the attached Examiner's Amendment/Comment.

Identifying indicia such as the application number (see 37 CFR 1.84(c)) should be written on the reverse side of the drawings. The drawings should be filed as a separate paper with a transmittal letter addressed to the Official Draftperson.

☐ Note the attached Examiner's comment regarding REQUIREMENT FOR THE DEPOSIT OF BIOLOGICAL MATERIAL.

Any response to this letter should include, in the upper right hand corner, the APPLICATION NUMBER (SERIES CODE/SERIAL NUMBER). If applicant has received a Notice of Allowance and Issue Fee Due, the ISSUE BATCH NUMBER and DATE of the NOTICE OF ALLOWANCE should also be included.

Attachment(s)

☐ Notice of References Cited, PTO-892

☐ Information Disclosure Statement(s), PTO-1449, Paper No(s). _____

☐ Notice of Draftperson's Patent Drawing Review, PTO-948

☐ Notice of Informal Patent Application, PTO-152

☐ Interview Summary, PTO-413

☒ Examiner's Amendment/Comment

☐ Examiner's Comment Regarding Requirement for Deposit of Biological Material

☒ Examiner's Statement of Reasons for Allowance

SEBASTIANO PASSANITI
PRIMARY EXAMINER
GROUP 3300

PTOL-37 (Rev. 1996)

# EXHIBIT "L"

Exhibit L
Page 57

In re Reexamination of U.S. Pat. No. 5,735,754
Serial No. 08/759,924
Requester's File Ref. – ADAM-070208.044
*Page 1 of 34*

## IN THE UNITED STATES PATENT & TRADEMARK OFFICE

Patentee:   Anthony J. Antonious            )
                                            )
Pat. No.    5,735,754                       )
                                            )
Serial No.: 08/759,924                      )
                                            )
Filed:      12/04/1996                      )
                                            )
Issue Date: April 7, 1998                   )
                                            )
Title:      Aerodynamic Metal Wood Golf Club )
            Head                            )
                                            )
Requester's File Ref.:                      )
                                            )
            ADAM-070208.044                 )

---

5        **REQUEST FOR EX PARTE REEXAMINATION OF U.S. PATENT NO. 5,735,754**
                     **PURSUANT TO 37 C.F.R. § 1.510**

---

10    Honorable Commissioner of Patents and Trademarks
      Mail Stop: Ex Parte Reexamination
      Commissioner for Patents
      P.O. Box 1450
      Alexandria, VA 22313-1450

15
      Commissioner:

            Ex parte Reexamination under 35 U.S.C. §§ 302-307 and 37 C.F. R., § 1.510 is requested

      of U.S. Pat. No. 5,735,754 issued on April 7, 1998 to Anthony J. Antonious (hereinafter "the

20    '754 patent.")

1

Exhibit L
Page 58

In re Reexamination of U.S. Pat. No. 5,735,754
Serial No. 08/759,924
Requester's File Ref. – ADAM-070208.044
*Page 2 of 34*

## Table of Contents

1.   Introduction...................................................................................3

2.   The '754 Patent Invention................................................................3

3.   Identification of Claims for Which Reexamination is Requested........................4

4.   Statement Identifying Substantial New Question of Patentability.......................7

5.   Claim Charts Detailing Substantial New Questions of Patentability in the '754
     Patent.......................................................................................9

6.   Summary and  Conclusion................................................................29

7.   Exhibits

     Exhibit 1 – March 1994 issue of "Golf Magazine" magazine

     Exhibit 2 – March 1994 issue of "Golf Digest" magazine

     Exhibit 3 – April 1994 issue of "Golf Digest" magazine

     Exhibit 4 – May 1994 issue of "Golf Magazine" magazine

     Exhibit 5 – May 1994 issue of "Golf Digest" magazine

     Exhibit 6 – June 1994 issue of "Golf Magazine" magazine

     Exhibit 7 – June 1994 issue of "Golf Digest" magazine

     Exhibit 8 – Promotional literature distributed to public prior to January, 1996

     Exhibit 9 – "Petersen's Golfing" magazine, special edition, 1996

     Exhibit 10 – April 1996 issue of "Golf Digest" magazine

     Exhibit 11 – March 1996 issue of "Golf Magazine" magazine

     Exhibit 12 – April 1996 issue of "Golf Magazine" magazine

     Exhibit 13 – May 1996 issue of "Golf Magazine" magazine

     Exhibit 14 – September 1996 issue of "Golf Magazine" magazine

     Exhibit 15 – U.S. Design Pat. No. Des. 363,961 ('961) ("Krzynowek")

     Exhibit 16 – U.S. Design Pat. No. Des. 372,063 ('063) ("Hueber")

     Exhibit 17 – U.S. Pat. No. 6,257,991 ('991) ("Ortiz")

     Exhibit 18 – Expert Declaration - "Declaration of Mr. Clay Long (including
          Exhibits A and B)"; pursuant to MPEP 2205

     Exhibit 19 – U.S. Pat. No. 5,735,754 ('754) ("Antonious")

2

Exhibit L
Page 59

In re Reexamination of U.S. Pat. No. 5,735,754
Serial No. 08/759,924
Requester's File Ref. – ADAM-070208.044
*Page 3 of 34*

### 1.    Introduction

This Request for Reexamination concerns the '754 patent entitled "Aerodynamic Metal

Wood Golf Club Head," which is owned by the Anthony J. Antonious Irrevocable Trust

(attached hereto as Exhibit 19, found at Reel/Frame 020143/0392). The '754 patent contains 8

5    claims directed to a metal wood type golf club head having a c-shaped aerodynamic

configuration formed in the bottom surface adjacent a rear surface and having an open end

extending forwardly toward the ball striking face, which, in some embodiments, is in

combination with a skid surface on the bottom surface of the golf club head.

Aerodynamic golf clubs are designed to have a profile such that wind resistance of the

10    club is lessened from that of other designs. The lowering of wind resistance allows a greater club

head speed to be generated for a given degree of force applied during the golf swing. A higher

club head speed results in a greater application of force to a golf ball, and therefore, it is

intended, a longer golf shot.


15    ### 2.    The '754 Patent Invention

The '754 patent invention claims an improvement over known prior art wood type golf

club heads by providing an aerodynamic surface on the bottom sole adjacent the rear edge of the

club head, claiming to produce greater club head speed when the club head is swung. This

aerodynamic surface is said to reduce undesirable air turbulence which causes aerodynamic drag

20    and creates a smoother, laminar type air flow around the club head. A golf club using this

improvement allegedly permits a golfer to hit longer and straighter golf shots for a given applied

swing force. The aerodynamic structure also is said to create increased aerodynamic stability of

the club head resulting in increased control of the club head position during the swing, especially

3

Exhibit L
Page 60

at impact, thereby producing more consistent golf shots. Another alleged object is to provide a golf club head which increases club head speed and lift by concentrating air flow near the rear surface of the club head where turbulence occurs, to reduce drag on the club head as it is swung.

Referring now to Exhibit 19, the golf club head of the '754 patent includes a c-shaped

5    aerodynamic slot 130 formed on the bottom sole surface 124 of the club head 100. In a preferred embodiment, a metal wood type golf club head 100, having a smooth upper surface 118 and sloped side walls 222, includes a c-shaped aerodynamic slot 130 located adjacent the rear surface 120, 220 on the bottom surface 124 or sole of the club head 100. The open end 132 of the c-shaped slot 130 faces forwardly toward the front ball striking club face 122. The club head 100

10   may also include a raised sole plate 226 on the bottom surface 124 having a spacer wall 228 which also is alleged to provide an aerodynamic effect and to create a skid structure enabling the club to skim across the ground surface when the club head 100 is swung to hit a golf ball. In some embodiments, this c-shaped slot 130 may be offset, which is alleged to allow greater club head speed at the heel 114 or toe 116, selectively, in order to more effectively accommodate the

15   swing characteristics of a particular golfer.

In another claimed embodiment, a venturi slot 232 is provided between the c-shaped slot 130 and the rear surface 120, 220 of the club head 100 which is alleged to further direct air flow adjacent the rear surface of the club head where most turbulence occurs.

20   **3.      Identification of Claims for Which Reexamination is Requested**

Pursuant to 37 C.F.R. §1.510(b)(2), the claims for which reexamination is requested are hereby identified as claims 1-8 of the '754 patent.

4

Exhibit L
Page 61

In re Reexamination of U.S. Pat. No. 5,735,754
Serial No. 08/759,924
Requester's File Ref. – ADAM-070208.044
*Page 5 of 34*

Claim 1 of the '754 patent is directed to an aerodynamic golf club head including a club head body having a heel, toe, rear surface, ball striking face, upper surface and bottom surface, comprising

(1)    an aerodynamic configuration on said bottom surface adjacent said rear surface in

5    the form of a c-shaped slot having an open end facing forwardly toward said ball striking face;

(2)    the aerodynamic configuration further including a skid surface formed on and raised from said bottom surface; and

(3)    the skid surface having a wall separating said skid surface from said bottom surface.

10

Claim 2 depends from independent claim 1 and adds the limitation that the aerodynamic golf club head of claim 1 further includes a venturi opening in fluid communication with and extending rearwardly from the c-shaped aerodynamic slot toward the rear surface.

15    Claim 3 depends from independent claim 1 and adds the limitation that the aerodynamic golf club head slot of claim 1 is further defined by being offset from the heel of the club head.

Claim 4 of the '754 patent is directed to an aerodynamic golf club head including a club head body having a heel, toe, rear surface, ball striking face, upper surface and bottom surface,

20    comprising:

(1)    an aerodynamic configuration on the bottom surface adjacent the rear surface in the form of a c-shaped slot having an open end facing forwardly toward said ball striking face;

5

Exhibit L
Page 62

In re Reexamination of U.S. Pat. No. 5,735,754
Serial No. 08/759,924
Requester's File Ref. – ADAM-070208.044
*Page 6 of 34*

(2)    the slot being offset from a center of the bottom surface centerline passing

through a longitudinal in a heel-to-toe direction.


Claim 5 depends from independent claim 4 and adds the limitation that the aerodynamic

5    golf club head slot of claim 4 is offset toward said heel.


Claim 6 depends from independent claim 4 ("claim 3" was changed to "claim 4" by

Certificate of Correction granted July 1, 2008) and adds the limitation that the aerodynamic golf

club head slot of claim 4 is offset toward the toe.

10

Claim 7 depends from independent claim 1 and adds the limitation that the aerodynamic

golf club slot of claim 1 is offset from the toe of the club head.


Claim 8 of the '754 patent is directed to an aerodynamic golf club head including a club

15    head body having a heel, toe, rear surface, ball striking face, upper surface and bottom surface,

comprising:

(1)    an aerodynamic configuration on the bottom surface adjacent the rear surface in

the form of a c-shaped slot having an open end facing forwardly toward said ball striking face;

and

20    (2)    the aerodynamic configuration further including a venturi opening in fluid

communication with and extending rearwardly from said c-shaped aerodynamic slot toward said

rear surface.


6

Exhibit L
Page 63

In re Reexamination of U.S. Pat. No. 5,735,754
Serial No. 08/759,924
Requester's File Ref. – ADAM-070208.044
*Page 7 of 34*

**4.     Statement Identifying Substantial New Question of Patentability**

This reexamination request is based upon the following references:

(A)     A trade magazine review of the "Hogan H40" golf club, publicly published in Golf

Magazine in March, 1994, teaching golf clubs according to the '754 invention as patented, two

5       years and nine months prior to the date of invention (attached hereto as Exhibit 1; expert

declaration relating to this prior art document and explaining the prior art contents and relevant

dates in more detail is attached pursuant to MPEP 2205 and is styled as Exhibit 18, "Declaration

of Mr. Clay Long (including Exhibits A and B)";

10      (B)     Additional published advertisements teaching golf clubs according to the '754 invention,

under the name "Hogan H40," publicly published in the United States as early as March, 1994,

two years and nine months prior to the date of invention (attached hereto as Exhibits 2-7);

(C)     Promotional literature distributed publicly prior to the PGA (Professional Golfers'

15      Association) Golf Merchandise Show in January 1996 by the Nicklaus Golf Equipment

Company, teaching golf clubs according to the '754 invention, under the name Nicklaus Air

Bear, eleven months prior to the date of invention (attached hereto as Exhibit 8)[1];

(D)     A trade magazine review from the magazine Petersen's Golfing, publicly published in

20      1996, by the Petersen Publishing Co. of Los Angeles, California, teaching golf clubs according

---

[1] While Exhibit 8 does not contain an exact date of publication, contextual reference make it possible to date this document to more than one year prior to the filing of the '754 patent. At page 2, the materials states, "In 1996 Jack Nicklaus will debut...," (future tense emphasis added) indicating that the material was published prior to January 1, 1996.

7

Exhibit L
Page 64

In re Reexamination of U.S. Pat. No. 5,735,754
Serial No. 08/759,924
Requester's File Ref. – ADAM-070208.044
*Page 8 of 34*

to the '754 invention, under the name <u>Nicklaus Air Bear</u>, prior to the date of invention (attached hereto as Exhibit 9);

    (E)    Additional published advertisements describing and offering golf clubs according to the

5   '754 invention (attached hereto as Exhibits 10-14; Expert declaration relating to these prior art documents and explaining the prior art contents and relevant dates in more detail is attached pursuant to MPEP 2205 and is styled as Exhibit 18, "Declaration of Mr. Clay Long (including Exhibit A and B)");

10   (F)    U.S. Design Pat. No. D363,961 (hereafter "<u>Krzynowek</u>"), filed August 16, 1994, teaching golf clubs according to the '754 invention,  filed two years and four months prior to the date of invention; and issued November 7, 1995, one year and one month prior to the date of the invention (attached hereto as Exhibit 15);

15   (G)    U.S. Design Patent No. D372,063 (hereafter "<u>Hueber</u>"), filed July 7, 1994, , teaching golf clubs according to the '754 invention, filed two years and five months prior to the date of the invention; and issued July 23, 1996, five months prior to the date of the invention (attached hereto as Exhibit 16); and

20   (H)    U.S. Utility Patent No. 6,257,991 (hereafter "<u>Ortiz</u>"), filed November 8, 1996, teaching golf clubs according to the '754 invention, filed one month prior to the date of the invention; and issued July 10, 2001 (attached hereto as Exhibit 17).

8

Exhibit L
Page 65

None of these references were disclosed by the patentee or considered by the Examiner during the prosecution of the '754 patent.

### 5.   Claim Charts Detailing Substantial New Questions of Patentability on a Claim by Claim Basis in the '754 Patent

5

Pursuant to 37 C.F.R. § 1.150(b)(2), the tables below explain how the Hogan H40 references (Exhibits 1-7), the Nicklaus Air Bear references (Exhibits 8-14), Krzynowek (Exhibit 15), Hueber (Exhibit 16), and Ortiz (Exhibit 17) are applied to each of the claims for which

10

reexamination is requested. Because the teachings of the Hogan H40, the Nicklaus Air Bear, Krzynowek, Hueber, and Ortiz references provide subject matter of he '754 patent claims that was not taught in any prior art cited during the prosecution of the '754 patent, these teachings each raise a substantial new question of patentability. MPEP 2214. An expert declaration relating to these prior art documents and explaining the prior art contents and relevant dates in more

15

detail is attached pursuant to MPEP 2205 and is styled as Exhibit 18, "Declaration of Mr. Clay Long (including Exhibits A and B)";

In particular, while certain of these written prior references were, at the time that they were made, made for the purpose of offering products for public use or sale, Requester respectfully notes that the Request for Reexamination in no way relies upon public use or sale as

20

a basis for this Reexamination Request. The basis for this request lies solely in the written and publicly published nature of the prior art teachings.

### A. and B. (Exhibits 1-7) The "Hogan H40"

25

Numerous prior art references teach the '754 device substantially as claimed, which was the subject of numerous publicly published written teachings, beginning at least as early as

9

Exhibit L
Page 66

In re Reexamination of U.S. Pat. No. 5,735,754
Serial No. 08/759,924
Requester's File Ref. – ADAM-070208.044
*Page 10 of 34*

March 1994, and which was, incidentally only for the purposes of the Reexamination Request,
sold under the product name "Hogan H40."

The device is taught at least as early as a written product review published in Golf
Magazine in March, 1994, publicly published two years and nine months prior to the date of
5   invention, attached hereto and referenced in the Table immediately below as Exhibit 1.

The device is also taught in written and publicly published documents (advertisements)
published in Golf Digest, at least as early as March 1994, also two years and nine months prior to
the date of the '754 invention, attached hereto and referenced in the Table immediately below as
Exhibit 2.

10   The device is also taught in written and publicly published documents (advertisements)
published at least as early as in the April, 1994 issue of Golf Digest, two years and eight months
prior to the date of the '754 invention. Identical copies of this written and publicly published
document appeared in the May, 1994 issue of Golf Digest magazine; the May, 1994 issue of Golf
Magazine; the June, 1994 issue of Golf Digest magazine; and the June, 1994 issue of Golf
15   Magazine. These references are attached hereto and referenced collectively in the Table
immediately below as Exhibits 3-7.

In particular, the Hogan H40 references teach an aerodynamic golf club head design
featuring a c-shaped aerodynamic slot on the club sole as follows:

10

Exhibit L
Page 67

In re Reexamination of U.S. Pat. No. 5,735,754
Serial No. 08/759,924
Requester's File Ref. – ADAM-070208.044
*Page 11 of 34*

| Element by Element Claims from U.S. Pat. No. 5,735,754 | Claimed Elements as Taught in the <u>Hogan H40</u> References |
|---|---|
| 1. An aerodynamic golf club head including a club head body having a heel, toe, rear surface, ball striking face, upper surface and bottom surface, wherein the improvement comprises: | Exhibits 1-7 all teach an aerodynamic golf club head having a heel, toe, rear surface, ball striking face, upper surface and bottom surface. |
| an aerodynamic configuration on said bottom surface adjacent said rear surface in the form of a c-shaped slot having an open end facing forwardly toward said ball striking face; | Exhibits 1-7 all teach this element. The aerodynamic aspects of this element are clearly described in the references. Exhibit 1 states "A c-shaped cavity in the sole is designed to reduce turf drag and put more weight closer to the face at impact."<br><br>Exhibits 3-7 all state; "H40 metal woods feature a unique cavity sole and aerodynamic design." |
| said aerodynamic configuration further including a skid surface formed on and raised from said bottom surface; | The references do not explicitly teach this element. |
| said skid surface having a wall separating said skid surface from said bottom surface. | The references do not explicitly teach this element. |
| 2. The aerodynamic golf club head of claim 1 further including a venturi opening in fluid communication with and extending rearwardly from said c-shaped aerodynamic slot toward said rear surface. | The references do not explicitly teach this element. |
| 3. The aerodynamic golf club head of claim 1 wherein said slot is further defined by being offset from said heel of said club head. | Exhibits 1-7 all teach this element, and clearly picture the slot offset. |
| 4. An aerodynamic golf club head including a club head body having a heel, toe, rear surface, ball striking face, upper surface and bottom surface, wherein the improvement comprises: | Exhibits 1-7 all teach an aerodynamic golf club head having a heel, toe, rear surface, ball striking face, upper surface and bottom surface. |

11

Exhibit L
Page 68

In re Reexamination of U.S. Pat. No. 5,735,754
Serial No. 08/759,924
Requester's File Ref. – ADAM-070208.044
*Page 12 of 34*

| | |
|---|---|
| an aerodynamic configuration on said bottom surface adjacent said rear surface in the form of a c-shaped slot having an open end facing forwardly toward said ball striking face; | Exhibits 1-7 all teach this element. The aerodynamic aspects of this element are clearly described in the references.<br><br>Also, Exhibits 3-7 all state; "H40 metal woods feature a unique cavity sole and aerodynamic design." |
| said slot being offset from a center of said bottom surface centerline passing through a longitudinal in a heel-to-toe direction. | Exhibits 1 and 2 picture the slot offset. |
| 5. The aerodynamic golf club head of claim 4 wherein said slot is offset toward said heel.[2] | Exhibits 1 and 2 picture the slot offset toward the heel.[2] |
| 6. The aerodynamic golf club head of claim 4 ("claim 3" was changed to "claim 4" by Certificate of Correction granted July 1, 2008) wherein said slot is offset toward said toe. | Exhibits 1 and 2 implicitly teach the limitation of the slot being offset toward the toe.[3] |
| 7. The aerodynamic golf club of claim 1 wherein said slot is further defined by being offset from said toe of said club head. | Exhibits 1 and 2 picture the slot offset from the toe of the club head. |
| 8. An aerodynamic golf club head including a club head body having a heel, toe, rear surface, ball striking face, upper surface and bottom | Exhibits 1-7 all teach an aerodynamic golf club head having a heel, toe, rear surface, ball striking face, upper surface and bottom surface. |

[2] The specification of the '754 patent clearly defines the language "offset in the direction of the toe" and "offset in the direction of the heel." At Col. 3, lines 22-26, the specification states "FIG. 9 shows another embodiment of the present invention.... and an aerodynamic slot 330 which is offset in the direction of the toe 316 of the club head 300." FIG. 9 then shows a c-shaped slot wherein the majority of the length and volume of the slot lies on the toe side of the sole. Conversely, at Col. 3, lines 27-30, the specification states, "FIG. 10 shows another embodiment similar to FIG. 9....and an aerodynamic slot 430 which is offset in the direction of the heel 414 of the club head 400." FIG. 10 then shows a c-shaped slot wherein the majority of the length and volume of the slot lies on the heel side of the sole.

[3] The teaching of a heel offset slot is implicit in the teaching of a toe offset slot, and vice versa, as the specification refers to the complementary relationship between the two offsets at several points: The specification states that "FIG. 10 shows another embodiment similar to FIG. 9...." (Col 3, line 27); and "It will be appreciated that the offset aerodynamic slots of FIGS. 9 and 10 allow greater club head speed at the heel or toe selectively in order to more effectively accommodate the swing characteristics of a particular golfer, whether left-handed or right-handed." (Col 3, lines 31-35, emphasis added)

12

Exhibit L
Page 69

In re Reexamination of U.S. Pat. No. 5,735,754
Serial No. 08/759,924
Requester's File Ref. -- ADAM-070208.044
*Page 13 of 34*

| surface, wherein the improvement comprises: | |
| --- | --- |
| an aerodynamic configuration on said bottom surface adjacent said rear surface in the form of a c-shaped slot having an open end facing forwardly toward said ball striking face; | Exhibits 1-7 all teach this element. The aerodynamic aspects of this element are clearly described in the references.<br>Exhibit 1 states "A c-shaped cavity in the sole is designed to reduce turf drag and put more weight closer to the face at impact."<br><br>Exhibits 3-7 all state; "H40 metal woods feature a unique cavity sole and aerodynamic design." |
| said aerodynamic configuration further including a venturi opening in fluid communication with and extending rearwardly from said c-shaped aerodynamic slot toward said rear surface. | The references do not explicitly teach this element. |

### C. and D. (Exhibit 8 -14)   Nicklaus Air Bear

5      Prior art references teach the '754 device substantially as claimed, in written and publicly published documents (advertisements), beginning at least as early as January 1996, and which was, incidentally only for the purposes of the Reexamination Request, sold under the product name "Nicklaus Air Bear."

10      The device is taught in written promotional literature distributed publicly prior to the PGA (Professional Golfers' Association) Golf Merchandise Show in January 1996 by the Nicklaus Golf Equipment Company, eleven months prior to the date of invention (attached hereto as Exhibit 8).

     The device is also taught in a written and publicly published trade magazine review from

15 the magazine Petersen's Golfing, publicly published in 1996, by the Petersen Publishing Co. of Los Angeles, California, prior to the date of invention (attached hereto as Exhibit 9).

13

Exhibit L
Page 70

In re Reexamination of U.S. Pat. No. 5,735,754
Serial No. 08/759,924
Requester's File Ref. – ADAM-070208.044
*Page 14 of 34*

The device is also taught in a publicly published document (advertisement) published at
least as early as the April 1996 issue of "Golf Digest" magazine (attached hereto as Exhibit 10).

The device is further taught in a publicly published document (advertisement) published
at least as early as the March 1996 issue of "Golf Magazine" magazine (attached hereto as

5   Exhibit 11). An identical copy of this written and publicly published document appeared in the
April 1996 issue of "Golf Magazine" (attached hereto as Exhibit 12).

The device is also taught in a publicly published document (advertisement) in the May,
1996 issue of "Golf Magazine" magazine (attached hereto as Exhibit 13).

The device is further taught in a publicly published document (editorial article and

10  photograph) in the September, 1996 issue of "Golf Magazine" magazine (attached hereto as
Exhibit 14).

In particular, the Nicklaus Air Bear, as taught in the written and publicly published
references (Exhibits 8-14), teaches an aerodynamic golf club head design featuring a c-shaped
aerodynamic slot on the club sole as follows:

15

| **Element by Element Claims from U.S. Pat. No. 5,735,754** | **Claimed Elements as Taught in the Nicklaus Air Bear References** |
|---|---|
| 1. An aerodynamic golf club head including a club head body having a heel, toe, rear surface, ball striking face, upper surface and bottom surface, wherein the improvement comprises: | Exhibits 8-14 all teach an aerodynamic golf club head having a heel, toe, rear surface, ball striking face, upper surface and bottom surface. |
| an aerodynamic configuration on said bottom surface adjacent said rear surface in the form of a c-shaped slot having an open end facing forwardly toward said ball striking face; | Exhibit 8 pictures the c-shaped slot at pages 1, 3, 4, 5, 6, and 8. The aerodynamic aspects of this element are clearly described in the references. Exhibit 8 states at page 4, "It [the "Air Bear"] is engineered to cut through the air with |

14

Exhibit L
Page 71

In re Reexamination of U.S. Pat. No. 5,735,754
Serial No. 08/759,924
Requester's File Ref. – ADAM-070208.044
*Page 15 of 34*

| | |
|---|---|
| | unparalleled speed and strike with pinpoint accuracy…The most aerodynamic oversized woods in golf…." |
| | Exhibit 8 at page 5 describes the c-shaped slot and explains the engineering and performance significance at a length far too detailed to repeat in this Table, and even includes an apparent wind tunnel experiment teaching air flows across the club. |
| | Exhibit 8 further states at page 7, "The most aerodynamic oversized woods in golf. Engineered <u>with a unique airflow channel in the sole</u> that reduces drag, and dramatically increases clubhead speed. Which means you'll hit the ball longer and straighter…." (emphasis added) |
| | Exhibit 9 pictures the c-shaped slot at pages 2, 4, and 5. |
| | Exhibit 9 states at page 3, "But by far, the design feature generating most of the commentary was the <u>channeled sole</u>." (emphasis added) |
| | Exhibit 9 at pages 4-5 describes the c-shaped slot and explains the engineering and performance significance at a length far too detailed to repeat in this Table, and even includes an illustration showing air flows across the club. |
| | Exhibit 10 pictures the c-shaped slot and describes it as "an aerodynamic heel-to-toe channel" |
| | Exhibits 11 and 12 picture the c-shaped slot (from the heel) and describe it as "The most aerodynamic oversized woods in golf. Engineered with <u>a unique airflow channel in the sole</u> that reduces drag, and dramatically increases clubhead speed. Which means you'll |

15

Exhibit L
Page 72

In re Reexamination of U.S. Pat. No. 5,735,754
Serial No. 08/759,924
Requester's File Ref. – ADAM-070208.044
*Page 16 of 34*

| | |
|---|---|
| | hit the ball longer and straighter." (emphasis added) <br><br> Exhibit 13 pictures the c-shaped slot. <br><br> Exhibit 14 pictures the c-shaped slot and describes it (Col. 1, beginning with the last three lines) as "The chief design engineer says an air-flow channel along the sole directs air around the oversized head and reduces drag forces...." |
| said aerodynamic configuration further including a skid surface formed on and raised from said bottom surface; | The references do not explicitly teach this element. |
| said skid surface having a wall separating said skid surface from said bottom surface. | The references do not explicitly teach this element. |
| 2. The aerodynamic golf club head of claim 1 further including a venturi opening in fluid communication with and extending rearwardly from said c-shaped aerodynamic slot toward said rear surface. | The references do not explicitly teach this element. |
| 3. The aerodynamic golf club head of claim 1 wherein said slot is further defined by being offset from said heel of said club head. | Exhibit 8 at pages 1, 3-6, and 8 clearly pictures the slot offset. <br><br> Exhibit 9 at pages 2 and 5 clearly pictures the slot offset. <br><br> Exhibit 10 pictures the slot offset. <br><br> Exhibit 13 pictures the slot offset. <br><br> Exhibit 14 pictures the slot offset. |
| 4. An aerodynamic golf club head including a club head body having a heel, toe, rear surface, ball striking face, upper surface and bottom surface, wherein the improvement comprises: | Exhibits 8-14 all teach an aerodynamic golf club head having a heel, toe, rear surface, ball striking face, upper surface and bottom surface. |
| an aerodynamic configuration on said bottom | Exhibit 8 pictures the c-shaped slot having an |

16

Exhibit L
Page 73

In re Reexamination of U.S. Pat. No. 5,735,754
Serial No. 08/759,924
Requester's File Ref. – ADAM-070208.044
*Page 17 of 34*

| surface adjacent said rear surface in the form of a c-shaped slot having an open end facing forwardly toward said ball striking face; | open end facing forwardly toward the ball striking face at pages 1, 3, 4, 5, 6, and 8. The aerodynamic aspects of this element are clearly described in the references.<br><br>Exhibit 8 states at page 4, "It [the "Air Bear"] is engineered to cut through the air with unparalleled speed and strike with pinpoint accuracy...The most aerodynamic oversized woods in golf...."<br><br>Exhibit 8 at page 5 describes the c-shaped slot and explains the engineering and performance significance at a length far too detailed to repeat in this Table, and even includes an apparent wind tunnel experiment showing air flows across the club.<br><br>Exhibit 8 further states at page 7, "The most aerodynamic oversized woods in golf. Engineered with a unique airflow channel in the sole that reduces drag, and dramatically increases clubhead speed. Which means you'll hit the ball longer and straighter...." (emphasis added)<br><br>Exhibit 9 pictures the c-shaped slot having an open end facing forwardly toward the ball striking face at pages 2, 4, and 5.<br><br>Exhibit 9 states at page 3, "But by far, the design feature generating most of the commentary was the channeled sole." (emphasis added)<br><br>Exhibit 9 at pages 4-5 describes the c-shaped slot and explains the engineering and performance significance at a length far too detailed to repeat in this Table, and even includes an illustration showing air flows across the club.<br><br>Exhibit 10 pictures the c-shaped slot having an open end facing forwardly toward the ball |

17

Exhibit L
Page 74

In re Reexamination of U.S. Pat. No. 5,735,754
Serial No. 08/759,924
Requester's File Ref. – ADAM-070208.044
*Page 18 of 34*

| | |
|---|---|
| | striking face and describes it as "an aerodynamic heel-to-toe channel" |
| | Exhibit 13 pictures the c-shaped slot having an open end facing forwardly toward the ball striking face. |
| | Exhibit 14 pictures the c-shaped slot having an open end facing forwardly toward the ball striking face and describes it (Col. 1, beginning with the last three lines) as "The chief design engineer says an air-flow channel along the sole directs air around the oversized head and reduces drag forces...." |
| said slot being offset from a center of said bottom surface centerline passing through a longitudinal in a heel-to-toe direction. | Exhibit 8 at pages 1, 3-6, and 8 clearly pictures the slot offset from a center of the bottom surface centerline passing through a longitudinal in a heel-to-toe direction. |
| | Exhibit 9 at pages 2 and 5 clearly pictures the slot offset from a center of the bottom surface centerline passing through a longitudinal in a heel-to-toe direction. |
| | Exhibit 10 pictures the slot offset from a center of the bottom surface centerline passing through a longitudinal in a heel-to-toe direction. |
| | Exhibit 13 pictures the slot offset from a center of the bottom surface centerline passing through a longitudinal in a heel-to-toe direction. |
| | Exhibit 14 pictures the slot offset from a center of the bottom surface centerline passing through a longitudinal in a heel-to-toe direction. |

18

Exhibit L
Page 75

In re Reexamination of U.S. Pat. No. 5,735,754
Serial No. 08/759,924
Requester's File Ref. – ADAM-070208.044
*Page 19 of 34*

| | |
|---|---|
| 5. The aerodynamic golf club head of claim 4 wherein said slot is offset toward said heel. | The references teach this element implicitly.[4] |
| 6. The aerodynamic golf club head of claim 4 ("claim 3" was changed to "claim 4" by Certificate of Correction granted July 1, 2008) wherein said slot is offset toward said toe. | Exhibit 8 and 9 both teach this element.<br><br>Exhibit 8 at pages 1, 3-6, and 8 clearly pictures the slot offset toward the toe.<br><br>Exhibit 9 at pages 2 and 5 clearly pictures the slot offset toward the toe.<br><br>Exhibit 10 clearly pictures the slot offset toward the toe.<br><br>Exhibit 13 clearly pictures the slot offset toward the toe.[5] |
| 7. The aerodynamic golf club of claim 1 wherein said slot is further defined by being offset from said toe of said club head. | Exhibits 8 and 9 picture the slot offset. |
| 8. An aerodynamic golf club head including a club head body having a heel, toe, rear surface, ball striking face, upper surface and bottom surface, wherein the improvement comprises: | Exhibits 8-10 and 13-14 all teach an aerodynamic golf club head having a heel, toe, rear surface, ball striking face, upper surface and bottom surface. |

[4] As discussed above in Footnote 1, the specification of the '754 patent clearly defines the language "offset in the direction of the toe" and "offset in the direction of the heel." At Col. 3, lines 22-26, it states "FIG. 9 shows another embodiment of the present invention…. and an aerodynamic slot 330 which is offset in the direction of the toe 316 of the club head 300." FIG. 9 then shows a c-shaped slot wherein the majority of the length and volume of the slot lies on the toe side  of the sole. Conversely, at Col. 3, lines 27-30, the specification states, "FIG. 10 shows another embodiment similar to FIG. 9….and an aerodynamic slot 430 which is offset in the direction of the heel 414 of the club head 400." FIG. 10 then shows a c-shaped slot wherein the majority of the length and volume of the slot lies on the heel side of the sole. The teaching of a toe offset slot is implicit in the teaching of a heel offset slot, and vice versa, as the specification refers to the complementary relationship between the two offsets at several points: The specification states that "FIG. 10 shows another embodiment similar to FIG. 9…." (Col 3, line 27); and "It will be appreciated that the offset aerodynamic slots of FIGS. 9 and 10 allow greater club head speed at the heel or toe selectively in order to more effectively accommodate the swing characteristics of a particular golfer, whether left-handed or right-handed." (Col 3, lines 31-35, emphasis added)
[5] For example, in Exhibit 13, the word "Nicklaus" on the sole can be seen to lie at approximately the midpoint of the club face, and therefore the majority of the c-shaped slot can be seen to lie on the toe side of the club head.

19

Exhibit L
Page 76

| | |
|---|---|
| an aerodynamic configuration on said bottom surface adjacent said rear surface in the form of a c-shaped slot having an open end facing forwardly toward said ball striking face; | Exhibit 8 pictures the c-shaped slot at pages 1, 3, 4, 5, 6, and 8. The aerodynamic aspects of this element are clearly described in the references.<br><br>Exhibit 8 states at page 4, "It [the "Air Bear"] is engineered to cut through the air with unparalleled speed and strike with pinpoint accuracy…The most aerodynamic oversized woods in golf…."<br><br>Exhibit 8 at page 5 describes the c-shaped slot and explains the engineering and performance significance at a length far too detailed to repeat in this Table, and even includes an apparent wind tunnel experiment showing air flows across the club.<br><br>Exhibit 8 further states at page 7, "The most aerodynamic oversized woods in golf. Engineered with a unique airflow channel in the sole that reduces drag, and dramatically increases clubhead speed. Which means you'll hit the ball longer and straighter…."(emphasis added)<br><br>Exhibit 9 pictures the c-shaped slot at pages 2, 4, and 5.<br><br>Exhibit 9 states at page 3, "But by far, the design feature generating most of the commentary was the channeled sole." (emphasis added)<br><br>Exhibit 9 at pages 4-5 describes the c-shaped slot and explains the engineering and performance significance at a length far too detailed to repeat in this Table, and even includes an illustration showing air flows across the club.<br><br>Exhibit 10 pictures the c-shaped slot having an open end facing forwardly toward the ball |

20

Exhibit L
Page 77

| | striking face and describes it as "an aerodynamic heel-to-toe channel"<br><br>Exhibit 13 pictures the c-shaped slot having an open end facing forwardly toward the ball striking face.<br><br>Exhibit 14 pictures the c-shaped slot having an open end facing forwardly toward the ball striking face and describes it (Col. 1, beginning with the last three lines) as "The chief design engineer says an air-flow channel along the sole directs air around the oversized head and reduces drag forces...." |
|---|---|
| said aerodynamic configuration further including a venturi opening in fluid communication with and extending rearwardly from said c-shaped aerodynamic slot toward said rear surface. | The references do not explicitly teach this element. |

### E.     (Exhibit 15) U.S. Design Patent No. Des. 363,961

5        The '754 device as claimed is taught in U.S. Design Pat. No. Des. 363,961 (hereafter "Krzynowek"), filed August 16, 1994, two years and four months prior to the date of invention; and issued November 7, 1995, one year and one month prior to the date of the invention (attached hereto as Exhibit 15).

In particular, Krzynowek teaches an aerodynamic golf club head design featuring a c-

10    shaped aerodynamic slot on the club sole, including a raised sole skid plate, as follows:

21

Exhibit L
Page 78

In re Reexamination of U.S. Pat. No. 5,735,754
Serial No. 08/759,924
Requester's File Ref. – ADAM-070208.044
*Page 22 of 34*

| Element by Element Claims from U.S. Pat. No. 5,735,754 | Claimed Elements as Taught in Krzynowek |
|---|---|
| 1. An aerodynamic golf club head including a club head body having a heel, toe, rear surface, ball striking face, upper surface and bottom surface, wherein the improvement comprises: | Exhibit 15, throughout the specification and at all Figures, teaches an aerodynamic golf club head having a heel, toe, rear surface, ball striking face, upper surface and bottom surface. |
| an aerodynamic configuration on said bottom surface adjacent said rear surface in the form of a c-shaped slot having an open end facing forwardly toward said ball striking face; | Exhibit 15 teaches this element. A c-shaped slot having an open end facing forwardly toward said ball striking face is clearly pictured in FIGS. 5 and 7; and most particularly in FIG. 5. |
| said aerodynamic configuration further including a skid surface formed on and raised from said bottom surface; | Exhibit 15 teaches this element. The skid surface is clearly pictured in FIGS. 4 and 5. |
| said skid surface having a wall separating said skid surface from said bottom surface. | The reference does not explicitly teach this element. |
| 2. The aerodynamic golf club head of claim 1 further including a venturi opening in fluid communication with and extending rearwardly from said c-shaped aerodynamic slot toward said rear surface. | The reference does not explicitly teach this element. |
| 3. The aerodynamic golf club head of claim 1 wherein said slot is further defined by being offset from said heel of said club head. | The reference does not explicitly teach this element. |
| 4. An aerodynamic golf club head including a club head body having a heel, toe, rear surface, ball striking face, upper surface and bottom surface, wherein the improvement comprises: | Exhibit 15 teaches, at FIGS. 1-5, an aerodynamic golf club head having a heel, toe, rear surface, ball striking face, upper surface and bottom surface. |
| an aerodynamic configuration on said bottom surface adjacent said rear surface in the form of a c-shaped slot having an open end facing forwardly toward said ball striking face; | Exhibit 15 teaches this element. A c-shaped slot having an open end facing forwardly toward said ball striking face is clearly pictured in FIGS. 5 and 7; and most particularly in FIG. 5. |
| said slot being offset from a center of said | Exhibit 15 teaches this element. The slot offset |

22

Exhibit L
Page 79

In re Reexamination of U.S. Pat. No. 5,735,754
Serial No. 08/759,924
Requester's File Ref. – ADAM-070208.044
Page 23 of 34

| | |
|---|---|
| bottom surface centerline passing through a longitudinal in a heel-to-toe direction. | is clearly taught in FIGS. 5-7. (Because the slot is offset, it appears in FIGS. 5 and 7; and conversely <u>does not</u> appear in FIG. 6). |
| 5. The aerodynamic golf club head of claim 4 wherein said slot is offset toward said heel. | Exhibit 15 teaches this element. The slot offset is clearly taught in FIGS. 5-7. (Because the slot is offset, it appears in FIGS. 5 and 7; and conversely <u>does not</u> appear in FIG. 6). |
| 6. The aerodynamic golf club head of claim 4 ("claim 3" was changed to "claim 4" by Certificate of Correction granted July 1, 2008) wherein said slot is offset toward said toe. | Exhibit 15 makes this element an obvious variant under 35 U.S.C. §103.[6] The slot offset is clearly taught in FIGS. 5-7. (Because the slot is offset, it appears in FIGS. 5 and 7; and conversely <u>does not</u> appear in FIG. 6). It would have been obvious to offset the slot in an opposite direction from the heel, in order to produce an opposing effect. |
| 7. The aerodynamic golf club of claim 1 wherein said slot is further defined by being offset from said toe of said club head. | Exhibit 15 teaches this element. The slot offset is clearly taught in FIGS. 5-7. (Because the slot is offset, it appears in FIGS. 5 and 7; and conversely <u>does not</u> appear in FIG. 6). |
| 8. An aerodynamic golf club head including a club head body having a heel, toe, rear surface, ball striking face, upper surface and bottom surface, wherein the improvement comprises: | Exhibits 15, throughout the specification and at all Figures, teaches an aerodynamic golf club head having a heel, toe, rear surface, ball striking face, upper surface and bottom surface. |
| an aerodynamic configuration on said bottom surface adjacent said rear surface in the form of a c-shaped slot having an open end facing forwardly toward said ball striking face; | Exhibit 15 teaches this element. A c-shaped slot having an open end facing forwardly toward said ball striking face is clearly pictured in FIGS. 5 and 7; and most particularly in FIG. 5. |
| said aerodynamic configuration further including a venturi opening in fluid communication with and extending rearwardly from said c-shaped aerodynamic slot toward said rear surface. | The reference does not explicitly teach this element. |

[6] See footnotes 2, 3, and 4 above.

23

Exhibit L
Page 80

In re Reexamination of U.S. Pat. No. 5,735,754
Serial No. 08/759,924
Requester's File Ref. – ADAM-070208.044
*Page 24 of 34*

**F.**      **(Exhibit 16) U.S. Design Patent No. Des. 372,063**

The '754 device as claimed is taught in U.S. Design Patent No. Des. 372,063 (hereafter

5   "Hueber"), filed July 7, 1994, two years and five months prior to the date of the invention; and

issued July 23, 1996, five months prior to the date of the invention (attached hereto as Exhibit

16).

In particular, Hueber teaches an aerodynamic golf club head design featuring a c-shaped

aerodynamic slot on the club sole and a raised skid surface on the club sole, as follows:

10

| Element by Element Claims from U.S. Pat. No. 5,735,754 | Claimed Elements as Taught in Hueber |
|---|---|
| 1. An aerodynamic golf club head including a club head body having a heel, toe, rear surface, ball striking face, upper surface and bottom surface, wherein the improvement comprises: | Exhibit 16, throughout the specification and at all Figures, teaches an aerodynamic golf club head including a club head body having a heel, toe, rear surface, ball striking face, upper surface and bottom surface. |
| an aerodynamic configuration on said bottom surface adjacent said rear surface in the form of a c-shaped slot having an open end facing forwardly toward said ball striking face; | Exhibit 16 teaches this element. A c-shaped slot having an open end facing forwardly toward the ball striking face is seen well at Fig. 7. |
| said aerodynamic configuration further including a skid surface formed on and raised from said bottom surface; | Exhibit 16 teaches this element. A skid surface formed on and raised from the bottom surface is seen well in Figs. 3, 5, and 7. |
| said skid surface having a wall separating said skid surface from said bottom surface. | Exhibit 16 teaches this element. A skid surface having a wall separating the skid surface from the bottom surface is seen well in Figs. 3, 5, and 7. |
| 2. The aerodynamic golf club head of claim 1 | Exhibit 16 does not explicitly teach this |

24

Exhibit L
Page 81

In re Reexamination of U.S. Pat. No. 5,735,754
Serial No. 08/759,924
Requester's File Ref. – ADAM-070208.044
*Page 25 of 34*

| | |
|---|---|
| further including a venturi opening in fluid communication with and extending rearwardly from said c-shaped aerodynamic slot toward said rear surface. | element. |
| 3. The aerodynamic golf club head of claim 1 wherein said slot is further defined by being offset from said heel of said club head. | Exhibit 16 does not explicitly teach this element. |
| 4. An aerodynamic golf club head including a club head body having a heel, toe, rear surface, ball striking face, upper surface and bottom surface, wherein the improvement comprises: | Exhibit 16 throughout the specification and at all Figures, teaches an aerodynamic golf club head including a club head body having a heel, toe, rear surface, ball striking face, upper surface and bottom surface. |
| an aerodynamic configuration on said bottom surface adjacent said rear surface in the form of a c-shaped slot having an open end facing forwardly toward said ball striking face; | Exhibit 16 teaches this element. A c-shaped slot having an open end facing forwardly toward the ball striking face is seen well at Fig. 7. |
| said slot being offset from a center of said bottom surface centerline passing through a longitudinal in a heel-to-toe direction. | Exhibit 16 teaches this element. A c-shaped slot offset from a center of said bottom surface centerline passing through a longitudinal in a heel-to-toe direction is seen well at Fig. 7. |
| 5. The aerodynamic golf club head of claim 4 wherein said slot is offset toward said heel. | Exhibit 16 does not explicitly teach this element. |
| 6. The aerodynamic golf club head of claim 4 ("claim 3" was changed to "claim 4" by Certificate of Correction granted July 1, 2008) wherein said slot is offset toward said toe. | Exhibit 16 does not explicitly teach this element. |
| 7. The aerodynamic golf club of claim 1 wherein said slot is further defined by being offset from said toe of said club head. | Exhibit 16 does not explicitly teach this element. |
| 8. An aerodynamic golf club head including a club head body having a heel, toe, rear surface, | Exhibit 16 throughout the specification and at all Figures, teaches an aerodynamic golf club |

25

Exhibit L
Page 82

| | |
|---|---|
| ball striking face, upper surface and bottom surface, wherein the improvement comprises: | head including a club head body having a heel, toe, rear surface, ball striking face, upper surface and bottom surface. |
| an aerodynamic configuration on said bottom surface adjacent said rear surface in the form of a c-shaped slot having an open end facing forwardly toward said ball striking face; | Exhibit 16 teaches this element. A c-shaped slot having an open end facing forwardly toward the ball striking face is seen well at Fig. 7. |
| said aerodynamic configuration further including a venturi opening in fluid communication with and extending rearwardly from said c-shaped aerodynamic slot toward said rear surface. | Exhibit 16 does not explicitly teach this element. |

### G.    (Exhibit 17) U.S. Utility Patent No. 6,257,991

The '754 device as claimed is taught in U.S. Utility Patent No. 6,257,991 (hereafter "Ortiz"), filed November 8, 1996, one month prior to the date of the invention; and issued July

5    10, 2001 (attached hereto as Exhibit 17)

In particular, Ortiz teaches an aerodynamic golf club head design featuring a c-shaped aerodynamic slot on the club sole and a raised skid surface on the club sole, as follows:

| Element by Element Claims from U.S. Pat. No. 5,735,754 | Claimed Elements as Taught in Ortiz |
|---|---|
| 1. An aerodynamic golf club head including a club head body having a heel, toe, rear surface, ball striking face, upper surface and bottom surface, wherein the improvement comprises: | Exhibit 17, throughout the specification and at all Figures, teaches an aerodynamic golf club head including a club head body having a heel, toe, rear surface, ball striking face, upper surface and bottom surface. |
| an aerodynamic configuration on said bottom surface adjacent said rear surface in the form of a c-shaped slot having an open end facing forwardly toward said ball striking face; | Exhibit 17 teaches this element. An aerodynamic configuration on said bottom surface adjacent said rear surface in the form of a c-shaped slot having an open end facing forwardly toward said ball striking face may be |

26

Exhibit L
Page 83